EXHIBIT 27



**ESPIRE ADS, LLC**
**INDEPENDENT CONTRACTOR AGREEMENT**

THIS INDEPENDENT CONTRACTOR AGREEMENT ("Agreement") is made effective as of May 18, 2020 by and between **Espire Ads, LLC,** with its principal place of business located at 6065 Riverside Ave., Riverside CA 92506 (**"**Espire"), on the one hand, and **Brennan Kastner,** with offices located in Texas ("Contractor"), on the other hand. The parties are also referred to herein collectively as the "Parties" and each, individually, as a "Party".

WHEREAS the Parties wish to enter into this Agreement to memorialize the understandings and agreements pursuant to which they have operated since the Effective Date, and to describe the respective rights and obligations of the Parties with respect thereto.

WHEREAS Espire engages Contractor for the purpose of Technical Developer and as more fully set forth in Section 2 below.

NOW THEREFORE, in consideration of the mutual promises, covenants, warranties, and conditions herein, the Parties hereby agree as follows:

**ARTICLE 1**
**TERM AND TERMINATION**

**1.1. Term**. The term of this Agreement ("Term") shall commence on the Effective Date and shall automatically renew in one (1) year increments from the Effective Date, unless otherwise terminated pursuant to the terms hereof (the "Expiration Date").

**1.2. Cancellation/Termination**.

(a)      This Agreement may be canceled by Espire at any time, with or without cause, without penalty or obligation, upon twenty-four (24) hours written notice to Contractor. Notwithstanding the foregoing, should Espire cancel this Agreement without cause, Contractor shall be entitled to receive pro-rata compensation for all Services (as defined hereinafter) rendered as of the date of the termination of this Agreement by Espire. If Contractor cancels the Agreement without cause, Espire shall be entitled to payment for all consequential and out-of-pocket expenses incurred at the time of, and as a result of, Contractor's cancellation.

(b)      A cancellation shall be deemed to occur "with cause" when either Contractor or Espire fails to comply with the terms of the Agreement such that their actions would constitute a breach of the Agreement, thereby justifying the canceling party in terminating the Agreement. (i)

If Contractor should cancel the Agreement with cause, then Contractor shall be entitled to payment, determined on a pro rata basis, for Services satisfactorily performed, but in no case shall Contractor be entitled to any consequential damages. (ii) If Espire should cancel the Agreement with cause, then Espire shall be entitled to payment for all consequential damages and out-of-pocket expenses incurred as a result of Contractor's breach of the Agreement, and Contractor shall not be entitled to any payment for Services rendered.

(c)     Upon termination of this Agreement for any reason, Contractor will immediately return all documents or other materials provided by or belonging to Espire, or produced pursuant to the terms of this Agreement, as applicable, (collectively, the "Materials"). In the event that Contractor does not return any of the Materials to Espire within five (5) days following the termination of this Agreement, Espire may, to the full extent permitted by applicable law, deduct the value of the unreturned Materials from any amounts due to Contractor by Espire.

# ARTICLE 2
# PROVISION OF SERVICES

## 2.1.  Services to Be Rendered.

(a)     Espire shall retain, and Contractor shall supply to Espire, services on the terms and conditions set forth herein, including, but not limited to Web Development & Management, App Development & Management & Maintenance of Espire technical properties (the "Services"). The Parties may agree upon the modification of Services in writing, signed by each of the Parties.

(b)     Contractor shall be the only person or entity performing the Services set forth herein and shall not subcontractor the performance of any of the Services, unless agreed upon in writing by Espire. Contractor shall comply with all local, state and federal laws which may be applicable to Contractor in the jurisdiction in which the Contractor resides, as well as those laws applicable to the jurisdiction in which Espire is located.

(c)     All materials produced by Contractor as part of the Services shall be created by Contractor as a "work-made-for-hire" specially ordered or commissioned by Espire, with Espire being deemed the sole author of such work and owner of all such results and proceeds.  Espire entering into this Agreement with Contractor shall be full and complete consideration for such results and proceeds. Contractor agrees to execute any and all documents and perform all such actions which may be necessary to effectuate or confirm Espire's ownership of the materials produced by Contractor hereunder. To the extent Espire determines any such materials are not deemed a work-made-for-hire, Contractor hereby grants to Espire a full, exclusive, irrevocable license, in perpetuity, and worldwide, in any and all mediums, in and to such materials, and all derivative works thereof, and agrees to execute any and all documents to effectuate or evidence of grant of such license.

