UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

ESPIRE ADS LLC, THE BLU MARKET, INC.,      1:21-cv-10623-JGK
ex rel. LISA NAVARRO, THE BLU MARKET
LLC, *ex rel.* LISA NAVARRO, and LISA
NAVARRO individually,

                Plaintiffs,

     v.

TAPP MARKET INFLUENCERS, LLC, TAPP
INFLUENCERS CORP., THE BLU
MARKET, INC., THE BLU MARKET LLC,
STEVEN FORKOSH, BRENNAN KASTNER,
and JUSTIN EMERT,

                Defendants

----------------------------------------------------------------x

# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

RICHARD L. HERZFELD, P.C.
Attorneys for Defendants
112 Madison Avenue
8th Floor
New York, N.Y.  10016
(212) 818-9019
Rherzfeld@herzfeldlaw.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

OVERVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FAILURE TO NAME A NECESSARY PARTY . . . . . . . . . . . . . . . . . 2

ESPIRE'S LACK OF CAPACITY . . . . . . . . . . . . . . . . . . . . . . . 3

JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

FORUM SELECTION AGREEMENT . . . . . . . . . . . . . . . . . . . . . 4

THE FORKOSH NAVARRO JOINT VENTURE AGREEMENT . . . . . . . . . . 5

TORTIOUS INTERFERENCE (Counts III, XI, XV. and XIX) . . . . . . . . . . . 8

TRADE SECRETS (Counts I and II) . . . . . . . . . . . . . . . . . . . . . . 10

RESTRICTIVE COVENANTS (Counts V, XII and XVI) . . . . . . . . . . . . . 14

ANTITRUST (Counts XXVII and XXVIII) . . . . . . . . . . . . . . . . . . . 17

RICO CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

COMPUTER FRAUD AND ABUSE ACT (Counts XX to XXIV) . . . . . . . . . . 21

COPYRIGHT INFRINGEMENT (Counts XXV-XXVI) . . . . . . . . . . . . . 22

BREACH OF FIDUCIARY DUTY/GOOD FAITH AND FAIR DEALING . . . . . . . 23

FRAUD BASED COUNTS (Counts VI, VII, VIII) . . . . . . . . . . . . . . . . 24

INJURIOUS FALSEHOOD (Count IV) . . . . . . . . . . . . . . . . . . . . . 24

DERIVATIVE CLAIMS (Counts XXXIII-XXXVII) . . . . . . . . . . . . . . . . 25

REFORMATION OF THE INOPERATIVE PRELIMINARY AGREEMENT (Count XXXVIII) . 25

FRAUDULENT CONVEYANCE (Count XXXI) . . . . . . . . . . . . . . . . . 25

PIERCING THE CORPORATE VEIL . . . . . . . . . . . . . . . . . . . . . 25

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

PRINTING CERTIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . 29

TABLE OF AUTHORITIES

Anatian v. Coutts Bank (Switzerland) Ltd., 193 F.3d 85, 88 (2d Cir. 1999). . . . . . . . . . . . . . . . 21

Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 457 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Arcadia Biosciences, Inc. v. Vilmorin & Cie, 356 F. Supp. 3d 379, 394-99 (S.D.N.Y. 2019) . . . . 9

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Ashland Mgt., Inc. v. Janien, 82 N.Y.2d 395, 407 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Bridgestone/Firestone, Inc. v. Recovery Credit Svcs., Inc., 98 F.3d 13, 20 (2d Cir.1996) . . . . 24

Broker Genius, Inc. v. Zalta, 280 F. Supp. 3d 495 (S.D.N.Y. 2017) . . . . . . . . . . . . . . . . . . . . . 13

Burke v. Jacoby, 981 F.2d 1372, 1381 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

BWP Media USA Inc. v. Hollywood Fan Sites, LLC, 69 F. Supp. 3d 342 (S.D.N.Y. 2014) . . 19, 20

Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir.2002) . . . . . . . . . . . . . . . . . . . . . . . 2

City of New York v. Cyco.Net, Inc., 383 F. Supp. 2d 526, 545-46 (S.D.N.Y. 2005). . . . . . . . . . 19

Civic Ctr. Motors, Ltd. v. Mason St. Import Cars, Ltd., 387 F. Supp. 2d 378 (S.D.N.Y. 2005). . . 22

Clean Coal Tech., Inc. v. Leidos, Inc., 377 F. Supp. 3d 303 (S.D.N.Y. 2019) . . . . . . . . . . . . . . 8

Cornell v. T.V. Dev. Corp., 17 N.Y.2d 69, 75 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CP III Rincon Towers, LLC v. Cohen, 10-CV-4638 2022 WL 61318, at *12 (S.D.N.Y. 2022) . . 16

Cruz v. FXDirectDealer, LLC, 720 F3d 115, 121 (2d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . 19

De Sole v. Knoedler Gallery, LLC, 974 F. Supp. 2d 274, 304 fn 12 (S.D.N.Y. 2013) . . . . . . . . 26

Design Partners, Inc. v. Five Star Electric Corp., 12CV2949 2017 WL 818364, at *13-14 (E.D.N.Y. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

EEOC v. Port Auth. of N.Y. & N.J., 768 F.3d 247, 254 (2d Cir.2014) . . . . . . . . . . . . . . . . . . . . . . 1

Elsevier Inc. v. Doctor Evidence, LLC, 17-CV-5540, 2018 WL 557906, at *4 (S.D.N.Y. 2018), . 12

i

Emerald Asset Advisors, LLC v. Schaffer, 895 F.Supp.2d 418, 429 (E.D.N.Y.2012) . . . . . . . . . 3

Executive Leasing Co., Inc. v. Leder, 191 A.D.2d 199, 594 N.Y.S.2d 217 (1st Dept. 1993) . . . . 8

Feist Publications, Inc. v. Rural Telephone Service Co., 499 U.S. 340, 361 (1991) . . . . . . . . . 22

Friedman v. Otsego Mut. Fire Ins. Co., 179 A.D.3d 1023, 1025 (2d Dept. 2020) . . . . . . . . . . . 7

Gasery v. Kalakuta Sunrise, LLC, 422 F. Supp. 3d 807, 819 (S.D.N.Y. 2019) . . . . . . . . . . . . . 23

Geneva Pharm. Tech. Corp. v. Barr Labs. Inc., 386 F.3d 485, 506-07 (2d Cir. 2004) . . . . . . . 17

Gordon v. Dino De Laurentiis Corp., 141 A.D.2d 435, 529 N.Y.S.2d 777, 779 (1988) . . . . . . . 10

Grammas v. Lockwood Assocs., LLC, 95 A.D.3d 1073, 1074–75 (2d Dept.2012) . . . . . . . . . . 26

Harris v. Provident Life & Acc. Ins. Co., 310 F.3d 73, 80 (2d Cir. 2002) . . . . . . . . . . . . . . . . 23

Hayden v. Paterson, 594 F.3d 150, 160–61 (2d Cir.2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Henneberry v. Sumitomo Corp. of Am., 415 F. Supp. 2d 423, 470-73 (S.D.N.Y. 2006) . . . . . . . 24

In re UFG Intern., Inc., 225 BR 51, 55-56 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Indem. Ins. Co. of N. Am. v. K-Line Am., Inc., 2008 WL 4922327, at *10 (S.D.N.Y. 2008). . . . . . 4

Int'l Bus. Machines Corp. v. Dale, No. 2011 WL 4012399, at *4 (S.D.N.Y. 2011) . . . . . . . . . . . 10

Just Venture Corp. v. Steven Forkosh, NY Sup. Ct., NY Co., 654712/2017 . . . . . . . . . . . . . . . 26

