This Joint Venture Agreement ("The agreement") dated August 28, 2020 is made and entered into by and between Steven Forkosh ("Forkosh"), residing at 117 E., 57th Street #31H , New York, New Yortk, 10022, The Blu Market, INC The Blu Market, LLC ("The Blu Market"), with offices at 400 Broome Street, New York, NY, Lisa Navarro ("Navarro"), residing at 6065 Riverside Ave., Riverside CA 92506 and Espire Ads, LLC ("Espire"), with offices at 3610 Central Avenue, Riverside, CA 92506. All entities make up ("The Company")

1.      The parties are each engaged in the business of social media marketing, sales and other influencer-related forms of monetization.

2.       Navarro is the sole owner and CEO of Espire, a Delaware limited liability company.

3.      Forkosh is the sole owner and CEO of The Blu Market, a Delaware limited liability company.

4.      Simultaneously herewith, Navarro and Forkosh shall enter into a 50% / 50% Partnership for "The Compoany" Forkosh will retain 50% of Blu Market and Espire and Navarro will retain 50% of Blu Market and Espire. Forkosh acknowledges the steps needed to take back shares to retain his 50%. Navarro oversees the influencer relations and Operations of  the overall Company while Forkosh oversees the Tech, Business Development and Legal departments of the company.

5.       Both Partners shall make reasonable efforts to segway its business into whichever company they agree would be best for the longevity of the business. "The Company" and any business opportunities or income shall be directed by both Forkosh and Navarro.

6.      Each party shall receive a base salary of $156,000 per year as members of "the Company" and distributions of profits shall be made quarterly shall there be any profits to distribute after keeping 20% within "the company" for Operating. Both parties understand that in the event profits fall below operating costs that there will need to be salary reduction as to not bankrupt "The Company".

7.      Any contract entered into, any disbursement in excess of $5,000, any distribution to the members, hiring and firing of employees, independent contractors and consultants (other than professional), and any addition of members shall require unanimous approval.

8.      Each party represents and warrants that (a) the party has full power and authority to execute and deliver this Agreement and to perform its obligations hereunder, and all necessary actions for the due authorization, execution, delivery and performance of this Agreement by it have been duly taken; (b) that the party has duly executed and delivered this Agreement; and (c) that the party's authorization, execution, delivery and performance of this Agreement by it does not conflict with any other agreement or arrangement to which it is a party or by which it is bound.

9.    Navarro has consulted with her own independent attorney, accountant, or other financial advisor with respect to the investment in the Company. In making an investment decision, Navarro is relying on her own examination of the issues and the terms, including the merits and risks involved. Navarro has relied solely upon independent investigations made by Navarro and/or her advisors in making the decision to purchase any interest, is not relying upon any representation by the Company, Forkosh or other representatives, and acknowledges that no other representations with respect to the merits of the investment or operations of the Company have been made by the Company, Forkosh or other representatives, except as set forth herein.

10.      Navarro will warrant and represent on behalf of Espire and Forkosh will warrant and represent on behalf of the Blu Market represent on behalf of "the Company" that

(a) Espire and the Blu Market each has duly filed all federal, state and local tax returns and tax reports required to be filed by it.  All such returns and reports are true, correct and complete, none of such returns and reports has been amended, and all taxes, assessments, fees and other governmental charges arising under such returns and reports have been fully paid;

(b) Espire and the Company each has no liabilities for overdue taxes and no federal, state or local tax authority is now asserting or threatening to assert any deficiency or assessment for additional taxes; and

(c) Espire and the Company each has withheld and paid all taxes required to have been withheld and paid in connection with any amounts paid or owing to any employee, independent contractor, creditor, member, or other third party in connection with the Business, and all Forms W-2 and 1099 required with respect thereto have been, and at the time of the Closing will have been, properly completed and filed.

(d) Espire and Blu Market each has no claims, actions, suits or proceedings pending or threatened against or affecting it, or any employee or director of it.

(e) Espire and the Company each has no outstanding liabilities except as set forth on Schedule 1.

(f) To the extent any claim or liability is asserted against the Blu Market relating to Espire matters preceding this agreement or which is contrary to any representation of Espire or Navarro herein, Navarro shall indemnify and hold the Blu Market harmless for all costs, fees, liabilities and expenses in connection with such matters, including reasonable attorneys fees, and Forkosh to the extent any claim or liability is asserted against Espire relating to Blu Market matters preceding this agreement or which is contrary to any representation of The Blu Market or Forkosh, Forkosh shall indemnify and hold the Company harmless for all costs, fees, liabilities and expenses in connection with such matters, including reasonable attorneys fees shall do so with respect to any claim or liability is asserted against Espire relating to The Blu Market matters preceding this agreement or which is contrary to any representation of the Blu Market or Forkosh herein.

