UNITED STATES DISTRICT COURT:
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ESPIRE ADS LLC, THE BLU MARKET, INC., *ex rel.* LISA NAVARRO, THE BLU MARKET LLC, *ex rel.* LISA NAVARRO, and LISA NAVARRO individually, | Civil Action No.: 21-cv-10623 (JKG) Hon. John G. Koeltl ECF Case |
| *Plaintiffs,* | |
| v. | |
| TAPP INFLUENCERS CORP., TAPP MARKET INFLUENCERS LLC, THE BLU MARKET, INC., THE BLU MARKET LLC, STEVEN FORKOSH, BRENNAN KASTNER, and JUSTIN EMERT, | AFFIDAVIT |
| *Defendants.* | |

STATE OF California )
)  s.s.:
COUNTY OF Riverside )

LISA NAVARRO, being duly sworn, hereby deposes and testifies as to the following under the penalties of perjury:

1. I, LISA NAVARRO, am an individual plaintiff in the above-captioned matter, chief executive officer of plaintiff ESPIRE ADS LLC, and fifty-percent (50%) holder of equity interests *via* the Joint Venture Agreement executed on August 29th, 2020 ("JV Agreement") in both defendants THE BLU MARKET, INC. and THE BLU MARKET LLC, over the age of eighteen (18), of sound mind, and have personal knowledge of the matters set forth herein.

2. I hereby verify, repeat, reallege, and incorporate by reference each and every allegation of plaintiffs' first amended complaint dated February 27th, 2021 annexed to both my counsel's declaration and hereto as **"Exhibit 1"**, know the contents of the first amended complaint to be true, and state that the same is true to my own knowledge as to the matters I believe to be true, including those matters alleged upon information and belief.

1

3. To the extent that defendant STEVEN FORKOSH's affidavit would be considered by this Court in support of his dismissal motion, I hereby deny each and every allegation asserted thereunder as unsupported by documentary evidence, undermined by plaintiffs' own proffered exhibits, and thus, a fanciful and demonstrably false narrative to inoculate him from the consequences of his conduct alleged in Plaintiffs' pleading. *See* ECF 44, at ¶¶ 2-129.

4. I further hereby expressly deny each and every allegation raised by the affidavits of defendant BRENNAN KASTNER, defendant JUSTIN EMERT, and non-party ALEX VAZQUEZ, as each clearly have a business relationship with defendant STEVEN FORKOSH and/or and equity interest in defendant TAPP MARKET INFLUENCERS LLC, rendering their allegations inherently biased, compelled by their employer, and otherwise in furtherance of their pecuniary interests. *See* ECF 45-47, *passim*.

A. **Plaintiff ESPIRE ADS LLC & The Blu Market Defendants.**

5. Preliminarily, Plaintiff ESPIRE ADS LLC is a foreign limited liability corporation duly authorized to conduct business within the State of New York; a true copy of the application for authority and filing receipt have been supplied to my counsel and annexed to his declaration as **"Exhibit 2"**.

6. In relevant part, plaintiff ESPIRE ADS LLC runs a proprietary platform powered by its source code which runs a marketplace for influencer users to connect with brands, products, and services, placing request for promotion; contrary to Defendants' contentions, third-party Tune is a mere extension component within the platform which allows for, *inter alia*, user tracking of engagement, project records, and revenues. Plaintiff ESPIRE ADS LLC's marketplace additionally contains a proprietary chat system enabling in-platform contact between influencer users and promoted brands, which additionally has functionality to allow plaintiff ESPIRE ADS LLC to broadcast to all platform users in order to drive engagement

2

toward certain promotions.[1]

7. Stated alternatively, plaintiff ESPIRE ADS LLC is the digital "town square" for influencers and brands meet, match, and conduct business; specifically, interstate commerce.

8. Further, as of 2020, influencer marketing platforms were an emerging market with relatively few players.

9. Contrary to Defendants' fanciful contentions, plaintiff ESPIRE ADS LLC has used no property of defendant THE BLU MARKET, INC. and/or defendant THE BLU MARKET LLC; rather, defendant BRENNAN KASTNER was retained to exclusively develop plaintiff ESPIRE ADS LLC's technical properties, including "web development and management", and "app development, management, and maintenance of Espire's technical properties"; a true copy of the Development Agreement dated May 18th, 2020 with defendant BRENNAN KASTNER has been supplied to my counsel and annexed to his declaration as **"Exhibit 3"**.