## 2.2. Fees. Espire shall pay to Contractor compensation for the satisfactory performance of the Services, which shall be calculated as follows:

$2,500 Contract signature Bonus payable first pay period following execution of this agreement
$2,250 Net 7 Weekly

Contractor shall be paid by Espire in accordance herewithn Net 7 weekly Payment terms within seven (7) days of Espire's receipt of payment in full for respective customer campaigns or advertisements.

# ARTICLE 3
# NATURE OF RELATIONSHIP

**3.1. Independent Contractor Status.** To the fullest extent permitted by law, Contractor shall be an independent contractor hereunder and Contractor shall not be deemed an agent, employee, joint employee or servant of Espire. Neither Espire nor Contractor shall have any right to act on behalf of or bind the other party for any purpose. Contractor shall have the sole right, obligation, and discretion in the manner and method of the performance of the Services, so long as such Services are satisfactorily performed and the benchmarks set by Espire are met.

**3.2. No Employee Benefits.** Contractor shall not be eligible to participate in any of Espire's employee benefit programs, including but not limited to, any bonus, pension, profit sharing, stock option, 401(k), health, sickness, dental, accident, life, disability, retirement, severance, vacation and other paid time off, tuition benefits, deferred compensation, or insurance which Espire may maintain for the benefit of any of its employees (if any), even if Contractor is determined to be common law or statutory law employees of Espire. In addition, Espire shall not be responsible for unemployment benefits for Contractor in the event this Agreement terminates, or workers' compensation benefits for Contractor in the event Contractor is injured in any manner while performing Services hereunder, even if Contractor is determined to be a common law or statutory law employee of Espire.

**3.3. Tax Duties and Responsibilities.** Contractor will be responsible for all foreign, federal, state and local taxes of Contractor, including, social security taxes with respect to the fees paid to Contractor under this Agreement, unemployment compensation taxes, and any other fees, licenses or other payments required by law ("Taxes"). Contractor will be responsible for all workers' compensation coverage for himself/herself/itself. Contractor represents that he/she/it has fully complied with all laws related to his receipt of income from a United States-based entity or person.

**3.4. Confidentiality.** Contractor agrees to keep confidential, will not reveal to any other person or entity, and will not use for any other purpose other than in connection with Contractor's engagement with Espire, all Confidential Information provided by Espire, or to which Contractor is exposed. As used herein, the term "Confidential Information" shall mean all non-public information (whether written, oral or in another medium) provided by Espire to Contractor or to which Contractor comes into possession as a result of Contractor's engagement hereunder, including, but not limited to, advertising information, market research, marketing plans, business plans, models and strategies, customer lists and information, supplier lists and information, contact lists and information, referral sources, databases, software, sales techniques and strategies, financial information and projections, trade secrets, know-how, systems, methods, ideas and other information related to the business of Espire, and all notes, analyses, or other material prepared by Contractor containing or based, in whole or in part, on any information provided or disclosed to Contractor by Espire, other than information which (a) is known to Contractor at the time of disclosure to Contractor by Espire, (b) is or becomes publicly known through no wrongful act of Contractor and/or (c) has been rightfully received by Contractor from a third party who Contractor reasonably believes is authorized to make such disclosure. In the

event of any legal action or proceeding or asserted requirement under applicable law or government regulations calling for disclosure by Contractor of Confidential Information, Contractor shall forthwith notify Espire and, upon request of Espire, shall cooperate with Espire in contesting such disclosure at the expense of Espire. Following Contractor's authorized use of the Confidential Information, Contractor shall not, without the prior written consent of Espire, use any of the Confidential Information for any purpose. Upon Espire's request, Contractor will promptly deliver to Espire all copies of all Confidential Information furnished to it including analyses, compilations, studies and other material based in whole or in part on such material prepared by Contractor. In the event that it is impossible to return any Confidential Information (i.e. information maintained on a hard drive of a computer), Contractor will cause all such Confidential Information to be destroyed or permanently erased.