Katz v. Travelers, 241 F. Supp. 3d 397, 408-09 (E.D.N.Y. 2017). . . . . . . . . . . . . . . . . . . . . . . . . 9

Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir.2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Lombard v. Booz-Allen & Hamilton, Inc., 280 F.3d 209, 214 (2d Cir. 2002) . . . . . . . . . . . . . . . 10

Lopresti v. Mass. Mut. Life Ins. Co., 5 Misc. 3d 1006(A), aff'd, 30 A.D.3d 474 (2006) . . . . . . . . 17

Matias v. Mondo Props. LLC, 43 A.D.3d 367, 367–368 (1st Dept.2007) . . . . . . . . . . . . . . . . . . 26

McIntosh Builders, Inc. v. Ball, 247 A.D.2d 103, 105 (3d Dept. 1998). . . . . . . . . . . . . . . . . . . . . 3

Michael I. Weintraub, M.D., P.C. v. Schwartz, 131 A.D.2d 663, 665–66 (2d Dept. 1987) . . . . . 16

Milan Music, Inc. v. Emmel Commc'ns Booking, Inc., 37 A.D.3d 206 (2007) . . . . . . . . . . . . . . 10

Miller Inv. Trust v. Xiangchi Chen, 967 F.Supp.2d 686, 690 (S.D.N.Y.2013) . . . . . . . . . . . . . . . 3

MS Elmsford Snack Mart, Inc. v. Weil, 2018 WL 1281829, at *5 (S.D.N.Y.2018) . . . . . . . . 6, 16

Nantong Sanhai Garment Co., Ltd. v. Fab Mill Inc., 2022 WL 540756, at *3 (S.D.N.Y. 2022) . . 25

Napster, LLC v. Rounder Records Corp., 761 F. Supp. 2d 200, 206-07 (S.D.N.Y. 2011) . . . . . . 5

Nexans Wires S.A. v. Sark–USA, Inc., 319 F.Supp.2d 468, 474 (S.D.N.Y.2004) . . . . . . . . . . . 22

PK Rest., LLC v. Lifshutz, 138 A.D.3d 434, 436 (1st Dept. 2016). . . . . . . . . . . . . . . . . . . . 26, 27

POSCO Energy Co. v. FuelCell Energy, Inc., 105 UCC Rep Serv. 2d 1045 (S.D.N.Y. 2021). . 7, 9

Power Integrations, Inc. v. De Lara, 2020 WL 1467406, at *3-24 (S.D. Cal 2020) . . . . . . . . . . 15

Principia Partners LLC v. Swap Fin. Group, LLC, 2019 WL 4688711, at *3 (S.D.N.Y. 2019) 12, 14

Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC, 813 F. Supp. 2d 489

 (S.D.N.Y. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Ray v. Ray, 799 F. App'x 29, 31 (2d Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Rodgers v. Rodgers, 235 N.Y. 408, 410 (1923) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

S & S Mgt., LLC v. Berk, 65 A.D.3d 1031, 1032-33 (2d Dept. 2009) . . . . . . . . . . . . . . . . . . . . 7

Siegler v Sorrento Therapeutics, Inc., 2019 WL 581719, at *7 (S.D. Cal. 2019) . . . . . . . . . . . . 22

Sira v. Morton, 380 F.3d 57, 67 (2d Cir.2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Sony Music Entertainment Inc. v. Robison, RICO Bus Disp Guide 10218

 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 23, 24

Tri-Star Light. Corp. v. Goldstein, 151 A.D.3d 1102, 1107 (2d Dept. 2017) . . . . . . . . . . . . . . . 13

Tucker v. Wyckoff Heights Med. Ctr., 52 F.Supp.3d 583 (S.D.N.Y. 2014) . . . . . . . . . . . . . . . . 10

Watkins v. Smith, No. 12 Civ. 4635(DLC), 2013 WL 655085, at *9 (S.D.N.Y. 2013) . . . . . . . . 20

STATUTES/RULES

15 U.S.C. § 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

18 U.S.C. § 1030(a)(2)(c); . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

18 U.S.C. §1030(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

18 U.S.C. § 1030(a)(5)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

18 USCA § 1030(e)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

18 U.S.C. 1832 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

18 U.S.C. § 1836(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

18 U.S.C. §§ 1962(a)-(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Federal Rule of Civil Procedure  Rule 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Federal Rule of Civil Procedure 12(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Federal Rule of Civil Procedure 12 (b)(2),(3),(6)and (7) . . . . . . . . . . . . . . . . . . . . . . . . 1

Federal Rule of Civil Procedure 17 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

NY CPLR § 302  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

NY Gen.Business Law §§ 340-41 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

NY Limited Liability Co. Law § 808(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

OVERVIEW

Plaintiff, Espire Ads. LLC ("Espire"), is engaged in the business of social media influencing. It was secretly formed by plaintiff Lisa Navarro ("Navarro") while she was still employed at defendant The Blu Market, Inc. ("Blu Market"), a social media influencing company founded by defendant Steven Forkosh ("Forkosh").

By their first amended complaint ("FAC", Exhibit 1), plaintiffs assert 40 causes of action alleging improper conduct by the defendants in connection with Espire's business. Deficiencies in the FAC, which include lack of capacity, lack of personal jurisdiction, failure to name a necessary party and factual and legal deficiencies in the causes of action, require the dismissal of each cause of action. Accordingly, defendants move to dismiss the FAC pursuant to FRCP Rules 9(b) and FRCP 12 (b)(2),(3),(6)and (7).

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A court will not consider mere conclusory allegations that lack a factual basis. Hayden v. Paterson, 594 F.3d 150, 160–61 (2d Cir.2010). A plaintiff's complaint "must at a minimum assert non-conclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." EEOC v. Port Auth. of N.Y. & N.J., 768 F.3d 247, 254 (2d Cir.2014) (citing Iqbal, 556 U.S. at 680, 129 S.Ct. 1937) (alterations and internal quotation marks omitted).

In assessing the sufficiency of the complaint, a court may consider "any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." Sira v. Morton, 380 F.3d 57, 67 (2d

Cir.2004) (citations and internal quotation marks omitted). "Integral" documents are those "either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." <u>Chambers v. Time Warner, Inc</u>., 282 F.3d 147, 153 (2d Cir.2002).

FAILURE TO NAME A NECESSARY PARTY

Kvrma, LLC is a California limited liability company formed by Navarro in 2019. Its authority has deem suspended for failure to pay taxes (Exhibit 20).

Kvrma ("Kvrma Corp.") is a California not-for-profit corporation formed by Navarro in 2019 (Exhibit 21).

Each is owned and operated by Navarro in whole or in part.

Kvrma Corp. holds itself out as a 501(c)(3) entity although it is not (Exhibit 22).

Although claiming it is a "foundation", Kvrma Corp. is also engaged in social media influencing as well as other business such as the sale of clothing (Exhibit 23).

The complaint has been framed as an action by Espire and Navarro for various issues relating to Espire's intellectual property. However, Navarro has recently stated on an Instagram broadcast that Blu Market's intellectual property had been purchased from it by Kvrma (not Espire) for $50,000. As it is unclear which Kvrma Navarro refers to in the broadcast, the references herein are to Kvrma without specifying which one.

Navarro stated that all business was being moved to Kvrma and further stated that she is out of the business because everyone was competing for influencers and that Plug Co., a giant in the social media influencing business, told advertisers not to work with her. A transcript is of the broadcast is excerpted at Exhibit 24.The video, which is a large file, is available for the court's review.

If one or both of the Kvrmas owns the intellectual property in issue and the Espire business

has been moved, then it/they are the real party in interest and a necessary party to this action for the alleged damages from the wrongful use of that property.