11.  Navarro and Forkosh each agree that while a Party and for a period of one year thereafter, she/he shall not

(a) Directly or indirectly solicit business from any customers of the Company;

(b) Directly or indirectly have any ownership interest in, manage, operate, join or control, or participate in the ownership, management, operation, or control of any business, entity, firm or corporation, which engages in businesses similar to those engaged in by the Company or otherwise that competes with the business of the Company as conducted on the date hereof or as it may be conducted at any time thereafter, including  social media marketing, sales and other influencer-related forms of monetization;

(c) Directly or indirectly use or disclose, any confidential information affecting the Company or the Company's customers, or their respective business, business processes and methods, personnel or policies, to any person for any reason or purpose whatsoever;

(d) Directly or indirectly, solicit for employment or other services, or otherwise seek to influence or alter the relationship of the Company with any of its employees.

This section shall survive the termination of the agreement.

12.     A Party may not sell, exchange, assign, encumber or otherwise transfer all or any part of his/her interest other than as provided herein.

Should either party wish to sell his/her interest, an offer shall be transmitted to the other party in writing, by overnight mail with a copy by email. The offer shall be for the entire interest and the receiving party shall have thirty days in which to accept or Deny the offer or to elect to sell his/her interest to the offering party on the same terms.  The election shall be in writing, by overnight mail with a copy by email.  Closing shall be within 60 days thereafter and payment shall be in 1 installment made within 30 days unless a change is mutually agreed upon by both parties.

13.     In the event of the death or permanent disability of a party for a period of 180 days, the interest of the party shall be purchased by the Company. The purchase price to be paid for the party's

interest shall be the value of the Company as of the effective date of withdrawal multiplied by the party's percentage interest. If the parties are unable to agree on a value within ninety (90) days following the redemption event, the value shall be determined by an independent appraiser having experience in valuing the type of business conducted by the Company, who shall be selected by the mutual agreement of the parties. Payment shall be in 1 installments made within 30 days.

14.    Mediation. With respect to any controversy or claim arising out of, or in any way related to this Agreement, the Parties hereby agree to attempt in good faith and otherwise agree to make their best efforts to resolve such disputes before entering into any formal legal proceeding by providing written notice and entering into good faith discussions and negotiations to do so.

If the issue or dispute has not been resolved within ten (10) calendar days of the date of written notice thereof to the other Party of the issue or dispute, then the issue shall be resolved by non-binding mediation in accordance with applicable American Arbitration Association Mediation Rules, JAMS' mediation rules, or Alternative Dispute Resolution mediation rules, depending on the Parties' mutual agreement at that time. The Parties will agree on a neutral mediator who has experience in the relevant industry, and such mediation shall be held in New York.   This Agreement and the rights of the parties hereunder will be governed by, interpreted, and enforced in accordance with the laws of the State of New York without regard to conflict of law principles.  If any proceeding is commenced with respect to any matter directly or indirectly related to the interpretation of this Agreement or the rights and obligations of the parties hereto it shall be exclusively brought in the United States District Court for the Southern District of New York or, if such Court lacks subject matter jurisdiction, in the Supreme Court of the State of New York, County of New York.  Each Member waives the right to object to the jurisdiction or venue of either such Court or that such Courts are an inconvenient forum.

15.     It is understood and agreed that this Agreement constitutes the entire agreement between the parties hereto, that no oral statements or promises or any understanding not embodied in this writing shall be valid and that no modification of this agreement shall be valid unless by a writing signed by the party against whom the modification is enforceable.

16.     If any provision of this Agreement is held to be illegal, invalid or unenforceable under the present or future laws effective during the term of this Agreement, such provision will be fully severable; this Agreement will be construed and enforced as if such illegal, invalid, or unenforceable provision had never comprised a part of this Agreement; and the remaining provisions of this Agreement will remain in full force and effect and will not be affected by the illegal, invalid or unenforceable provision or by its severance from this Agreement.  Furthermore, in lieu of such illegal, invalid or unenforceable provision, there will be added automatically as a part of this Agreement a provision as similar in terms to such illegal, invalid or unenforceable provision as may be possible and be legal, valid and enforceable.

17.     This agreement may be delivered by successful facsimile or e-mail or electronic transmission, and a facsimile or e-mail or electronic copy of this Contract signed by the parties shall have the same force and effect as if same contained original signatures.

18.     An operating agreement shall be entered into incorporating the foregoing terms and any mutually agreed upon items.