10. At no point during defendant BRENNAN KASTNER's provision of services to plaintiff ESPIRE ADS LLC was it discussed that he would utilize open-source software, and *a fortiori*, he was certainly not authorized to utilize such open-source software in developing the technical properties of plaintiff ESPIRE ADS LLC.

11. Specifically, I have not misappropriated anything from defendant THE BLU MARKET, INC., defendant THE BLU MARKET LLC, or defendant STEVEN FORKOSH, inclusive of, *inter alia*, money, customers, business opportunities, confidential personal information, employees, nor any other tangible or intangible item alleged, as defendant STEVEN FORKOSH – on behalf of defendant THE BLU MARKET, INC. and defendant THE BLU

---

[1] To wit, by virtue of Defendants' conduct alleged in the pleading, not only does plaintiff ESPIRE ADS LLC's source code run their own proprietary platform, but now, also runs the platform of defendant TAPP INFLUENCERS CORP. and defendant TAPP MARKET INFLUENCERS LLC without authorization and at sufferance. *See* Ex. 1.

MARKET LLC – warranted and represented by and through the JV Agreement that both parties have "no claims… affecting it, or any employee or director of it… and each have no outstanding liabilities". *See* Ex. 2, at ¶¶ 10(d)-(e).

12. Rather, defendant STEVEN FORKOSH – to whom I directly answered at defendant THE BLU MARKET, INC. and defendant THE BLU MARKET LLC (jointly, "Blu") – would regularly fire and re-hire me, as well as sexually harass me by making repeated demeaning comments about my breasts, which I declined to address in the complaint, as the scope of this litigation is, *inter alia*, trade secret theft, rather than the time-barred and demonstrably false allegations of which Defendants continue focusing on in an attempt to conflate issues and obscure answering for conduct.

13. Notwithstanding, throughout 2019, non-party KVRMA, LLC purchased from defendant STEVEN FORKOSH certain mobile gaming assets of defendant THE BLU MARKET, INC. and defendant THE BLU MARKET LLC in the amount of seventy-seven thousand two hundred USD ($77,200.00) as evidenced by the Apple app store transfer of ownership, which is wholly unrelated to the intellectual property at issue here; the platform-generating source code of plaintiff ESPIRE ADS LLC, of which defendant BRENNAN KASTNER was retained to develop in mid-2020 was not purchased from any of the Defendants hereof. A true copy of the Apple app store transfer and of bank statements evidencing transfers to defendant STEVEN FORKOSH throughout 2019 the amount of seventy-seven thousand two hundred USD ($77,200.00) have been supplied to my counsel and annexed to his declaration as **"Exhibit 4"**.

B. **The Joint Venture Agreement.**

14. The JV Agreement was assented to on August 29th, 2020, as it was circulated *via* DocuSign at 1:54 AM PST to defendant STEVEN FORKOSH, and executed by defendant

STEVEN FORKOSH on August 29th, 2020 at 5:16 AM PST; a true copy of the JV Agreement with signature DocuSign signature certificates has been supplied to my counsel and annexed to his declaration as **"Exhibit 5"**, whereas the August 29th, 2020 DocuSign circulation e-mail at 1:54 AM PST has been supplied to my counsel and annexed to his declaration as **"Exhibit 6"**, and whereas the August 29th, 2020 DocuSign execution confirmation e-mail at 5:16 AM PST has been supplied to my counsel and annexed to his declaration as **"Exhibit 7"**.

15. Moreover, on August 28th, 2020, defendant STEVEN FORKOSH requested my execution of the JV Agreement *via* text message. *See* Ex. 8, at p. 1 ("Please sign and return [the JV Agreement] so I can countersign and start"). I further understand that since as early as June of 2020, defendant STEVEN FORKOSH was expressing to others excitement about the opportunity to gain access and acquire equity in plaintiff ESPIRE ADS LLC. *See* Ex. 8, at pp. 2-3.

16. On August 29th, 2020, I circulated the JV Agreement without notifying my transactional counsel, non-party JEFFREY R. KLEIN.