**3.5 Non-Solicitation of Espire Customers and Accounts**: Contractor acknowledges and agrees that during the course and solely as a result of his/her/its engagement by Espire, Contractor will become aware of some, most or all of Espire's customers and clients, their names and addresses, their representatives responsible for engaging Espire's services, their specific needs and requirements and leads and referrals to prospective customers and clients.  Contractor further acknowledges and agrees that the loss of such customers and clients would cause Espire great and irreparable harm. Consequently, Contractor covenants and agrees that both during the Term of this Agreement (commencing with the Effective Date) and for a period of two (2) years following cessation of the Term, Contractor will not directly or indirectly, for himself/herself/itself or on behalf of others, solicit or seek to do business related to the business of Espire with any Customer or client, former Customer or client or prospective customer or client of Espire about whom Contractor learned Confidential Information and/or with whom Contractor came into contact while working with Espire. Contractor will further not seek to entice an Espire Customer away from Espire based upon Contractor's knowledge of a Customer's needs and business which was learned by the Contractor during his/her/its engagement by Espire. To the extent any Customer or potential customer of Espire has been enticed away or used by Contractor for the purposes of generating revenue, or for which Contractor has received any revenue for which he/she/it has not accounted to Espire, dating back to the Effective Date, Contractor shall be liable to account to Espire for any and all such revenue, and agrees that Contractor shall provide to Espire a full accounting related thereto within fifteen (15) days of any request by Espire for such accounting information. If any such revenue is identified, Contractor agrees that Espire shall be entitled to its full interest therein in accordance with the Fee structure set forth in Section 2.2, which shall be due and paid by Contractor to Espire within fifteen (15) days of the discovery of any such diverted revenue.

**3.6. Enforcement by Injunction**. Contractor acknowledges that the protections of Espire set forth in Sections 3.4 and 3.5 of this Agreement are of vital concern to Espire, and that monetary damages for any violation thereof would not adequately compensate Espire. Accordingly, Contractor agrees that the restrictions set forth in Sections 3.4 and 3.5 of this Agreement are reasonable and that, in addition to any other remedy, Espire shall be entitled to enforce such Section by injunction and without the necessity of posting a bond.

**ARTICLE 4**
**INDEMNIFICATION**

**4.1 Indemnification.**

(1)     Contractor agrees to indemnify and hold harmless Espire and each of his employees, directors, officers, subcontractors, agents or other members of its workforce ("indemnified party"), against all actual and direct losses suffered by the indemnified party and all liability to third parties arising from or in connection with any actual or alleged breach of this Agreement or from any negligence or wrongful acts or omissions by the Contractor, including any such conduct which results in the loss of any client accounts by Espire.

(2)     Accordingly, Contractor agrees to reimburse Espire for any and all actual and direct losses, liabilities, lost profits, fines, penalties, costs or expenses (including reasonable attorneys' fees) which may for any reason be imposed upon any indemnified party by reason of any suit, claim, action proceeding or demand by any third party that results from the indemnifying party's breach of any provision of this Agreement or from any negligence, wrongful act or omissions by Contractor. Contractor's obligation to indemnify the indemnified party shall survive the expiration or termination of this Agreement.

## ARTICLE 5
## REPRESENTATIONS AND WARRANTIES

### 5.1. Contractor's Representations and Warranties.

(a)     Contractor represents and warrants that: (i) he/she/it has the full power and authority necessary to enter into this Agreement; (ii) this Agreement has been duly authorized by all necessary action on the part of Contractor and has been duly executed and delivered by him/her/it; and (iii) the execution by Contractor of this Agreement and the performance of his/her/its obligations hereunder will not breach or violate any other agreement to which he/she/it is a party.

(b)     Contractor warrants that all Services provided hereunder will be performed pursuant to this Agreement in a good, workmanlike manner in accordance with industry standards of care, skill, and diligence used by persons who are skilled, trained and experienced with respect to the Services to be provided hereunder. Contractor shall be solely responsible for obtaining all third-party releases related to copyrights, trademarks, or other intellectual property that Contractor incorporates into any materials that are produced for or provided to Espire by Contractor as part of the Services.

(c)     Contractor agrees that Contractor will promptly make full written disclosure to Espire, and hereby assigns to Espire, or its designee, all of Contractor's right, title, and interest in and to any and all Inventions, whether or not patentable, that Contractor may solely or jointly conceive or develop or reduce to practice, or cause to be conceived or developed or reduced to practice, during the course of performing the Services hereunder (collectively referred to as "Espire Inventions"). Contractor further acknowledges that all original works of authorship that are created or contributed to by Contractor (solely or jointly with others) within the scope of and during the period of Contractor's performance of Services are to be deemed "works made for hire," as that term is defined in the United States Copyright Act (17 U.S.C. Section 101), and Espire will own all right, title and interest in such works, including all copyright and all intellectual property therein shall be the sole property of Espire or its designee for all territories of the world in perpetuity, including any and all copyright registrations, copyright applications and all other copyrightable materials, including any renewals and extensions thereof, and in and to all works based upon, derived from, or incorporating the works covered by such copyrights

and in and to all income, royalties, damages, claims, and payments now or hereinafter due or payable with respect thereto, and in all causes of action, either in law or in equity for past, present or future infringement based on said copyrights, and in and to all rights corresponding to the foregoing throughout the world. To the extent any of such works are deemed not to be "works made for hire," Contractor hereby assigns the copyright and all other intellectual property rights in such works to Espire.