Espire claims a loss of business from defendants' actions and yet Navarro is operating Kvrma in competition with Espire in breach of her fiduciary duties to Espire (just as Navarro secretly stole business and intellectual property from Blu Market when she formed and operated Espire). If the Espire influencing business is now conducted by Kvrma, then it is the real party in interest and again, a necessary party to this action.

In terms of infringement and the loss of business, it is also significant that in the broadcast, Navarro states that she is out of the "app install lane" and exclusively engaged in survey marketing. Further, the fact that Plug was able to tell advertisers not to work with Navarro underscores the fact that advertisers and influencers are not proprietary or confidential at all.

ESPIRE'S LACK OF CAPACITY

Espire did business in New York prior to relocating to California. Exhibit 11 is a printout of its New York Workers Compensation insurance, a New York judgment against it for unpaid workers compensation insurance contributions and an insertion order showing Espire's New York address.

Espire never registered as a foreign business entity. Exhibit 12.

Federal Rule of Civil Procedure 17 governs litigants' capacity to sue in Federal Court. The capacity of a limited liability company is governed by section 17(b)(3) which looks to the state where the court is located. In New York, operation of a foreign limited liability company without registration precludes it from maintaining an action. See Limited Liability Co. Law §808(a); McIntosh Builders, Inc. v. Ball, 247 A.D.2d 103, 105 (3d Dept. 1998).

Espire failed to register when doing business in New York and as such it lacks capacity to proceed.

JURISDICTION

Espire lacks jurisdiction over defendants Emert and Kastner. On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), "the plaintiff bears the burden of showing that the court has (personal) jurisdiction over the Defendant." Miller Inv. Trust v. Xiangchi Chen, 967 F.Supp.2d 686, 690 (S.D.N.Y.2013) (quoting Metro. Life Ins. Co. v. Robertson–Ceco Corp., 84 F.3d 560, 566 (2d Cir.1996) (alteration in original)).

Personal jurisdiction over a non-resident defendant in a federal diversity action is determined by the law of the forum state. Emerald Asset Advisors, LLC v. Schaffer, 895 F.Supp.2d 418, 429 (E.D.N.Y.2012). CPLR 302 provides for jurisdiction over non-domiciliaries. Each of its sections require a degree of contact with the state, none of which is present here.

Plaintiffs assert jurisdiction over Emert and Kastner based on the assertion that TAPP Corp.'s address at 400 Broome Street, New York, New York is their last known business address (FAC, par.14-15). However, as set forth in their affidavits, neither engages in activities at that location. Each works remotely just as they did when with Espire. Emert resides and works in Florida and has had no presence in New York. Kastner resides and works in Texas. See Exhibits 26, 28. In fact the Espire agreement with Kastner shows his residence is in Texas (Exhibit 27) .

None of the requisites of CPLR § 302 are alleged or can be met and jurisdiction over Emert and Kastner is lacking.

FORUM SELECTION AGREEMENT

In addition, the agreement with Kastner (Exhibit 27, Par. 6.2) provides for exclusive jurisdiction in California for any disputes regarding his agreement. A forum selection clause should be enforced, even in the face of potential judicial inefficiency, unless the resisting party can clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as

fraud or overreaching. See  M/S Bremen v. Zapata Off–Shore Co., 407 U.S. 1 at 10, 15. La Fondiaria Assicurazione, S.P.A. v. Ocean World Lines, Inc. in personam, 02 CIV.40 JSM, 2002 WL 31812679 (S.D.N.Y. Dec. 12, 2002); Indem. Ins. Co. of N. Am. v. K-Line Am., Inc., 06 CIV. 0615 (BSJ), 2008 WL 4922327, at *10 (S.D.N.Y. Feb. 27, 2008).  Kastner's forum selection clause should be enforced.

THE FORKOSH NAVARRO JOINT VENTURE AGREEMENT

Navarro devotes 16 causes of action (Counts V-XI, XXXI-XXXIX) to the failed attempt at a joint venture between Navarro and Forkosh. What Navarro omits from her pleading is that the agreement never came to pass. Putting aside Navarro's fanciful claims as to how this agreement opened up access to Espire trade secrets (an issue addressed below in connection with the trade secret claims), the documentary evidence shows that (a) the agreement never was effectuated, (b) the agreement was rescinded, (c) Navarro could not have accomplished the transfer of a 50% interest in Espire as required and (d) if a 50% interest had been transferred, then Navarro, as a less than 50% owner,  lacks the authority authorize Espire to enter into this action against Forkosh.

Moreover, although Navarro claims in the complaint that Forkosh provided this document to her (FAC, par. 32), the agreement was provided by Navarro and her attorney. See Exhibit 14.

Whatever the signed agreement might be considered, documentary evidence establishes that it was never effectuated and Exhibits 17-19 reflect that the agreement was rescinded as permitted under New York law. Rodgers v. Rodgers, 235 N.Y. 408, 410 (1923). Navarro has no right to assert any claim based upon the agreement.

Napster, LLC v. Rounder Records Corp., 761 F. Supp. 2d 200, 206-07 (S.D.N.Y. 2011), is on point. As set forth therein,

"To prevail on a breach of contract claim under New York Law, a plaintiff must prove

5

(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." Terwilliger v. Terwilliger, 206 F.3d 240, 246 (2d Cir.2000) (internal quotation marks omitted).

Under clearly established New York law, "(o)nce an agreement has been rescinded, there can be no claims based on the cancelled agreement unless the right to make such claims is expressly or impliedly reserved within the terms of the rescission." Milan Music, Inc. v. Emmel Commc'ns Booking, Inc., 37 A.D.3d 206, 206, 829 N.Y.S.2d 485 (App.Div. 3d Dep't 2007); see also 22A N.Y.Jur.2d Contracts § 489.

See also Burke v. Jacoby, 981 F.2d 1372, 1381 (2d Cir. 1992), affirming the dismissal of a breach of contract complaint as a matter of law where the Stockholders Agreement which plaintiff relied on had been rescinded by vote of the stockholders approving the company's acquisition and in failing to assert any desire to rescind or dissent from the acquisition, the rescinded Stockholders Agreement provided no basis for a claim.

Alternatively, the actions of Navarro make it clear that the agreement was abandoned and its provisions waived. See MS Elmsford Snack Mart, Inc. v. Weil, 14-CV-2226(NSR), 2018 WL 1281829, at *5 (S.D.N.Y. Mar. 5, 2018)

A contract is abandoned when "one party acts in a manner inconsistent with the existence of the contract and the other party acquiesces in that behavior. That is, the refusal of one party to perform (the) contract amounts to an abandonment of it, leaving the other party to his (or her) choice of remedies, but his (or her) assent to abandonment dissolves the contract so that he (or she) can neither sue for a breach nor compel specific performance." Aliperti v. Laurel Links, Ltd., 810 N.Y.S.2d 921, 922 (Mem) (2d Dept. 2006).

The agreement which Navarro seeks to enforce includes a restrictive covenant precluding Navarro and Forkosh from continuing in the social media marketing field. Navarro, however, has not only continued with Espire, she also engages in social media marketing through Kvrma. Her own actions continuing with Espire and Kvrma is further evidence that whatever agreement there might have been, it was never implemented and its provisions waived.

Another basis to reject the claims would be the failure to satisfy the condition precedent of

6

a transfer of a 50% Espire interest to Forkosh (Exhibit 14, par. 4). See <u>POSCO Energy Co. v. FuelCell Energy, Inc</u>., 105 UCC Rep Serv. 2d 1045 (S.D.N.Y. Sept. 16, 2021).

In <u>POSCO</u>, plaintiff was to deliver legended certificates to issue new shares without the legend. POSCO did not allege that it presented the certificates to FuelCell to satisfy the condition precedent. As such, FuelCell was not obligated to remove the restrictive legends from POSCO's shares.