19.     Amendment. Amendment of this Agreement may be made only by written agreement signed by both Parties.

20.     Confidentiality. Each of the Parties hereto agrees to maintain as confidential and not to disclose to any third party, person, firm, governmental agency or corporation, aside from that Party's attorney, the contents or terms of this Agreement, information which is learned by virtue of operating the

Joint Venture, including customer and client information and data, except where it is necessary to do so in order to enforce a Party's rights under this Agreement; for accounting, audit, tax or insurance purposes; or in compliance with an order from a court of competent jurisdiction or other mandatory judicial process. Should any Party be served with a court order or other judicial process requiring release of the foregoing information, such Party shall give written notice to the other Parties within five (5) business days of receipt of the aforesaid order or judicial process. To the extent any customer or potential customer of the Joint Venture has been enticed away or used by either of the Parties for the purposes of generating revenue unrelated to the Joint Venture, or for which either Party has received any revenue for which he has not accounted to the Joint Venture, dating back to the Effective Date, the Party so benefiting to the exclusion of the other Party shall be liable to account to the other Party for any and all such revenue, and agrees that the offending Party shall provide the other Party with a full accounting related thereto within fifteen (15) days of any request by the non-offending Party for such accounting information. If any such revenue is identified, the offending Party agrees that the non-offending Party shall be entitled to his percentage interest therein in accordance with the terms of this Agreement, which shall be due and paid by the offending Party within fifteen (15) days of the discovery of any such diverted revenue. The discovery of any diversion as contemplated hereby shall constitute an actionable and material breach of this Agreement.

1.    21.    <u>Termination</u> Should the parties decide to terminate the relationship, They Must do so in writing with 60 days notice. Upon termination or dissolution of the Joint Venture, the Joint Venturers shall proceed to liquidate the Joint Venture, including all its assets, and all proceeds of such liquidation shall be applied and distributed in the manner set forth above according to the interests held by each Party in the Joint Venture. Such liquidation shall proceed as soon as practically possible as to allow for the orderly liquidation of the Joint Venture's assets, and to collect any and all outstanding

accounts receivable or other sums owed thereto, in order to minimize any losses normally attendant upon such liquidation.

Agreed and Accepted as of the Effective Date set forth above:

THE BLU MARKET INC, THE BLU MARKET, LLC

8/29/2020

99D0D3C161FF4FE...

By: Steven Forkosh                    Date

ESPIRE ADS, LLC

08/29/2020

By: Lisa Navarro                    Date



## Certificate Of Completion

Envelope Id: 060D8572FE3C4A2789CBEF34EA4F760E **Status: Completed**
Subject: Please DocuSign: This Joint Venture Agreement TBM ESPIRE.pdf
Source Envelope:
Document Pages: 8 Signatures: 1 Envelope Originator:
Certificate Pages: 2 Initials: 0 Lisa Navarro
AutoNav: Enabled 6065 Riverside Ave
EnvelopeId Stamping: Enabled Riverside
Time Zone: (UTC-08:00) Pacific Time (US & Canada) Riverside, CA 92506
Lisa@Espireads.com
IP Address: 24.180.59.112

## Record Tracking

Status: Original Holder: Lisa Navarro Location: DocuSign
        8/29/2020 1:51:24 AM             Lisa@Espireads.com

| Signer Events | Signature | Timestamp |
|---|---|---|
| Steven Forkosh<br>Steven@theblumarket.com<br>Security Level: Email, Account Authentication (None) | *DocuSigned by:*<br>99D0D3C161FF4FE... | Sent: 8/29/2020 1:54:37 AM<br>Viewed: 8/29/2020 5:13:14 AM<br>Signed: 8/29/2020 5:16:06 AM |
| | Signature Adoption: Drawn on Device<br>Using IP Address: 69.116.216.134<br>Signed using mobile | |
| **Electronic Record and Signature Disclosure:**<br>    Not Offered via DocuSign | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Lisa Navarro<br>lisa@espireads.com<br>CEO<br>Espire Ads, LLC<br>Security Level: Email, Account Authentication (None) | **COPIED** | Sent: 8/29/2020 1:54:37 AM<br>Resent: 8/29/2020 5:16:07 AM |
| **Electronic Record and Signature Disclosure:**<br>    Not Offered via DocuSign | | |

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 8/29/2020 1:54:37 AM |
| Certified Delivered | Security Checked | 8/29/2020 5:13:14 AM |
| Signing Complete | Security Checked | 8/29/2020 5:16:06 AM |

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Completed | Security Checked | 8/29/2020 5:16:06 AM |
| Payment Events | Status | Timestamps |