17. After execution of the JV Agreement, subject to the terms and covenants thereunder, defendant STEVEN FORKOSH was granted login credentials to plaintiff ESPIRE ADS LLC which included access to, *inter alia*, all company files, servers, source code, an e-mail address, and contact information for all employees, agents, clients, brands, influencers, and other such third-party platform users.

18. Thereafter, defendant STEVEN FORKOSH held and participated in numerous meetings with the team of plaintiff ESPIRE ADS LLC; a true copy of an abridged selection of meetings wherein defendant STEVEN FORKOSH participated has been supplied to my counsel and annexed to his declaration as **"Exhibit 11"**.

19. Meanwhile, I understand that while participating in operating plaintiff ESPIRE ADS LLC, defendant STEVEN FORKOSH had organized a direct competitor and began

diverting business opportunities and resources away from operating plaintiff ESPIRE ADS LLC, as defendant TAPP INFLUENCERS CORP. was organized on September 25th, 2020, less than one month from his execution of the JV Agreement, whereafter defendant TAPP MARKET INFLUENCERS LLC was organized. *Compare* Ex. 11, *with* Ex. 12, *and* Ex. 5.

20. Shortly thereafter, at the end of October 2020, defendant STEVEN FORKOSH ceased communicating with me, whereafter I would later come to discover that he secretly pillaged many of plaintiff ESPIRE ADS LLC's assets, including defendant BRENNAN KASTNER, jointly stealing the proprietary source code powering plaintiff ESPIRE ADS LLC's desktop and mobile platforms.

21. After such pillaging, without speaking to me, I understand that defendant STEVEN FORKOSH instructed his attorney, non-party RICHARD L. HERZFELD, to codify his piracy through a rescindment agreement attempting to secure a release from any and all obligations imposed under the JV Agreement. *See* Ex. 9; *see* ECF 44-17.

22. After speaking to with my counsel, non-party JEFFREY R. KLEIN, I informed him that I never agreed with defendant STEVEN FORKOSH to withdraw, cancel, or rescind the JV Agreement, that I refused to execute the rescission agreement because of the trade secrets divulged to defendant STEVEN FORKOSH under the JV Agreement, and directed non-party JEFFREY R. KLEIN to cease working on any and all rescissions of the JV Agreement on my behalf.

23. For the avoidance of doubt, I never circulated the recission agreement; rather, Defendants' "Exhibit 14" is a falsified version of my DocuSign e-mail circulated on August 29th, 2020 at 1:54 AM PST. *Compare* Ex. 5, *with* ECF 44-14.

24. In 2021, defendant JUSTIN EMERT was terminated from plaintiff ESPIRE ADS LLC as it was discovered that he had an e-mail address at defendants TAPP INFLUENCERS

6

CORP. and TAPP MARKET INFLUENCERS LLC for an indeterminate amount of time; his equity in plaintiff ESPIRE ADS LLC was repurchased *via* agreement dated July 23rd, 2021; a true copy of such termination agreement has been supplied to my counsel and annexed to his declaration as **"Exhibit 13"**.

C.     **Non-party KVRMA FOUNDATION.**

25.     Contrary to Defendants' contentions, non-party KVRMA FOUNDATION submitted an application to the United States Internal Revenue Service ("IRS") for 501(c)(3) tax-exempt status, wherefore by IRS letter dated May 2nd, 2022, the IRS granted non-party KVRMA FOUNDATION 501(c)(3) tax-exempt status, notwithstanding that none of Defendants have proffered contributions to non-party KVRMA FOUNDATION, rendering Defendants devoid of standing to raise such allegations they were not "defrauded"; rather, Defendants merely harped on such matter to effectuate judicially-sanctioned libel. A true copy of said IRS designation letter has been supplied to my counsel and annexed to his declaration as **"Exhibit 14"**.

D.     **Non-Party KVRMA LLC.**

26.     Further, non-party KVRMA LLC has no interest in the intellectual property of plaintiff ESPIRE ADS LLC unlawfully misappropriated by Defendants, as non-party KVRMA LLC is a separate entity powered by entirely separate source code, necessitated as a direct result of Defendants' conduct in compromising plaintiff ESPIRE ADS LLC's source code, remotely accessing plaintiff ESPIRE ADS LLC's servers, and repeatedly subjecting plaintiff ESPIRE ADS LLC to cyber-attacks, unfair competition, and derivative software targeting and attacking plaintiff ESPIRE ADS LLC's platform users, as set forth in the pleading.