**5.2. Espire's Representations and Warranties**. Espire represents and warrants that: (i) it has the full power and authority necessary to enter into this Agreement; (ii) this Agreement has been duly authorized by all necessary action on the part of Espire and has been duly executed and delivered and (iii) the execution by Espire of this Agreement and the performance of its obligations hereunder will not breach or violate any other agreement to which Espire is a party.

<h1 style="text-align:center">ARTICLE 6<br>ADDITIONAL TERMS AND PROVISIONS</h1>

**6.1. Legal Fees.** If either Party brings an arbitration proceeding or a lawsuit in order to enforce or interpret the provisions of this Agreement, the prevailing party shall be entitled to reasonable attorney's fees and costs in addition to any other relief to which that Party may be entitled.

**6.2. Governing Law/Jurisdiction.** The interpretation, construction, and enforcement of this Agreement shall be in accordance with the Law of the State of California. Any claim, dispute or disagreement arising out of, connected with or in respect of this Agreement may be brought only in the courts of the State of California or the federal courts within the State of California, which courts shall have exclusive jurisdiction thereof, and each Party hereby waives any claim that such courts do not have jurisdiction or are an inconvenient forum. Contractor expressly and unequivocally submits and consents to personal jurisdiction in the State of California and waives all claims to forum non-conveniens.

**6.3. Amendments.** Any changes or amendments to this Agreement must be made in writing and signed by the Parties hereto.

**6.4. Parties Bound.** This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, executors, administrators, successors and permitted assigns.

**6.5. Force Majeure.**

(a) Notwithstanding any provision contained herein to the contrary, should any matter or condition beyond the reasonable control of either Party ("force majeure") (such as, but not limited to war, public emergency or calamity, strike, labor disturbance or disruption, fire, interruption of transportation service, breakdown of mechanical or electrical equipment, casualty, physical disability, illness, earthquake, flood, Act of God, or other disturbance, or any governmental restriction whether federal, state or local) prevent performance by a Party to this Agreement, then the Parties shall be relieved of their respective obligations to the extent commensurate with the force majeure.

(b) Each Party shall provide immediate notice of any anticipated or threatened event of force majeure to enable the other Party to mitigate damages.

**6.6. Miscellaneous.** If any part of this Agreement is determined to be illegal, invalid, void or unenforceable, then that provision shall be deemed severed from the remaining provisions of this Agreement, and the remaining provisions shall be enforceable. Any severed provisions may be used to determine the intent of the Parties when interpreting the remaining provisions in the Agreement. This Agreement shall inure to the benefit of, and be binding upon, the Parties hereto and their heirs and executors. Headings or titles at the beginning of sections and paragraphs are for convenience of reference only, and shall not be considered a part of this Agreement, and shall not influence its construction. If Espire does not enforce the performance of a particular term in this Agreement, Espire does not thereby waive his right to enforce any subsequent breach or failure to perform by Contractor.

**6.7. Assignment**. Contractor may not assign or transfer this Agreement without the prior written consent of Espire, which approval may be withheld. Espire may freely assign or transfer this Agreement.

**6.8. Notices**. All notices to be given under this Agreement by either Party will be written and sent by delivery in person, or by certified mail, return receipt requested, postage pre-paid, or by express mail delivery services, addressed to the Party at the address set forth in the first paragraph on page 1 of this Agreement, or to such other address as notified in writing by the Parties. Notice will be deemed given as of the date of receipt or rejection or inability to deliver shown on the return receipt or similar advice of delivery or attempted delivery, or if in person, the affidavit of the person making such delivery shall be conclusive proof of the delivery and the date and time of delivery.

**6.9. No Encouragement or Disparagement**. Contractor agrees that Contractor will make no derogatory, disparaging or defamatory remarks or statements, whether verbal, written, or digital, to any person or entity about Espire, its members, officers, employees, agents, or attorneys, or Espire's services, business practices and/or clients or prospective clients. This obligation will remain in effect notwithstanding termination of this Agreement.

**6.9. Entire Agreement.** This instrument embodies the entire Agreement between the parties hereto with respect to the transactions contemplated herein, and there have been no agreements, representations or warranties between the parties other than those set forth or provided for herein.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement through their duly authorized officers or representatives on the day and year (the "Effective Date") written above.

FOR CLIENT:                                      FOR CONTRACTOR:

DocuSigned by:                                   Brennan Kastner
                                                 DocuSigned by:
_____                          _____
A514465D32AD4B8...                               78C741B436324B3...
**Lisa Navarro, Chief Executive Officer**