The court held that "Because it has not plausibly alleged satisfaction of the condition precedent, POSCO has failed to state a claim for breach of contract based on FuelCell's alleged delay".

Moreover, even if it were not rescinded, the Espire operating agreement (Exhibit 15) makes it clear that Navarro's representation that she had sole ownership of Espire and unfettered right to transfer 50% of the company was false, rendering the agreement void ab initio. See <u>S & S Mgt., LLC v. Berk</u>, 65 A.D.3d 1031, 1032-33 (2d Dept. 2009) (plaintiff misrepresented ownership and authority to convey rel property-the contract was void ab initio); <u>Friedman v. Otsego Mut. Fire Ins. Co.</u>, 179 A.D.3d 1023, 1025 (2d Dept. 2020) (based on the material misrepresentation made by the plaintiff, the subject policies were void ab initio) .

The preliminary agreement was also an agreement to agree. The "joint venture" agreement was not the final agreement just a step in that direction. It provides that the parties "shall" enter into a "50%/50% partnership" for the company. When completed, Forkosh and Navarro would each have 50% of all three entities, That never came to pass and as far as Navarro's commitment, it could not come to pass.

It also provided for the creation of an operating agreement for the anticipated venture which also never came to pass. No joint venture was created. No transfer of interests occurred. No

operating agreement was drafted for the proposed joint venture.

Although it provided for the payment of salaries, needless to say no payments were made. No entity was created and no tax return was filed.

Finally, Navarro lacks the capacity to initiate an action by Espire for this, or any other claim if the agreement were in effect. <u>Executive Leasing Co., Inc. v. Leder</u>, 191 A.D.2d 199, 594 N.Y.S.2d 217 (1st Dept. 1993), is on point. There, one 50% shareholder (Bateman) sued the other (Leder) in the name of the corporation for damages arising out of the breach of a furniture lease. Although it appears that defendant did not raise the issue and moved for partial summary judgment on other grounds, the First Department, sua sponte, granted summary judgment dismissing the complaint based the equal ownership.

TORTIOUS INTERFERENCE (Counts III, XI, XV. and XIX)

Plaintiffs assert a variety of tortious interference claims against TAPP Corp. (Count III), Forkosh (Count XI), Emert (Count XV), Kastner (Count XIX). Each assert the same boilerplate claim that by virtue of the "foregoing" without any articulation of which of the foregoing 80+ allegations are referenced, the defendant interfered with and caused the breach of contracts between Espire and employees, influencers, contractors and clients.

As stated in <u>Clean Coal Tech., Inc. v. Leidos, Inc.</u>, 377 F. Supp. 3d 303, 318-24 (S.D.N.Y. 2019)

> To demonstrate tortious interference with contract, a plaintiff must prove (i) "the existence of a valid contract between the plaintiff and a third party'; (ii) the 'defendant's knowledge of the contract'; (iii) the 'defendant's intentional procurement of the third-party's breach of the contract without justification'; (iv) 'actual breach of the contract'; and (v) 'damages resulting therefrom.' " Additionally, a plaintiff must allege "that the defendant's actions were the 'but for' cause of the alleged breach — in other words, that there would not have been a breach but for the activities of the defendant." <u>RSM Prod. Corp. v. Fridman</u>, 643 F.Supp.2d 382, 405 (S.D.N.Y. 2009), aff'd, 387 F. App'x 72 (2d Cir. 2010) (summary order). "Although on a motion to dismiss the

8

allegations in a complaint should be construed liberally, to avoid dismissal of a tortious interference with contract claim a plaintiff must support his claim with more than mere speculation." <u>Burrowes v. Combs</u>, 25 A.D.3d 370, 808 N.Y.S.2d 50 (1st Dep't 2006).

Further, critical to any cause of action is the identification of the specific entities with which the plaintiff had contracts or prospective business relations. <u>Katz v. Travelers</u>, 241 F. Supp. 3d 397, 408-09 (E.D.N.Y. 2017).

In the present case, there is no articulation as to what was done by which particular defendant which would constitute tortious interference or which employees, influencers, contractors and clients breached their contracts. See also <u>POSCO Energy Co. v. FuelCell Energy, Inc</u>., <u>supra</u>-failure to identify any specific third party with which POSCO had a business relationship.

The only actual allegation of interference is the claim that defendants somehow interfered with a "deal" with Fluent, LLC. For Fluent, plaintiffs assert at FAC, par. 61 that

> upon information and belief, defendant TAPP INFLUENCERS CORP., intentionally and maliciously interfered with plaintiff ESPIRE ADS LLC's deal to sell a thirty percent (30%) equity stake to non-party FLUENT, LLC, plaintiff ESPIRE ADS LLC's largest client.

Once again, there is a lack of any allegations from which one could conclude what the "deal" had been, if there had been a signed agreement, how it was interfered with, by whom or that but for the alleged interference, Fluent would have proceeded. See <u>Arcadia Biosciences, Inc. v. Vilmorin & Cie</u>, 356 F. Supp. 3d 379, 394-99 (S.D.N.Y. 2019) dismissing an interference claim which failed to allege that the agreement would have been consummated but for the alleged interference and more important, the allegation was entirely conclusory, with no factual allegations to substantiate the assertion.

If plaintiffs are trying to state a claim for intentional interference with prospective economic advantage, that claim also fails. Under New York law, "a party must allege that: '(i) the plaintiff had

9

business relations with a third-party; (ii) the defendants interfered with those business relations; (iii) the defendants acted for a wrongful purpose or used dishonest, unfair, or improper means; and (iv) the defendants' acts injured the relationship.' " Lombard v. Booz-Allen & Hamilton, Inc., 280 F.3d 209, 214 (2d Cir. 2002). A plaintiff must also establish causation by demonstrating "that she 'would have entered into an economic relationship but for the defendant's wrongful conduct.' " Tucker v. Wyckoff Heights Med. Ctr., 52 F.Supp.3d 583, 598 (S.D.N.Y. 2014) (quoting Memnon v. Clifford Chance US, LLP, 667 F.Supp.2d 334, 349 (S.D.N.Y. 2009) ). None of these elements are alleged.

Finally, there is the deficiency which holds true for each of the causes of action, plaintiffs fail to allege damages. "Without a clear demonstration of damages, there can be no claim for breach of contract." Milan Music, Inc. v. Emmel Commc'ns Booking, Inc., 37 A.D.3d 206, 829 N.Y.S.2d 485, 486 (2007). A complaint that fails to demonstrate how an alleged breach caused damage to the plaintiff is "fatally deficient." Gordon v. Dino De Laurentiis Corp., 141 A.D.2d 435, 529 N.Y.S.2d 777, 779 (1988); see also Int'l Bus. Machines Corp. v. Dale, No. 7:11-CV-951 (VB), 2011 WL 4012399, at *4 (S.D.N.Y. Sept. 9, 2011) ("The fatal aspect of defendant's counterclaim is her inability to show damages."). Allegations of damages must consist of more than "boilerplate," and "the pleadings must set forth facts showing the damage upon which the action is based." Gordon v. Dino De Laurentiis Corp., 141 A.D.2d 435, 436 (1st Dept. 1988).

TRADE SECRETS (Counts I and II)

Espire's alleged trade secrets are set forth in paragraph 19 of the FAC, to wit:

source code, marketing plans, client compilations, influencer compilations, programs, as well as serving client needs through specified methods, techniques, processes, and procedures, and other such information not generally known to the public from which plaintiff ESPIRE ADS LLC derives independent economic value, constituting plaintiff ESPIRE ADS LLC's trade secrets as defined by 18 U.S.C. § 1839(3).