E.     **Defendants' Exhibit Distortion.**

27.     Contrary to Defendants' contentions, "Exhibit 4" is not proof of plaintiff LISA NAVARRO's export of a "lists of about 12,000 influencer contacts", but rather, a March 12th,

2016 list forwarded to plaintiff in the course of business, which is well short of twelve thousand (12,000) entries; rather, it contains about thirteen (13) entries, which pre-dates the operational start of plaintiff ESPIRE ADS LLC. *See* ECF 44-4.

28. Contrary to Defendants' contentions, "Exhibit 5" is not proof of a "transition", but rather, a sales e-mail, whereunder plaintiff ESPIRE ADS LLC and its agents were under no non-competition covenants with Blu. *See* ECF 44-5.

29. Nor is "Exhibit 6" proof of business diversion as it appears to be an unexecuted and undated purchase order from a different client than Blu's. *See* ECF 44-6.

30. Concerning Defendants' "Exhibit 8", just because Blu had a pre-existing app, does not mean that Defendants did not unlawfully convert and misappropriate the proprietary source code of plaintiff ESPIRE ADS LLC; rather, defendant BRENNAN KASTNER was retained to create and manage the proprietary source code of plaintiff ESPIRE ADS LLC's technical assets from scratch. *Compare* ECF 44-8, *with* Ex. 3.

31. Concerning Defendants' "Exhibit 9", the memo unambiguously indicates "salary owed partial payment 1/3" in the amount of five thousand USD ($5,000.00), which is entirely plausible considering plaintiff LISA NAVARRO "continued with Blu Market until 2017". *Compare* ECF 44-9, *with* ECF 44, at ¶ 20. To wit, Defendants' "Exhibit 9" evidences a Department of Labor violation against Blu, rather than a theft of plaintiff LISA NAVARRO. *Id.*

32. Defendants' "Exhibit 10" appears to be an e-mail from LinkedIn attempting to confirm dissociation of plaintiff LISA NAVARRO's Blu e-mail address from Blu's LinkedIn page, rather than the creative fiction alleged by defendant STEVEN FORKOSH. *See* ECF 44-10.

33. Defendants' contentions purported threats of burglary of Blu's office and physical violence against defendant STEVEN FORKOSH are entirely false, unfounded, unsupported by any contemporaneous evidence including a police report, and appear to be nothing more than

defendant STEVEN FORKOSH's racial bigotry as a result of the Latino names plaintiff LISA NAVARRO and non-party JOHN MELENDEZ. *Contra* ECF 44, at ¶¶ 39-41.

34. Most concerningly, Defendants' "Exhibit 14" attempts to perpetrate a fraud upon this Court by engaging in document falsification insofar as modifying the date of Plaintiffs' August 29th, 2020 e-mail circulating the JV Agreement for execution to October 31st, 2020, and unambiguously attempting to perpetrate a fraud upon this Court insofar as contending that the JV Agreement was unexecuted, whereas Defendants have previously conceded execution thereof. *Compare* ECF 44-14, *with* Ex. 6, *and* Ex. 10 ("Steven said they signed. Please check").

Dated: May 25 2022

Further Affiant sayeth naught.

_____
LISA NAVARRO

Sworn to and subscribed before me
on this 25 day of May, 2022

_____
Notary Public

**Certificate Attached for California Notary Wording**

**CALIFORNIA JURAT**  GOVERNMENT CODE § 8202

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of __Riverside__

Subscribed and sworn to (or affirmed) before me on this __25__ day of __May__, 20__22__, by
Date / Month / Year

(1) __Lisa Navarro__

(and 2) __------__,
Name(s) of Signer(s)

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Signature __Andrea Sandoval__
Signature of Notary Public

[Notary Seal: ANDREA SANDOVAL, Notary Public - California, Riverside County, Commission # 2397166, My Comm. Expires Mar 16, 2026]

Place Notary Seal and/or Stamp Above

———— OPTIONAL ————

*Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: _____

Document Date: _____  Number of Pages: _____

Signer(s) Other Than Named Above: _____

©2019 National Notary Association