It claims that the confidentiality of these secrets is protected by utilizing myriad confidentiality

agreements and non-disclosure agreements to, *inter alia*, partners, employees, and contractors as an express condition precedent to revealing such trade secrets (FAC, par. 20), including a July 26th, 2017 amended and restated operating agreement to which Emert was a party (FAC, par. 21) and an independent contractor agreement to which Kastner was a party (FAC, par. 25).

Finally plaintiffs state that the rescinded preliminary agreement between Navarro and Forkosh gave Forkosh access to all of Espire's "trade secrets" and the restrictions on that agreement preclude the disclosure of those secrets (FAC, par. 35-38).

Accordingly, plaintiffs assert a statutory claim for trade secret misappropriation under 18 U.S.C. § 1836(b) against TAPP Corp., Forkosh, Emert and Kastner (but not TAPP Market Influencers, LLC ("TAPP LLC")) (Count I), reiterating the generic list of secrets which they assert were used or intended for use in interstate and/or foreign commerce (FAC, par. 73). They assert that acquisition was through theft, bribery, misrepresentation, breach of a duty to maintain secrecy imposed under a contract, inducement of a breach of breach of a duty to maintain secrecy imposed under a contract, and espionage through electronic or other means(FAC, par. 76).

They also assert a claim of unfair competition (count II) based on the same generic allegations (FAC, par. 87-90).

Neither the substance of these restrictions nor the agreements are provided. In fact, no documentation is provided to support plaintiffs' conclusory claims.

Plaintiffs' generic description of trade secrets does nothing more than track the statutory language of 18 USCA § 1839(3) which defines "trade secret" as "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored,

compiled, or memorialized physically, electronically, graphically, photographically, or in writing"

The generic claims are insufficient to support the cause of action. As stated in Principia Partners LLC v. Swap Fin. Group, LLC, 18 CIV. 7998 (AT), 2019 WL 4688711, at *3 (S.D.N.Y. Sept. 26, 2019) ,"district courts in this circuit routinely require that plaintiffs plead their trade secrets with sufficient specificity to inform the defendants of what they are alleged to have misappropriated." Medidata Solutions, Inc. v. Veeva Sys, Inc., No. 17 Civ. 589, 2018 WL 6173349, at *3 (S.D.N.Y. Nov. 26, 2018)" and dismissing the complaint when "the Court cannot discern what Plaintiff claims is proprietary and confidential apart from the software itself. As such, Plaintiff's allegation that Defendant has kept "proprietary information" does not nudge Plaintiff's DTSA claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570".

See also Elsevier Inc. v. Doctor Evidence, LLC, No. 17-CV-5540 (KBF), 2018 WL 557906, at *4 (S.D.N.Y. Jan. 23, 2018), noting that "New York and Second Circuit law ... requires the trade secret claimant to describe the secret with sufficient specificity that its protectability can be assessed", that all "confidential" information is not a trade secret and that "General allegations regarding "confidential information" and "processes" simply do not give rise to a plausible trade secrets claim".

The only identifiable potential trade secret allegation is for two copyrights plaintiffs' filed for desktop and mobile apps.  Although it will most likely turn out that the genesis of these apps is the same genesis as Blu Market's (which preceded Espire's), programs provided by third party vendor Tune, the tracking company used by both Espire and Blu Market (in fact, as set forth in the affidavits of Forkosh and Alex Vasquez, Espire's piracy was so blatant that third parties questioned if they were the same company and Navarro engaged in wholesale theft of Blu Market materials before leaving), Espire did not make effort to protect its secrecy, allegedly creating the app in July 2017 but

not filing for copyright protection until 4 years later (Exhibit 7).

Further, the alleged access to the copyrights was in the summer of 2021 (FAC, par. 64). The copyrights were not registered until November 2021, after the alleged access (Exhibit 7).

Nor is there any allegation as to Espire's efforts to protect the "trade secrets" for persons downloading the apps. In Broker Genius, Inc. v. Zalta, 280 F. Supp. 3d 495 (S.D.N.Y. 2017), the failure to do so was fatal to the claim.

To the extent that Espire may assert that influencers or customers are trade secrets the contention is absurd. Although factual issues are for a later date, for purposes of context, as stated in the affidavits of Forkosh and Emert, influencers are known to the general public; that is the whole point of influencers; the same holds true for the advertisers who want to promote their products. Moreover, apart from the fact that this is publically available information, Exhibit 4, which documents Navarro's theft of Blu Market's list of influencers and advertisers when she was a faithless employee at Blu Market, makes it clear that it was Navarro who converted this information, not the other way around..

Moreover, as set forth above, Navarro has recently proclaimed in an Instagram broadcast that (a) Blu Market's intellectual property had been purchased from it by Kvrma (not Espire) for $50,000 which defeats any claim by Espire that defendants used its intellectual property and (b) that she is out of the advertiser business because Plug Co., and major social influencing enterprise has told advertisers not to do business with her. .

In addition to the foregoing, plaintiff must show an effort to maintain secrecy.  Prerequisite to a claim of a trade secret is that the information is in fact secret. Ashland Mgt., Inc. v. Janien, 82 N.Y.2d 395, 407 (1993).  As such, In Tri-Star Light. Corp. v. Goldstein, 151 A.D.3d 1102, 1107 (2d Dept. 2017), the Second Department affirmed the dismissal of a trade secret complaint where

plaintiff failed to describe the measures taken to maintain secrecy of the alleged trade secrets.

The DTSA and trade secret causes of action are also deficient in that they do not assert how the trade secrets are being used or what damages have been caused beyond the conclusory claims which pervade the complaint. See <u>Principia Partners LLC v. Swap Fin. Group, LLC</u>, 18 CIV. 7998 <u>supra.</u>

Counts I and II are deficient and should be dismissed.

RESTRICTIVE COVENANTS (Counts V, XII and XVI)

Plaintiffs next assert that Emert and Kastner have breached certain restrictive covenants contained in their respective agreements, without providing the substance of the agreement or a copy thereof (Counts XII and XVI) and that Forkosh breached restrictive covenants in the rescinded joint venture agreement (Count V).

To the extent plaintiffs assert a breach of restrictive covenants by Emert and Kastner, no agreements are provided. Kastner's agreement is annexed as Exhibit 27.   Emert's unsigned agreement is annexed as Exhibit 15. The executed agreement would be in his Espire email account which he was locked out of.

The agreement for Kastner provided in section 3.5 that

> for a period of two (2) years following cessation of the Term, Contractor will not directly or indirectly, for himself/herself/itself or on behalf of others, solicit or seek to do business related to the business of Espire with any Customer or client, former Customer or client or prospective customer or client of Espire about whom Contractor learned Confidential Information and/or with whom Contractor came into contact while working with Espire.

The unsigned operating agreement for Emert provided that he would not compete for a period of two years from termination of membership (Section 10.1) and that he would not, inter alia, seek to have any employee, independent contractor, producer, agent or business partner of the Company

14

or of any other Members to terminate such employee's relationship with the Company (Section 10.2).

To the extent that there are claims regarding restrictions on competition, the same failure to identify the customers in issue as discussed for the tortious inference claims apply here. More important, the non-competition restrictions are unenforceable under California law which is the law which would apply to the agreements pursuant to section 11.8 of the operating agreement and section 6.2 of Kastner's agreement.

As stated in Power Integrations, Inc. v. De Lara, 20-CV-410-MMA (MSB), 2020 WL 1467406, at *3-24 (S.D. Cal Mar. 26, 2020),

> California law provides that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal. Bus. & Prof. Code § 16600. As noted by the California Supreme Court: "In sum, following the Legislature, this court generally condemns noncompetition agreements." Edwards, 189 P.3d at 291. California courts have "have been clear in their expression that section 16600 represents a strong public policy of the state which should not be diluted by judicial fiat." Id. at 293 (quoting Scott v. Snelling & Snelling, Inc., 732 F. Supp. 1034, 1042 (N.D. Cal. 1990)).

In Power Integrations, virtually identical nonsolicitation and noncompetition clauses (for only one year not two as in the present case) were held unenforceable. Plaintiff argued that the clauses were limited in duration and designed to protect trade secrets and therefore fell under the trade secret exception to Cal. Bus. & Prof. Code §16600.

The court rejected the argument, holding that the nonsolicitation and noncompetition clauses were both unenforceable under §16600 and overly broad.

Even if New York law were to apply, the restrictions are unenforceable as geographically and temporally overbroad. See Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC, 813 F. Supp. 2d 489, 507 (S.D.N.Y. 2011).

The restrictive covenants also would be unenforceable if Espire breached its agreement with

the party or terminated without cause. See In re UFG Intern., Inc., 225 BR 51, 55-56 (S.D.N.Y. 1998); Design Partners, Inc. v. Five Star Electric Corp., 12CV2949PKCVMS, 2017 WL 818364, at *13-14 (E.D.N.Y. Mar. 1, 2017), "Even a reasonably limited covenant not to compete is unenforceable, however, if the employer has breached the employment agreement. Cornell v. T.V. Dev. Corp., 17 N.Y.2d 69, 75 (1966) (otherwise valid covenant against competition is unenforceable "when the party benefited was responsible for the breach of the contract containing the covenant"); Michael I. Weintraub, M.D., P.C. v. Schwartz, 131 A.D.2d 663, 665–66 (2d Dept. 1987) (even reasonable portion of restrictive covenant unenforceable, because employer breached contract by failing to provide timely written notice of termination)".

Finally, with respect to Forkosh, if there were any theory under which the preliminary agreement between Navarro and Forkosh were deemed enforceable, as set forth in the affidavit of Forkosh, application of the restrictive covenant would result in an unintended and untenable result. The notice to rescind was, at a minimum, a termination of the venture. At that point, the agreement provides that the company, which had no business or assets, had to be liquidated, after which Forkosh and Navarro would each be subject to restrictive covenants precluding each from continuing in the same social media marketing field. Needless to say, that result was both unintended and ridiculous. See CP III Rincon Towers, LLC v. Cohen, 10-CV-4638 (JMF), 2022 WL 61318, at *12 (S.D.N.Y. Jan. 6, 2022), quoting In re Lipper Holdings, 1 A.D.3d 170, 171 (1st Dept. 2003) ("A contract should not be interpreted to produce a result that is absurd.").

It was also ignored by Navarro, whose continued efforts through Espire and Kvrma after the agreement was rescinded or terminated, would be a violation of the restrictive covenant she seeks to enforce against Forkosh. Her own actions continuing with Kvrma and Espire is further evidence that whatever agreement there might have been, it was never implemented and its provisions

waived. See <u>MS Elmsford Snack Mart, Inc. v. Weil</u>, <u>supra</u> at *5.

ANTITRUST (Counts XXVII and XXVIII)

Counts XXVII and XXVIII allege restraint of inter- and intra-state trade in violation of the Sherman Anti-Trust Act (15 U.S.C. § 1) and the Donnelly Act (GBL §§ 340-41, *et seq*.). The absurdity of the claim, the lack of factual basis and the defamation engaged in by plaintiffs which is the subject of causes of action on the companion action highlight the fact that this is not an action to address perceived wrongs but a kitchen sink punitive complaint.

An action for a violation of the Sherman Anti-Trust Act requires a showing of the relevant market, a defendant's market power in that market, concerted action by two or more parties and how the actions complained of impacted that market to restrain trade. Injury to the plaintiff alone is not enough and independent conduct is not a violation.

Plaintiff must demonstrate: (1) a combination or some form of concerted action between at least two legally distinct economic entities that (2) unreasonably restrains trade.

If conduct is not is illegal per se, the rule of reason analysis is applied and the conduct will be held illegal only if it unreasonably restrained competition.

That in turn requires plaintiff to show that "the defendants' challenged behavior "had an actual adverse effect on competition as a whole in the relevant market." Capital Imaging, 996 F.2d at 543. Because the antitrust laws protect competition as a whole, evidence that plaintiffs have been harmed as individual competitors will not suffice. <u>Atl. Richfield</u>, 495 U.S. at 343–44, 110 S.Ct. 1884". <u>Geneva Pharm. Tech. Corp. v. Barr Labs. Inc</u>., 386 F.3d 485, 506-07 (2d Cir. 2004).

The Donnelly Act requires similar facts for intra-state anticompetitive conduct.  <u>Lopresti v. Massachusetts Mut. Life Ins. Co</u>., 5 Misc. 3d 1006(A), aff'd, 30 A.D.3d 474 (2006).

The cause of action here does not even try to satisfy these elements and is a primary

17

example of a blunderbuss complaint, designed to harass and defame, not to genuinely adjudicate a party's rights.

RICO CLAIMS

Plaintiffs also allege a claimed violation of the Racketeer Influenced & Corrupt Organizations Act (18 U.S.C. §§ 1962(a)-(d)) by all defendants  (Count XXIX), although again, allegations against TAPP LLC are lacking.

 Plaintiffs assert that  defendants TAPP Corp., Forkosh, Emert and Kastner were the RICO Enterprise and that they engaged in a pattern of racketeering activity in restraint of interstate commerce by extortionate means in demanding and receiving payments from Espire influencers by targeting the influencers and their social media posts for repeated false social media platform content violations (FAC, par. 197)

As to the parties' actions, the FAC alleges that each defendant (other than TAPP LLC.) "jointly and individually, have operated, conducted, participated in, and/or had some part in directing the RICO Enterprise's affairs, affecting interstate commerce " (FAC, par. 204) and "jointly and individually, have intentionally conspired and taken overt acts in furtherance of violating 18 U.S.C. §§ 1962(a)-(c) by words or actions manifesting an agreement to commit two predicate acts in furtherance of the common purpose of the RICO Enterprise (FAC. Par. 205).

Finally, plaintiffs assert that as a direct and proximate result of the foregoing, Espire and Navarro 'were reasonably and foreseeably damaged and will continue to sustain damages to their business and property by reason of the RICO Enterprise's heretofore-described conduct, including financial harm, economic loss, and loss of goodwill" (FAC, par. 206).

Courts have held that an alleged RICO violation must be reviewed carefully and "with appreciation of the extreme sanctions it provides, so that actions traditionally brought in state courts

do not gain access to treble damages and attorney's fees in federal courts simply because they are cast in terms of RICO violations." City of New York v. Cyco.Net, Inc., 383 F. Supp. 2d 526, 545-46 (S.D.N.Y. 2005).

As stated in Sony Music Entertainment Inc. v. Robison, RICO Bus Disp Guide 10218 (S.D.N.Y. Feb. 26, 2002)

> "Because the mere assertion of a RICO claim has an almost inevitable stigmatizing effect on those named as defendants, ... courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649, 655 (S.D.N.Y.1996) (internal quotations omitted). A careful examination of a RICO complaint is necessary to separate a valid claim from one that is "nothing more than an ordinary fraud case clothed in the Emperor's trendy garb." In re Integrated Res. Real Estate, 850 F.Supp. 1105, 1148 (S.D.N.Y.1993).

The FAC asserts that the enterprise consists of TAPP Corp. and its employees, officers and shareholders. However, a RICO enterprise may not consist "merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant," Cruz v. FXDirectDealer, LLC, 720 F.3d 115, 121 (2d Cir. 2013) quoting Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339, 344 (2d Cir.1994). "The requirement of distinctness cannot be evaded by alleging that a corporation has violated the statute by conducting an enterprise that consists of itself plus all or some of its officers or employees". Id.

For this reason alone, the RICO claims must be dismissed.

Additionally, in BWP Media USA Inc. v. Hollywood Fan Sites, LLC, 69 F. Supp. 3d 342, 349-64 (S.D.N.Y. 2014), the court dismissed RICO claims based on many of the infirmities present here. It held that the defendants' respective roles in the enterprise were not delineated but the purported conduct was attributed to "Defendants" as a group. The same holds true here.

The pattern of Racketeering Activity alleged is also deficient. The complaint alleges three categories of activity, securing payments from Espire's influencers by targeting their social media

posts for repeated false social media platform content violations (FAC, par. 197), obtaining Espire's intellectual property and trade secrets through a scheme to defraud using the internet, mobile devices with broadband capabilities, and desktop computers connected to the internet (FAC, par. 193) and committing theft of trade secrets in violation of 18 U.S.C. 1832, as well as engaging in unfair competition, tortious interference, copyright infringement, and other such anti-competitive conduct (FAC, par. 199).

Apart from the failure to delineate the roles of each defendant and the lack of an enterprise, these allegations are a prime example of the concern that

> "RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." <u>Crawford,</u> 758 F.3d at 489 (quoting <u>Efron v. Embassy Suites (Puerto Rico), Inc</u>., 223 F.3d 12, 20 (1st Cir.2000)) (internal quotation marks omitted).

> <u>BWP Media USA Inc. v. Hollywood Fan Sites, LLC</u> , <u>supra</u> at 362.

The FAC also fails to meet the heightened pleading standard of Rule 9(b) which requires that a complaint alleging fraud "must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." <u>Lerner v. Fleet Bank, N.A.</u>, 459 F.3d 273, 290 (2d Cir.2006) (internal quotation marks omitted) and "(w)hen ... a complaint contains allegations of fraud against multiple defendants, the plaintiff must plead facts that describe each defendant's involvement in the fraud." <u>Watkins v. Smith</u>, No. 12 Civ. 4635(DLC), 2013 WL 655085, at *9 (S.D.N.Y. Feb. 22, 2013) (citing <u>Mills v. Polar Molecular Corp</u>., 12 F.3d 1170, 1175 (2d Cir.1993); <u>DiVittorio v. Equidyne Extractive Indus. Inc</u>., 822 F.2d 1242, 1247 (2d Cir.1987)), aff'd, 561 Fed.Appx. 46 (2d Cir.2014) (summary order).

The FAC is also silent as to who was targeted with these "extortionate" threats or who paid

the money demanded and the failure to assert actual loss of influencers by reason of the alleged wire fraud further undermines the claims. See <u>Anza v. Ideal Steel Supply Corp</u>., 547 U.S. 451, 457 (2006); <u>Anatian v. Coutts Bank (Switzerland) Ltd.</u>, 193 F.3d 85, 88 (2d Cir. 1999).

Theft of trade secrets, tortious interference and the like are not RICO-worthy claims. They are business disputes and nothing more. If they were every civil dispute with these issues would tern into RICO cases with the accompanying sanctions of treble damages and attorneys fees. That level of penalty for mere civil disputes was not the intention of the statutes.

The RICO claims are deficient and should be dismissed.

COMPUTER FRAUD AND ABUSE ACT (Counts XX to XXIV)

Plaintiffs assert causes of action under the Computer Fraud and Abuse Act ("CFAA") by (a) intentionally accessing plaintiff Espire Ads LLC's protected computer utilized in interstate commerce without authorization and obtaining information, including plaintiff Espire Ads LLC's trade secrets, source code, and other such compilations from said protected computer in violation of 18 U.S.C. § 1030(a)(2)(c); (B) knowingly and with the intent to defraud, accessing plaintiff Espire Ads LLC's protected computer utilized in interstate commerce without authorization to further a fraud and/or obtain items of value, including plaintiff Espire Ads LLC's trade secrets, source code, and other such compilations from said protected computer in violation of 18 U.S.C. §1030(a)(4); and/or (c) knowingly and intentionally causing the transmission of plaintiff Espire Ads LLC's trade secrets, source code, and other such compilations from said protected computer utilized in interstate commerce without authorization in violation of 18 U.S.C. § 1030(a)(5)(A) (FAC, par. 157).

A protected computer is one which is used in or affecting interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States. 18 USCA §

1030(e)(1).

Here, there is nothing to suggest that the Espire computers are used in or affect interstate commerce. The influencers market the advertiser campaigns, not Espire, and Espire offers nothing which would bring its computers into the statutory definition.

In addition, Espire fails to identify the requisite loss beyond conclusory allegations. The thrust of Espire's complaint, despite its 39 counts, is unfair competition. The loss of funds due to unfair competition is not within the loss contemplated by the CFAA. Civic Ctr. Motors, Ltd. v. Mason St. Import Cars, Ltd., 387 F. Supp. 2d 378, 381-82 (S.D.N.Y. 2005), is on point, holding, that ""losses" under the CFAA are compensable only when they result from damage to, or the inoperability of, the accessed computer system.See Nexans Wires S.A. v. Sark–USA, Inc., 319 F.Supp.2d 468, 474 (S.D.N.Y.2004); see also Register.com, Inc. v. Verio, Inc., 126 F.Supp.2d 238, 252 (S.D.N.Y.2000)."

In Nexans, the court also held that revenue lost because a defendant used unlawfully gained information to unfairly compete was not a type of "loss" contemplated under the CFAA. Nexans, 319 F.Supp.2d at 478.

As in the above cases, plaintiffs' computers are not protected computers and the claims are not compensable "losses" under the CFAA.

COPYRIGHT INFRINGEMENT (Counts XXV-XXVI)

Plaintiffs allege that TAPP Corp. has infringed on the source code copyright of Espire by using the source code to continue business operations and to create derivative works without any authorization or other permission from Espire (Count XXV). They allege that Forkosh, Emert and Kastner have provided the source code to TAPP Corp. (Count XXVI).

It is well settled that a claim for copyright infringement requires proof of two elements: "(1) ownership of the copyright; and (2) infringement – that the defendant copied protected elements of

22

the plaintiff's work." <u>Feist Publications, Inc. v. Rural Telephone Service Co.</u>, 499 U.S. 340, 361 (1991).

Infringement in turn requires both copying and unlawful appropriation. <u>Siegler v Sorrento Therapeutics, Inc.</u>, 318CV01681GPCNLS, 2019 WL 581719, at *7 (S.D. Cal. Feb. 13, 2019).

Although many issues in the present case would be fact-based if there were a viable claim, the one aspect which is incontestable is that while plaintiffs claim that the alleged illicit copying of copyrighted code took place in the summer of 2021 (FAC, par. 64), the copyrights were not registered until November 2021, after the alleged access (Exhibit 7).

Accordingly, illicit copying of a copyrighted source code cannot be proven.

### BREACH OF FIDUCIARY DUTY/GOOD FAITH AND FAIR DEALING

Plaintiffs assert breach of fiduciary duty claims against Emert, Kastner and Forkosh (Counts IX, X, XIII, XIV, XVII, XVIII, XXXII). The Forkosh claims (individually and derivatively on behalf of Blu Market) are based on the rescinded agreement. As set forth above, there is no agreement and no fiduciary or good faith duty imposed by that agreement.

Moreover, Kastner, as an independent contractor with a limited role, had no fiduciary duty to plaintiffs (see <u>Gasery v. Kalakuta Sunrise, LLC</u>, 422 F. Supp. 3d 807, 819 (S.D.N.Y. 2019)) and last, the counts each suffer from the same lack of specificity as to what each individual did and how Espire was harmed which warrants dismissal of many of the other counts as well. See <u>Sony Music Entertainment Inc. v. Robison</u>, <u>supra</u>,

> Generally, an arm's length business transaction, even those where one party has superior bargaining power is not enough to give rise to fiduciary relationship." <u>Savage Records Group, N.V. v. Jones</u>, No. 600814/95 at 6–7 (N.Y.Sup.Ct. July 17, 1997), aff'd, 667 N.Y.S.2d 906 (N.Y.App.Div.1998).

Finally, any obligation of good faith and fair dealing is duplicative of the breach of contract

claims. <u>Harris v. Provident Life & Acc. Ins. Co.</u>, 310 F.3d 73, 80 (2d Cir. 2002).

These causes of action must be dismissed as well.

## FRAUD BASED COUNTS (Counts VI, VII, VIII)

Plaintiffs assert fraud based claims against Forkosh based on the rescinded agreement. If they were otherwise viable, the failure to allege the acts of fraud with specificity under Rule 9(b) would also require dismissal.

In addition, to the extent that the agreement was at all viable, any fraud claims would be duplicative of the breach of contract claims. See <u>Sony Music Entertainment Inc. v. Robison</u>, <u>supra</u>- "to support a claim for fraud where a contract exists, a party must either: "(i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentations and unrecoverable as contract damages." <u>Bridgestone/Firestone, Inc. v. Recovery Credit Svcs., Inc.</u>, 98 F.3d 13, 20 (2d Cir.1996) (internal citations omitted)".

## INJURIOUS FALSEHOOD (Count IV)

Count IV asserts an injurious falsehood claim against TAPP, Inc.  It also lacks the specificity required by Rule 9(b) and must be dismissed.

Moreover, it fails to allege the requisite elements. An injurious falsehood lies where "the statement is confined to denigrating the quality of the (plaintiff's) business' goods or services," id.; see <u>Fashion Boutique</u>, 314 F.3d at 59 ("To recover for disparagement of goods, the plaintiff must show that the defendant published an oral, defamatory statement directed at the quality of a business's goods ...." (citing, inter alia, <u>Ruder & Finn Inc.</u>, 439 N.Y.S.2d 858, 422 N.E.2d at 522)). <u>Henneberry v. Sumitomo Corp. of Am.</u>, 415 F. Supp. 2d 423, 470-73 (S.D.N.Y. 2006). There is no allegation of the  oral, defamatory statement directed at the quality of Espire's services.

## DERIVATIVE CLAIMS (Counts XXXIII-XXXVII)

Navarro asserts a derivative claims of conversion, unjust enrichment, accounting and dissolution founded upon her alleged rights under the rescinded preliminary joint venture agreement. As the agreement is a nullity, Navarro has no rights to assert and the derivative claims must be dismissed.

## REFORMATION OF THE INOPERATIVE PRELIMINARY AGREEMENT (Count XXXVIII)

Navarro seeks reformation of the inoperative preliminary joint venture agreement based on fraud. It is unclear what she seeks or why and for that reason alone it should be dismissed. In addition, the agreement never took effect and as such, there is no relief which could properly be granted based upon a rescinded agreement. Finally there is no fraud beyond the alleged breach of contract claims.

## FRAUDULENT CONVEYANCE (Count XXXI)

Navarro asserts that Forkosh fraudulently conveyed the assets of Blu Market LLC and Blu Market Inc. to TAPP Corp. (FAC, par. 218-219).  This claim is also based on the rescinded preliminary joint venture agreement and therefore cannot stand if the agreement is not enforceable.

Second, the conclusory allegations are once again insufficient to allow plaintiffs to proceed. See Nantong Sanhai Garment Co., Ltd. v. Fab Mill Inc., 21 CIV. 859 (NRB), 2022 WL 540756, at *3 (S.D.N.Y. Feb. 23, 2022), holding conclusory fraudulent conveyance allegations were insufficient in general as well as failing to satisfy the heightened pleading standard set forth in Rule 9(b), which requires that the complaint "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); see Ray v. Ray, 799 F. App'x 29, 31 (2d Cir. 2020).

## PIERCING THE CORPORATE VEIL

Plaintiffs seek to pierce the corporate veils of BLu Market LLC and BLu Market Inc. (Count

XXXIX) and TAPP Corp. and TAPP LLC (Count XL) to hold Forkosh personally liable. First, piercing the corporate veil is not a cause of action and as such both counts should be dismissed. See PK Rest., LLC v. Lifshutz, 138 A.D.3d 434, 436 (1st Dept. 2016).

Second, the allegations should be stricken as well. Holding Steven Forkosh personally liable seems to be a fixation. In Just Venture Corp. v. Steven Forkosh, NY Sup. Ct., NY Co., 654712/2017, Forkosh was sued personally on a corporate obligation by a party represented by the same counsel as plaintiffs herein. The complaint was dismissed. Plaintiff then filed a new suit against the entity but tried at least twice to assert a claim to pierce the corporate veil and hold Forkosh liable. The allegations were stricken.

The same attempt is now made in this case, with equally inadequate, conclusory and insufficient allegations.

A member of a limited liability company 'cannot be held liable for the company's obligations by virtue of his (or her) status as a member thereof.' " Matias v. Mondo Props. LLC, 43 A.D.3d 367, 367–368 (1st Dept.2007) .

In order to establish personal liability, to pierce the veil, a plaintiff must allege and prove that the party "exercised complete domination and control over the corporation (or LLC) and 'abused the privilege of doing business in the corporate (or LLC) form to perpetrate a wrong or injustice.' " De Sole v. Knoedler Gallery, LLC, 974 F. Supp. 2d 274, 304 fn 12 (S.D.N.Y. 2013) quoting Grammas v. Lockwood Assocs., LLC, 95 A.D.3d 1073, 1074–75 (2d Dept.2012). "Factors to be considered in determining whether an individual has abused the privilege of doing business in the corporate or LLC form include the failure to adhere to LLC formalities, inadequate capitalization, commingling of assets, and the personal use of LLC funds." Grammas, 95 A.D.3d at 1075.

All plaintiffs allege in support of the count are the conclusory statements "FORKOSH

exercised complete domination and control over defendant THE BLU MARKET LLC and defendant THE BLU MARKET, INC., utilizing the corporate vehicle of each jointly to defraud plaintiff LISA NAVARRO through the JV. Agreement, resulting in each of defendant THE BLU MARKET LLC and defendant THE BLU MARKET, INC. devoid of assets in anticipation of impending liability thereagainst.". FAC, par. 259.

The conclusory, inadequate allegations could not support the cause of action even if one existed (PK Rest., LLC v Lifshutz,  supra) and is further evidence that the goal is not to present justiciable issues but to harass defendants.

The same is true for count XL, which seeks to piece the corporate veil of TAPP Corp. and TAPP LLC.

# CONCLUSION

BASED UPON THE FOREGOING DEFENDANTS' MOTION TO DISMISS,
SHOULD BE GRANTED

RICHARD L. HERZFELD, P.C.

*Richard L. Herzfeld*
_____
By: Richard L. Herzfeld
Attorney for Defendants
112 Madison Avenue
8th Floor
New York, N.Y.  10016
(212) 818-9019
RHerzfeld@Herzfeldlaw.com

PRINTING CERTIFICATION

The undersigned hereby certifies that the foregoing brief totals 8,487 words exclusive of pages containing the cover page, certification of compliance, table of contents, and table of authorities, as calculated by the processing system.

*Richard L. Herzfeld*

RICHARD L. HERZFELD