**UNITED STATES DISTRICT COURT:**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ESPIRE ADS LLC, THE BLU MARKET, INC., *ex rel.* LISA NAVARRO, THE BLU MARKET LLC, *ex rel.* LISA NAVARRO, and LISA NAVARRO individually, | Civil Action No.:  21-cv-10623 (JKG)<br>Hon. John G. Koeltl<br>ECF Case |

                    *Plaintiffs*,

       v.

TAPP INFLUENCERS CORP., TAPP MARKET INFLUENCERS LLC, THE BLU MARKET, INC., THE BLU MARKET LLC, STEVEN FORKOSH, BRENNAN KASTNER, and JUSTIN EMERT,

                  *Defendants*.

---

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DISMISSAL

---

Respectfully submitted,
**SUTTON SACHS MEYER PLLC**
*Attorneys for Plaintiffs*

/s/ Zachary G. Meyer, Esq.
14 Penn Plaza, Suite 1315
New York, NY 10122
(212) 480-4357
Zachary@ssm.law

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ……………………………………………………………...ii

ARGUMENT ……………………………………………………………………………..1

POINT I:        PLAINTIFFS HAVE CAPACITY TO PROSECUTE THIS MATTER ………….1

POINT II:       NON-PARTY KVRMA, LLC IS NOT AN INDISPENSIBLE PARTY ………….2

POINT III:      THIS   COURT   HAS   *IN PERSONAM*   JURISDICTION   OVER   ALL
                DEFENDANTS ………………………………………………………………...2

POINT IV:       THIS COURT IS THE APPROPRIATE ADJUDICATION VENUE ……………4

POINT V:        THE JOINT VENTURE AGREEMENT WAS EFFECTUATED ………………..5

        A.  The JV Agreement was Effectuated on August 29th, 2020 …………………………....6

        B.  All Conditions Precedent under the JV Agreement were Satisfied ……………………7

POINT VI:       CONTRARY TO DEFENDANTS' CONTENTIONS, ALL CLAIMS ARE
                ADEQUATELY PLEAD ……………………………………………………………9

CONCLUSION ………………………………………………………………………….24

CERTIFICATION ………………………………………………………………………24

## TABLE OF AUTHORITIES

**Cases**

*Adler v. Pataki,*
  185 F.3d 35 (2d Cir. 1999) ...................................................................................22

*Am. Inst. of Chem. Eng'rs v. Reber-Friel Co.,*
  682 F.2d 382 (2d Cir. 1982) .................................................................................14

*Ametex Fabrics, Inc. v. Just In Materials, Inc.,*
  140 F.3d 101 (2d Cir. 1998) ...................................................................................1

*Anderson News, LLC v. Am. Media, Inc.,*
  899 F.3d 87 (2d Cir. 2018) ...................................................................................17

*Arizona v. Maricopa Cnty. Med. Soc'y,*
  457 U.S. 332 (1982) ..............................................................................................17

*Ashland Mgmt. Inc. v. Altair Inv. N.A., LLC,*
  59 AD3d 97 (1st Dep't 2008) ...............................................................................16

*Assoc. Dry Goods Corp. v. Towers Fin, Corp.,*
  920 F.2d 1121 (2d Cir. 1990) .................................................................................2

*Atl. Marine Constr. Co. Inc. v. U.S. Dist. Court for W. Dist. of Texas.,*
  571 U.S. 49 (2013) ..................................................................................................4

*Bagdon v. Phila. & Reading Coal & Iron Co.,*
  217 NY 432 (1916) ..................................................................................................4

*Bank of Am. v. Petitt,*
  89 AD3d 652 (2nd Dep't 2011) ..............................................................................8

*Birnbaum v. Birnbaum,*
  73 NY2d 461 (1989) ..............................................................................................21

*Broker Genius, Inc. v. Zalta,*
  280 F.Supp.3d 495 (S.D.N.Y. 2017) ....................................................................11

*Chloe v. Queen Bee of Beverly Hills, LLC,*
  616 F.3d 158 (2d Cir. 2010) ...................................................................................3

*Copperweld Corp. v. Indep. Tube Corp.,*
  467 U.S. 752 (1984) ..............................................................................................16

*Cruz v. FXDirectDealer, LLC,*
  720 F.3d 115 (2d Cir. 2013) .................................................................................19

*Dalton v. Educ. Testing Serv.,*
  87 NY2d 384 (1995) ..........................................................................................8, 21

*Dardashtian v. Gitman,*
  2021 WL 746133 (S.D.N.Y. 2021) .......................................................................11

*DeFalco v. Bernas,*
  244 F.3d 286 (2d Cir. 2001) .................................................................................17

*Estee Lauder Cos. Inc. v. Batra,*
  430 F.Supp.2d 158 (S.D.N.Y. 2006) ....................................................................15

*Flickinger v. Harold C. Brown & Co., Inc.,*
  947 F.2d 595 (2d Cir. 1991) .................................................................................22

*Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgmt.,*
  7 NY3d 96 (2006) ....................................................................................................9

*Gale v. Smith & Nephew PLC,*
  2015 WL 328127 (S.D.N.Y. 2015) .........................................................................3

*Galvstar Holdings, LLC v. Harvard Steel Sales, LLC,*
   722 F.App'x 12 (2d Cir. 2018) ................................................................22

*Garland-Sash v. Lewis,*
   348 F.App'x 639 (2d Cir. 2009) ..............................................................20

*Goldstein v. Laurent,*
   2010 WL 4237582 (S.D.N.Y. 2010) .........................................................3

*Grad v. Roberts,*
   14 NY2d 70 (1964) ....................................................................................8

*Gramercy Equities Corp. v. Dumont,*
   72 NY2d 560 (1988) .............................................................................6, 21

*Grand Bahama Petroleum Co., Ltd. v. Asiatic Petroleum Corp.,*
   550 F.2d 1320 (2d Cir. 1977) ...................................................................2

*Hannex Corp. v. GMI, Inc.,*
   140 F.3d 194 (2d Cir. 1998) ...................................................................10

*Harmonay, Inc. v. Binks Mfg. Co.,*
   762 F.2d 990 (2d Cir. 1985) ...................................................................15

*Harris v. Provident Life & Acc. Ins. Co.,*
   310 F.3d 73 (2d Cir. 2002) .....................................................................21

*Henry v. Daytop Vill., Inc.,*
   42 F.3d 89 (2d Cir. 1994) .......................................................................22

*Iacovacci v. Brevet Holdings, LLC,*
   437 F.Supp.3d 367 (S.D.N.Y. 2020) ......................................................12

*ICD Holdings S.A. v. Frankel,*
   976 F.Supp. 234 (S.D.N.Y. 1997) ..........................................................21

*Int'l Diamond Imp., Inc. v. Oriental Gemco (N.Y.), Inc.,*
   64 F.Supp.3d 494 (S.D.N.Y. 2014) ..........................................................3

*Int'l Fuel & Iron Corp. v. Donner Steel Co.,*
   242 NY 224 (1926) ....................................................................................1

*Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc.,*
   920 F.2d 171 (2d Cir. 1990) ...................................................................11

*Johnson Controls, Inc. v. ATP Critical Sys.,*
   323 F.Supp.2d 525 (S.D.N.Y. 2004) ......................................................14

*Jones v. Weibrecht,*
   901 F.2d 17 (2d Cir. 1990) .......................................................................4

*Kirch v. Liberty Media Corp.,*
   449 F.3d 388 (2d Cir. 2006) ...................................................................10

*Klaxon Co. v. Stentor Elec. Mfg. Co.,*
   313 U.S. 487 (1941) ................................................................................15

*Korean Press Agency, Inc. v. Yonhap News Agency,*
   421 F.Supp.2d 775 (S.D.N.Y. 2006) ........................................................5

*Kreutter v. McFadden Oil Corp.,*
   71 NY2d 460 (1988) ..................................................................................3

*LaMarca v. Pak-Mor Mfg. Co.,*
   95 NY2d 210 (2000) ..................................................................................3

*Lehman v. Dow Jones & Co.,*
   783 F.2d 285 (2d Cir. 1986) ...................................................................11

*Market St. Ltd. Partners v. Englander Cap. Corp.,*
   1993 WL 212817 (S.D.N.Y. 1993) ...........................................................1

*MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*,
   471 F.3d 377 (2d Cir. 2006) ................................................................2

*Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*,
   500 F.3d 171 (2d Cir. 2007) ................................................................2

*Metro Traffic Control, Inc. v. Shadow Traffic Network*,
   22 Cal.App.4th 853 (1994) ................................................................15

*Mfrs. & Traders Trust Co. v. Cottrell*,
   71 AD2d 538 (4th Dep't 1979) ................................................................8

*MK Sys., Inc. v. Schmidt*,
   2005 WL 237755 (S.D.N.Y. 2005) ................................................................1

*Morris v. N.Y.S. Dep't of Tax & Fin.*,
   82 NY2d 135 (1993) ................................................................23

*NBT Bancorp v. Fleet/Norstar Fin. Grp.*,
   87 NY2d 614 (1996) ................................................................10

*New Asia Enter. v. Fabrique, Ltd.*,
   2014 WL 3950901 (S.D.N.Y. 2014) ................................................................1

*New Windsor Volunteer Ambulance Corps. v. Meyers*,
   442 F.3d 101 (2d Cir. 2006) ................................................................9

*Next Commuc'ns, Inc. v. Viber Media, Inc.*,
   758 F.App'x 46 (2d Cir. 2018) ................................................................12

*Oppenheimer & Co., Inc. v. Oppenheim, Appel, Dixon & Co.*,
   86 NY2d 685 (1995) ................................................................8

*People v. Ratteni*,
   81 NY2d 166 (1993) ................................................................17

*Philips v. Audio Active Ltd.*,
   494 F.3d 378 (2d Cir. 2007) ................................................................4

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*,
   324 U.S. 806 (1945) ................................................................9

*Rankel v. Kabateck*,
   2013 WL 7161687 (S.D.N.Y. 2013) ................................................................4

*Reed, Roberts Assocs., Inc. v. Strauman*,
   40 NY2d 303 (1976) ................................................................14

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993) ................................................................19

*Roni LLC v. Arfa*,
   18 NY3d 846 (2001) ................................................................6, 21

*Ruckelshaus v. Monsanto Co.*,
   467 U.S. 986 (1984) ................................................................11

*S&K Sales Co. v. Nike, Inc.*,
   816 F.2d 843 (2d Cir. 1987) ................................................................2

*Salm v. Feldstein*,
   20 AD3d 469 (2nd Dep't 2005) ................................................................21

*see Zirvi v. Flatley*,
   433 F.Supp.3d 448 (S.D.N.Y. 2020) (Koeltl, J.) ................................................................11

*Structured Cap. Sol., LLC v. Commerzbank AG*,
   177 F.Supp.3d 816 (S.D.N.Y. 2016) ................................................................11

*Texaco Inc. v. Dagher*,
   547 U.S. 1 (2006) ................................................................17

*Tops Mkts., Inc. v. Quality Mkts., Inc.,*
    142 F.3d 90 (2d Cir. 1998)........................................................................17

*Town & Country House & Home Servs., Inc. v. Newberry,*
    3 NY2d 554 (1958)................................................................................14

*Tri-Terminal Corp. v. CITC Indus., Inc.,*
    78 AD2d 609 (1ˢᵗ Dep't 1980)..............................................................2

*U.S. v. Basciano,*
    599 F.3d 184 (2d Cir. 2010)............................................................17, 18

*U.S. v. Diadone,*
    471 F.3d 371 (2d Cir. 2006)..................................................................18

*U.S. v. Turkette,*
    452 U.S. 576 (1981)................................................................................18

*Vasilopoulos v. Int'l Interchange Corp.,*
    1986 WL 14911 (S.D.N.Y. 1986)............................................................5

*Wm. Passalacqua Builders, Inc. v. Resnick Dev. S., Inc.,*
    933 F.2d 131 (2d Cir. 1991)..................................................................23

*Zeising v. Kelly,*
    152 F.Supp.2d 335 (S.D.N.Y. 2001)................................................6, 21

**Statutes**

15 U.S.C. § 1 ..............................................................................................23, 24
17 U.S.C. § 412 ..............................................................................................28
18 U.S.C. § 1030(e)(11)..................................................................................27
18 U.S.C. § 1030(g)........................................................................................27
18 U.S.C. § 1839(3)..........................................................................16, 17, 18
18 U.S.C. § 1839(6)........................................................................................16
18 U.S.C. § 1961 ............................................................................................25
18 U.S.C. § 1961(1)(C)..................................................................................26
18 U.S.C. § 1961(4)........................................................................................25
18 U.S.C. § 1961(5)........................................................................................26
18 U.S.C. § 1962(c)........................................................................................26
18 U.S.C. § 1965 ..............................................................................................4
28 U.S.C. § 1331 ..............................................................................................1
28 U.S.C. § 1367(a)..........................................................................................2
28 U.S.C. § 1404(a)..........................................................................................7
NY. GBL § 340(1)..........................................................................................23

**Rules**

CPLR § 301 ......................................................................................................7
CPLR § 302(a)(1)..............................................................................................5
CPLR § 302(a)(2)..............................................................................................5
Fed. R. Civ. P. 12(b)(2)....................................................................................4
Fed. R. Civ. P. 12(b)(7)....................................................................................2
Fed. R. Civ. P. 17(b)(3)(A)..............................................................................1
Fed. R. Civ. P. 19(a)....................................................................................2, 3
Fed. R. Civ. P. 8(a)........................................................................................14
Fed. R. Civ. P. 8(a)(3)....................................................................................30
Fed. R. Civ. P. 8(d)(2)....................................................................................30

Fed. R. Civ. P. 8(d)(3) ....................................................................................30
Fed. R. Civ. P. 8(e) .......................................................................................30
Fed. R. Civ. P. 9(b) .......................................................................................30
Fed. R. Evid. 801(c) .........................................................................................3
Fed. R. Evid. 802 .............................................................................................3

**Constitutional Provisions**

U.S. Const. Art. III, § 2 ...................................................................................3
U.S. Const., Amend. V .....................................................................................4

Plaintiffs respectfully submit this memorandum of law in opposition to Defendants motion for an Order, pursuant to Rule 12(b), dismissing Plaintiffs' pleading, and for such other and further grounds as this Court deems just and proper.

## ARGUMENT

## I.       PLAINTIFFS HAVE CAPACITY TO PROSECUTE THIS MATTER.

Plaintiff ESPIRE ADS LLC ("Espire") has capacity to maintain prosecution of this matter has registered as a foreign entity doing business within New York, preempting such argument. *See* Ex. 2. Notwithstanding, "door closing" statutes are inapplicable where, as here, a matter is primarily predicated upon federal question jurisdiction. *See MK Sys., Inc. v. Schmidt*, 2005 WL 237755 (S.D.N.Y. 2005) (*rev'd on other grounds* 2005 WL 590665 (S.D.N.Y. 2005)); *see* Ex. 1, at ¶ 5. The argument is further preempted by Rule 17(b)(3)(A), which instructs that a "door closing statute" does not apply in federal courts exercising federal question jurisdiction, or where business activities are not "systematic and regular", but rather, "incidental to interstate commerce". *Id*.; *see* Fed. R. Civ. P. 17(b)(3)(A).[1]

Notwithstanding, the appropriate response to such violation would be a conditional dismissal or stay until registration, which is nevertheless moot as Espire has registered. *Id*.; *see*

---

[1] *See also Market St. Ltd. Partners v. Englander Cap. Corp.*, 1993 WL 212817 (S.D.N.Y. 1993) ("the Commerce Clause of the U.S. Const. limits the reach of [New York's] door closing statute" for matters arising under federal law) (citing *Int'l Fuel & Iron Corp. v. Donner Steel Co.*, 242 NY 224 (1926)); *see New Asia Enter. v. Fabrique, Ltd.*, 2014 WL 3950901 (S.D.N.Y. 2014) (holding foreign plaintiff permitted to maintain action where it was not authorized to do business in New York but was not "doing business" therein). Likewise, here, federal questions predominate, precluding any contention that diversity of citizenship is the operative jurisdictional predicate, whereas state law claims are before this Court *via* supplemental jurisdiction, as they arise out of the same nucleus of common fact.. *See* 28 U.S.C. § 1331; *see* 28 U.S.C. § 1367(a); *see Ametex Fabrics, Inc. v. Just In Materials, Inc.*, 140 F.3d 101 (2d Cir. 1998); *see Mabry v. Neighborhood Def. Serv.*, 769 F.Supp.2d 381 (S.D.N.Y. 2011); *see* Ex. 1.

*e.g. S&K Sales Co. v. Nike, Inc.*, 816 F.2d 843 (2d Cir. 1987) (citing: *Grand Bahama Petroleum Co., Ltd. v. Asiatic Petroleum Corp.*, 550 F.2d 1320 (2d Cir. 1977); *Tri-Terminal Corp. v. CITC Indus., Inc.*, 78 AD2d 609 (1st Dep't 1980)); *see* Ex. 2.

## II.   NON-PARTY KVRMA, LLC IS NOT AN INDISPENSIBLE PARTY.

A Rule 12(b)(7) dismissal is inappropriate as non-party KVRMA LLC is not an indispensable party within the meaning of Rule 19(a), since it is a separate legal entity with no interest in the intellectual property developed by Espire, since this Court can accord complete relief amongst the parties hereto, since Espire's business is not conducted by non-party KVRMA LLC, and notwithstanding, to the extent Defendant claims that non-party KVRMA LLC does have some interest therein, Defendant's remedy is to seek leave to implead non-party KVRMA LLC under Rule 19(a)(2), rather than dismiss. *See* Fed. R. Civ. P. 12(b)(7); *see* Fed. R. Civ. P. 19(a); *see* Ex. 1, *passim*; *see* LN Aff., at ¶¶ 9, 25-26. Indeed, common sense dictates that even if, *arguendo*, the intellectual property developed by Espire were assigned or licensed to non-party KVRMA LLC, such non-party would still not be rendered an indispensable party to this matter, as the issue before this Court is Defendants' misappropriation of Espire's trade secrets. *Id*.[2]

## III.   THIS COURT HAS *IN PERSONAM* JURISDICTION OVER ALL DEFENDANTS.

This Court should deny dismissal, pursuant to Rule 12(b)(2), as this Court has both general and specific *in personam* jurisdiction over Kastner and defendant JUSTIN EMERT ("Emert"), as this action is predicated upon original federal question jurisdiction, rather than diversity of

---

[2] A Rule 12(b)(7) movant bears the burden of proving the absent party has a material interest in the subject-matter of the litigation; a party will only be considered necessary under Rule 19(a) where the Court cannot accord complete relief in that party's absence, as the correct remedy upon a finding that a party is necessary is Ordered joinder if joinder is feasible, rather than dismissal. *Id.*; *see Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171 (2d Cir. 2007); *see MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377 (2d Cir. 2006).

citizenship, and nevertheless, Kastner and Emert have minimum contacts with both the United States and the State of New York, as they concede possession of membership interests in a New York limited liability company – defendant TAPP MARKET INFLUENCERS LLC – where they undertook acts in furtherance of such New York entity and benefitted therefrom, and notwithstanding, their acts fall within the purview of CPLR § 302, as they should reasonably expect to answer for their New York activities in this Court. *See* U.S. Const., Amend. V; *see* 18 U.S.C. § 1965; *see* CPLR §§ 301-302; *compare* Ex. 12, *with* ECF 44, at ¶ 13 (conceding [Kastner and Emert] have appeared in New York in furtherance of the conduct alleged in the pleading), *and* ECF 45, at ¶ 3, *and* ECF 46, at ¶ 4; *see* Ex. 1, at ¶ 5. [3, 4]

---

[3] In ruling on a Rule 12(b)(2) motion, this Court is afforded considerable procedural leeway, and may provisionally accept disputed factual allegations as true, and need only determine whether the facts alleged by the plaintiff, if true, are sufficient to establish jurisdiction; no evidentiary hearing or factual determination is necessary for that purpose. *See Int'l Diamond Imp., Inc. v. Oriental Gemco (N.Y.), Inc.*, 64 F.Supp.3d 494 (S.D.N.Y. 2014). As such, prior to discovery, a Rule 12(b)(2) motion may be defeated with legally sufficient allegations of jurisdiction, wherefore the Court construes jurisdictional allegations in favor or non-movants. *See Gale v. Smith & Nephew PLC*, 2015 WL 328127 (S.D.N.Y. 2015); *see Goldstein v. Laurent*, 2010 WL 4237582 (S.D.N.Y. 2010).

[4] The due process clause's "minimum contacts" are satisfied where, *inter alia*, there is evidence of some act by which a defendant purposefully availed itself of the privilege of conducting activities within the forum state invoking the benefits and protections of its laws, where conduct and connection with the forum state are such that they should reasonably anticipate answering to this Courts of the forum state, and/or where a defendant carries on a continuous and systematic part of its general business within the forum state. *Id*.; *see LaMarca v. Pak-Mor Mfg. Co.*, 95 NY2d 210 (2000). Further, New York's long-arm statute – CPLR § 302 – permits the exercise of specific jurisdiction based upon a single act committed outside the state, so long as a defendant's activities were purposeful and there is a substantial relationship between the transaction and the claim asserted; a defendant need not have personally entered the jurisdiction. *See* CPLR §§ 302(a)(1)-(2); *see Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 (2d Cir. 2010); *see Kreutter v. McFadden Oil Corp.*, 71 NY2d 460 (1988). This Court's *in personam* jurisdiction will be found

Notwithstanding, this Court enjoys general *in personam* jurisdiction over Kastner and Emert under CPLR § 301, upon their conceded ownership interests of a New York entity *via* their continuous and systematic course of doing business in New York in furtherance of their pecuniary interest as to warrant a finding of their continuous herein. *Id*.; *see* CPLR § 301; *see Bagdon v. Phila. & Reading Coal & Iron Co.*, 217 NY 432 (1916).

## IV.    THIS COURT IS THE APPROPRIATE ADJUDICATION VENUE.

This Court is the appropriate venue for this matter's adjudication, as a 28 U.S.C. § 1404(a) transfer, under which Defendants have failed to move, is the appropriate remedy, if any, over Rule 12(b)(3) dismissal; nevertheless, the relevant forum selection clause is permissive and merely concerns Claims XVI-XVII, whereupon this Court should decline transfer of such Claims, as it unreasonably compromises judicial economy and creates an risk of inconsistent adjudications as the remainder of this expansive matter's adjudication is before this Court. *See* 28 U.S.C. § 1404(a); *compare* Ex. 1, at ¶¶ 139-47, *with* Ex. 3, at ¶ 6.2 ("Any claim, dispute, or disagreement arising out of… this agreement **may** be brought…") (emphasis added).[5]

Here, Kastner's permissive forum selection clause constitutes a mere consent to California venue, rather than a waiver of the right to object to venue in a different forum, where, as here, the

---

where a defendant does business over the internet, by engaging in, *inter alia*, transmitting computer files, selling goods or services, or engaging in "trickery" having an effect in New York. *Id*.

[5] A Rule 12(b)(3) dismissal motion for improper venue is not an appropriate vehicle for enforcing a forum selection clause because venue is not "improper" solely because it differs from the venue designated under such clause. *Id*.; *see* 28 U.S.C. § 1404(a); *see Atl. Marine Constr. Co. Inc. v. U.S. Dist. Court for W. Dist. of Texas.*, 571 U.S. 49 (2013). As dismissal is a severe penalty, it is well settled that upon a proper motion, transfer should be effectuated, if at all, over dismissal. *See Rankel v. Kabateck*, 2013 WL 7161687 (S.D.N.Y. 2013). Moreover, a forum selection clause may not be enforced if it is shown that enforcement would be unreasonable and/or unjust under the circumstances. *See Jones v. Weibrecht*, 901 F.2d 17 (2d Cir. 1990); *see also Philips v. Audio Active Ltd.*, 494 F.3d 378 (2d Cir. 2007).

word "may" connotes a permissive forum selection clause, whereas "shall" implies an imperative or mandatory forum selection clause. *Id*.; *see Korean Press Agency, Inc. v. Yonhap News Agency*, 421 F.Supp.2d 775 (S.D.N.Y. 2006); *see Vasilopoulos v. Int'l Interchange Corp.*, 1986 WL 14911 (S.D.N.Y. 1986). Indeed, this venue is appropriate as all conduct alleged by Plaintiffs were undertaken under this Court's plenary jurisdictional territory within Manhattan, at defendant TAPP MARKET INFLUENCERS LLC's headquarters, and in furtherance of Defendants' conduct. *Id*.

Enforcement of Kastner's permissive forum selection clause over Claims XVI-XVII would be unreasonable, as it would create duplicative actions, compromise judicial economy, increase the risk of irreconcilable inconsistent adjudications, and further, as Kastner is a resident of the State of Texas, rendering enforcement of the forum selection clause for Claims XVI-XVII equally unreasonable, as he has no connection to California, as he engages in the offending violative conduct on behalf of a New York business inflicting damages on others emanating from New York. *Id*.; *see* ECF 44-28; *see* Ex. 12.

## V.      THE JOINT VENTURE AGREEMENT WAS EFFECTUATED.

Turning to the merits, the JV Agreement was effectuated *via* certified DocuSign between the parties as conceded by Defendants' counsel – allowing Defendants to pillage Plaintiffs' trade secrets and other confidential proprietary items – whereafter, no rescission was ever effectuated. *Compare* Ex. 5-7, *with* Ex. 10 ("Steven said they signed [the JV Agreement]. Please check"); *see* JK Aff., at ¶¶ 2-4; *see* LN Aff., at ¶ 14.[6]

---

[6] A joint venture is formed where there is mutual assent to join money, property, time, skill or knowledge in furtherance of a joint venture, an agreement to share the profits and losses of an enterprise, and a right to joint control or management thereof, as here, a joint venture was definitively created since the JV Agreement intends to join together the property and resources of each of Espire with defendant THE BLU MARKET INC. and defendant THE BLU MARKET LLC (jointly, "Blu"), proscribes a division of labor and management amongst the joint venturers, and

**A.      The JV Agreement was Effectuated on August 29th, 2020.**

Here, as conceded by Defendants, the JV Agreement was effectuated by defendant STEVEN FORKOSH ("Forkosh") *via* DocuSign on August 29th, 2020, as the parties entered into the JV Agreement on August 29th, 2020, as established by the proffered certified DocuSign "certificate of completion" matching the "DocuSign Envelope ID" ending in …760E. imposing confidentiality, non-solicitation, and non-circumvention provisions upon Forkosh which shall survive termination thereof. *Id.*; *compare* Ex. 5, at pp. 1-8, *with* Ex. 5, at pp. 9-10; *see* Ex. 5, at ¶¶ 11(a)-(d), 20; *see* Ex. 6-7; *see* Ex. 10 ("Steven said they signed [the JV Agreement]. Please check"); *see* Ex. 8 ("Please sign and return [the JV Agreement] so I can countersign and start"); *see* Ex. 10 ("Steven said they signed [the JV Agreement]. Please check"); *see* JK Aff., at ¶¶ 2-4; *see* LN Aff., at ¶ 14.[7]

---

devises a share of the revenues thereof. *See Zeising v. Kelly*, 152 F.Supp.2d 335 (S.D.N.Y. 2001) ("the parties must be clear that they intend to form a joint venture, which is a fiduciary relationship, and not a simple contract"); *see* Ex. 5, at ¶¶ 4, 6. Furthermore, partnership legal principles are applicable to joint ventures, as joint venturers owe fiduciary obligations to one another. *See Gramercy Equities Corp. v. Dumont*, 72 NY2d 560 (1988) (holding that partnership law concepts and principles are applicable to joint ventures); *see Roni LLC v. Arfa*, 18 NY3d 846 (2001).

[7] Thereafter, Forkosh was granted access to Espire's trade secrets and other such confidential and proprietary information, subject to the JV Agreement's confidentiality, non-solicitation, and non-circumvention provisions – which survives termination – including granted login credentials with access to, *inter alia*, company files, servers, source code, an e-mail address, and contact information for all employees, agents, clients, brands, influencers, and other such third-party platform users, whereupon Forkosh regularly held and participated in meetings with Espire's executive team, employees, and clients. *Id.*; *see* Ex. 5, at ¶¶ 11(a)-(d), 20; *see* Ex. 11; *see* LN Aff., at ¶¶ 17-19. While the JV Agreement was in effect, on September 25th, 2020, Forkosh incorporated defendant TAPP INFLUENCERS CORP. in direct violation of the JV Agreement's confidentiality, non-solicitation, and non-circumvention provisions. *Id.*; *compare* Ex. 12, at pp. 3-4, *with* Ex. 5, at ¶¶ 11(a)-(d), 20. After Forkosh had pillaged all he could from Espire under the access granted to him *via* the JV Agreement, on October 30th, 2020 – sixty-two (62) days after mutually

In Forkosh's pursuit of inoculation from his trade secret theft, on October 30th, 2020, Defendants' counsel baselessly informed Plaintiffs' prior counsel, JKR, that the parties agreed to rescind the JV Agreement, and delivered a draft rescission agreement requesting revisions, to which JRK, replied that he will review the rescission agreement, but was unaware as to the status of the JV Agreement. *Id.*; *see* Ex. 9. Thereafter, on October 31st, 2020, Defendants' counsel conceded that Forkosh mutually assented to the JV Agreement. *Id.*; *see* Ex. 10 ("Steven said they signed [the JV Agreement]. Please check"). After consultation with Plaintiffs, JRK was informed that the parties assented to the JV Agreement, that the parties had never agreed to withdraw, cancel, or rescind the JV Agreement and that Navarro refused to execute any rescission agreement with Forkosh because of the trade secrets divulged to him under the JV Agreement, wherefore Navarro instructed JRK to cease working on recission thereof. *Id.*

To wit, it strains credulity that Forkosh would prepare and circulate an agreement rescinding the JV Agreement while maintaining the position that the parties never assented thereto, as a recission agreement would be unnecessary in the absence of a valid contract. *Id.*; *see* Ex. 9.[8]

**B.    All Conditions Precedent under the JV Agreement were Satisfied.**

Espire's July 26th, 2017 operating agreement firmly establishes Navarro as a fifty-one percent (51%) voting unit and shareholder by virtue of her fifty-one thousand (51,000) units out of one hundred thousand (100,000) units, entitling her to unilaterally assent to the JV Agreement

---

assenting to the JV Agreement – Forkosh attempted recission through his counsel seeking inoculation from the consequences of his actions. *Id.*; *compare* ECF 44-17, *and* LN Aff., at ¶¶ 17-18, 21-23; *see* JK Aff., at ¶¶ 2-4.

[8] Moreover, as the terms of the JV Agreement instruct that it can only be modified by a bilaterally executed writing, the JV Agreement and all terms therein remain in full force and effect, and even if, *arguendo*, this Court found that any number of provisions of the JV Agreement are null and void, the JV Agreement expressly holds that the remaining terms are severable, whereupon   the JV Agreement's confidentiality, non-solicitation, and non-circumvention provisions survive. *Id.*; *see* Ex. 5, at ¶¶ 11(a)-(d), 16, 19-20.

for Espire, as she cannot be outvoted. *See* ECF 44-15, at p. 32. As Navarro is a fifty-one percent (51%) shareholder, she cannot be the sole shareholder in Espire. *Id*. Nor have Defendants proffered evidence of a majority shareholder resolution rescinding the JV Agreement, despite Defendants' contention that such a shareholder resolution exists. *Id*.; *see* Ex. 5-7.[9]

Nor was the JV Agreement "an agreement to agree", insofar as a condition precedent of granting Forkosh access to Espire's trade secrets, employees, and other such confidential and proprietary information was Forkosh's continuing confidentiality, non-solicitation, and non-circumvention, which shall survive termination thereof. *Id*.; *see* Ex. 5, at ¶¶ 11(a)-(d), 16, 19-20.[10]

Further, Forkosh's failure to continue diligently working with Plaintiffs to complete the tasks outlined by the JV Agreement are Forkosh's breaches of both the JV Agreement and the implied covenant of good faith and fair dealing imposed thereunder, as Forkosh attempted to rescind the JV Agreement after pillaging Espire's trade secrets, employees, and other such confidential and proprietary information. *Id*.; *see* Ex. 5.[11]

---

[9] A condition precedent is an occurrence which, unless excused, must occur before a duty to perform arises, which may either be express or implied; implied conditions precedent are imposed by law to do justice, holding substantial compliance sufficient. *See Oppenheimer & Co., Inc. v. Oppenheim, Appel, Dixon & Co.*, 86 NY2d 685 (1995).

[10] Alternatively, nor was the JV Agreement "an agreement to agree", insofar as it resulted in the formation of a new entity – defendant TAPP INFLUENCERS CORP. – whereunder the parties share a 50%-50% equity stake; however, rather than sharing such new entity with Plaintiffs, Forkosh utilized it to inflict grievous harm as articulated hereunder. *Id*.; *see* Ex. 12; *see* Ex. 1, *passim*.

[11] A defendant's failure to perform constitutes a breach of an agreement. *See Bank of Am. v. Petitt*, 89 AD3d 652 (2nd Dep't 2011); *see Mfrs. & Traders Trust Co. v. Cottrell*, 71 AD2d 538 (4th Dep't 1979). Likewise, a breach of an implied covenant of good faith and fair dealing constitutes a breach of the underlying agreement, rooted in the principle that neither party will act in a manner injuring or destroying the rights of the counterparty to receive the benefits of the agreement, such as, *inter alia*, intentionally withholding performance. *See Dalton v. Educ. Testing Serv.*, 87 NY2d 384 (1995); *see Grad v. Roberts*, 14 NY2d 70 (1964). Upon a material breach, the non-breaching party may be excused

Nor did Plaintiffs waive any rights under the JV Agreement, as Plaintiffs refused to assent to Defendants' recission agreement, and Defendants can point to neither a signed writing nor distinct conduct which would establish waiver; rather, Plaintiffs commenced this litigation seeking full vindication for all breached obligations imposed thereunder as a direct result of Defendants' breach. *Id*.; *see* Ex. 1; *see* LN Aff., at ¶¶ 22-23.[12, 13]

## VI.    CONTRARY TO DEFENANTS' CONTETIONS, ALL CLAIMS ARE ADEQUATELY PLEAD.

While Defendants frame each of Claims III, XI, XV, and XIX as "tortious interference with existing contracts", a review of the claims reveal that they are not contract-based, but rather, claims sounding in "tortious interference with business relations" – which do not require the existence of contracts – thereby rendering Defendants' arguments in support of dismissal entirely meritless, and further, Defendants' one sentence devoted to undermining these claims baselessly asserts that

---

from further performance. *See New Windsor Volunteer Ambulance Corps. v. Meyers*, 442 F.3d 101 (2d Cir. 2006). Likewise, Courts may deny relief to a party who has acted in bad faith or in an otherwise deceitful, fraudulent, or unconscionable manner in connection with a matter. *See Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806 (1945).

[12] A waiver may only be effectuated if it was knowing, voluntary, and intentional. *See Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgmt.*, 7 NY3d 96 (2006). Waiver should not be lightly presumed and must be based upon a clear manifestation of intent to give up a contractual protection, wherefore the question of waiver is generally one of fact, whereupon dismissal should be denied, as Rule 12 motions are ill-equipped fact adjudication vehicles. *Id*.

[13] Nor does the JV Agreement warrant or represent that Navarro is the sole shareholder in Espire; rather, the warranties and representations merely state that each party has the full power to assent thereto, that no tax liabilities remain outstanding, and that no pending litigation are threatened as of the August 29th, 2020 effective date. *Id*.; *see* Ex. 5, at ¶¶ 8, 10(a)-(f). To the extent that "paragraph two (2)" of the JV Agreement lists Navarro as a sole shareholder, it is a mere recital, whereas the warranties and representations thereof are contained in "paragraph eight (8)" and "paragraph ten (10)". *Id*.; *compare* Ex. 5, at ¶ 2, *with* Ex. 5, at ¶¶ 8, 10(a)-(f).

"none of these elements are alleged", when, in fact, all elements are alleged with factual specificity against each designated defendant; Plaintiffs further particularized a list of no less than seventeen (17) users of their platform who were extortionately coerced away from Espire's platform to Defendants' platform, and further alleged proximately caused damages in the form of, *inter alia*, lost profits, lost users, and lost customers by reason of Defendants' unauthorized access to Espire's internal servers to modify internal code, divert and redirect user traffic away from their business, change URLs to prevent users access to intended website destinations, modify their promotional offers and campaigns, and engaging in said extortionate behavior. *See* Ex. 1, at ¶¶ 1-71, 86-91, 119-23, 134-38, 151-55.[14]

Defendants' attempts to secure dismissal of Claims I and II upon a purported "failure to allege a trade secret" and a "failure to allege efforts to protect such trade secrets" similarly fail as both the exact nature of Plaintiffs' stolen trade secrets and Plaintiffs' efforts undertaken to protect such trade secrets were specifically alleged in Plaintiffs' pleading, and as no open-source applications were utilized as the basis for the source code. *See* Ex. 1, at ¶¶ 19-63, 72-85; *see* Ex. 5, at ¶¶ 11(a)-(d), 20; *see* ECF 44-15, at Art. X; *see* Ex. 3, at §§ 3.4-3.6; *see* Ex. 16, *passim*.

---

[14] A claim sounding in "tortious interference with business relations" does not require an extant contract, but merely requires interference with a business relationship which may result in any pecuniary value of which a defendant were aware, an intentional interreference thereof by wrongful means, and damages. *See Hannex Corp. v. GMI, Inc.*, 140 F.3d 194 (2d Cir. 1998) ("a plaintiff can recover if… defendant tortiously interfered with a continuing business or other customary relationship not amounting to a formal contract"); *see NBT Bancorp v. Fleet/Norstar Fin. Grp.*, 87 NY2d 614 (1996); *see Sullivan v. Harnisch*, 81 AD3d 117 (1st Dep't 2010). Likewise, a claim sounding in "tortious interference with existing contracts" must allege the existence of a valid contract between a plaintiff and third-party, a defendant's awareness of the existence of such contract, that such defendant intentionally procured a but-for breach of the contract, an actual breach thereof, and injuries in-fact. *See Kirch v. Liberty Media Corp.*, 449 F.3d 388 (2d Cir. 2006); *see Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209 (2d Cir. 2002).

In this Circuit, a trade secret will be found where, "in combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design, and operation of which, in unique combination, affords a competitive advantage". *See Integrated Cash Mgmt Servs., Inc. v. Digit. Trans., Inc.*, 920 F.2d 171 (2d Cir. 1990) ("the way in which various components fit together as building blocks in order to form the unique whole was secret"); *see e.g. Dardashtian v. Gitman*, 2021 WL 746133 (S.D.N.Y. 2021) ("even if software were developed entirely from open source software… implementation of it would remain secret"); *see also Next Commuc'ns, Inc. v. Viber Media, Inc.*, 758 F.App'x 46 (2d Cir. 2018) ("a trade secret, unlike a patent, does not have to be novel or an invention"). Indeed, the compilation of open-source inputs is contemplated by the DTSA as a "trade secret", as the definition of "trade secret" includes all forms of technical engineering, **including the compilation of programs or codes**. *See* 18 U.S.C. § 1839(3) (emphasis added).[15]

---

[15] A threshold consideration in determining whether the information is a trade secret within the meaning of the DTSA is whether the information was secret at all. *Id.*; *see Zabit v. Brandometry, LLC*, 540 F.Supp.3d 412 (S.D.N.Y. 2021); *see Broker Genius, Inc. v. Zalta*, 280 F.Supp.3d 495 (S.D.N.Y. 2017) (citing *Lehman v. Dow Jones & Co.*, 783 F.2d 285 (2d Cir. 1986)); *see Structured Cap. Sol., LLC v. Commerzbank AG*, 177 F.Supp.3d 816 (S.D.N.Y. 2016) (citing *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986 (1984)). A DTSA claim is statutorily viable where, *inter alia*, the owner has undertaken "reasonable measures" to keep such information secret, where the information is obtained through improper means, and where such information is generally not known by others. *Id.*; *see* 18 U.S.C. § 1839(3); *see* 18 U.S.C. § 1839(6); *see Zabit v. Brandometry, LLC*, 540 F.Supp.3d 412 (S.D.N.Y. 2021); *see Zirvi v. Flatley*, 433 F.Supp.3d 448 (S.D.N.Y. 2020) (Koeltl, J.) *aff'd* 838 F.App'x 582 (2d Cir. 2020). Such "reasonable measures" and/or precautions militating in favor of finding a trade secret include, *inter alia*, the use of non-disclosure and confidentiality agreements. *Id.*; *see e.g. Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc.*, 920 F.2d 171 (2d Cir. 1990). In assessing DTSA claims, Courts in this Circuit often look to New York trade secret law. *See Zabit v. Brandometry, LLC*, 540 F.Supp.3d 412 (S.D.N.Y. 2021). There is no heightened pleading requirement applicable to DTSA claims; rather, this Circuit requires that plaintiffs plead trade secrets with sufficient specificity as to inform the defendants of

Here, a DTSA "trade secret" was sufficiently alleged, as Defendants have been informed of the misappropriated items with sufficient specificity, including Defendants' alleged *verbatim* copy and paste of Espire's "mobile and web application source code and other such code elements to develop defendant TAPP INFLUENCERS CORP.'s mobile and web application source code", evidenced by Kastner's "programmer constant "kast" tag network assignment appearing in defendant TAPP INFLUENCERS CORP.'s source code. *See* Ex. 1, at ¶¶ 51-58. Indeed, Espire alleged deriving economic benefit from efforts to independently develop proprietary source code by retaining Kastner under a non-disclosure covenant, as well as other such efforts to maintain the secrecy thereof with various confidentiality provisions and password protections, wherefore such source code is, *per se*, not generally known by the public, and whereunder Espire did not consent to the use of open-source elements. *See* Ex. 3, at § 2.1(c) ("All materials produced by Contractor as part of the Services shall be created by Contractor"); *see* Ex. 3, at §§ 3.4-3.6; *see* LN Aff., at ¶¶ 9-10; *see* Ex. 5, at ¶¶ 11(a)-(d), 20; *see* ECF 44-15, at Art. X; *see* Ex. 1, at ¶¶ 16, 19, 21, 24-25, 27, 36-38, 75.

Even if, *arguendo*, Kastner had utilized third-party open-source elements, the combination of such elements constitutes a trade secret. *Id*.; 18 U.S.C. § 1839(3); *see Integrated Cash Mgmt Servs., Inc. v. Digit. Trans., Inc.*, 920 F.2d 171 (2d Cir. 1990) ("a trade secret can exist in combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design, and operation of which, in unique combination, affords a competitive advantage and is a protectable secret… the way in which various components fit together as building blocks in order to form the unique whole was secret"); *see Next Commuc'ns, Inc. v. Viber Media, Inc.*, 758 F.App'x 46 (2d Cir. 2018) ("a trade secret, unlike a patent, does not

---

what they are alleged to have misappropriated. *Id* (citing *Iacovacci v. Brevet Holdings, LLC*, 437 F.Supp.3d 367 (S.D.N.Y. 2020)); *see also Next Commuc'ns, Inc. v. Viber Media, Inc.*, 758 F.App'x 46 (2d Cir. 2018).

have to be novel or an invention"). Indeed, third-party expert analysis of Espire's source code concludes that it was not built from open-source applications, but rather, independently engineered. *Id*.; *compare* ECF 46, at ¶ 12, *with* Ex. 16, at ¶¶ 1-2.

Likewise, Espire sufficiently alleged that Defendants obtained the trade secrets at issue through, *inter alia*, tortiously induced interference and breach with existing confidentiality agreements, economic espionage, and outright theft of Espire's source code, and further utilized such source code to invade the private internal servers of Espire to sabotage their promotional business endeavors to inflict economic harm upon both Espire and users of their platform *via* extortionate means. *Id*.; *see* Ex. 1, at ¶¶ 51-58, 62-68. Nor have Plaintiffs "failed to allege how the trade secrets at issue are being used" to inflict damages have a *quantum* of validity, as, *inter alia*, Defendants are utilizing a *verbatim* copy of Espire's source code to generate a platform, wherefore every penny of revenue derived from such platform rightfully belongs to Espire, and further, Defendants have created derivative software to propagate their protection racket. *Id*.[16]

So much of Defendants' dismissal argument as to Claims V, XII, and XVI regarding the purported invalidity of non-competition agreements predicated upon a California statute is entirely

---

[16] Finally, as to Defendants' contention that Navarro purchased the intellectual property of the Blu Market defendants, the stolen intellectual property at issue in this litigation was independently derived by virtue of the Developer Agreement with Kastner, whereas non-party KVRMA, LLC purchased from Forkosh certain mobile gaming assets of defendant THE BLU MARKET, INC. and defendant THE BLU MARKET LLC in the amount of seventy-seven thousand two hundred USD ($77,200.00), as evidenced by the Apple app store transfer of ownership, which is wholly unrelated to the intellectual property at issue here; the platform-generating source code of Espire, of which Kastner was retained to develop in mid-2020 was not purchased from any of the Defendants. *See* Ex. 4; *see* LN Aff., at ¶ 13. If such purchase had been undertaken for the intellectual property in this litigation, certainly Defendants would have proffered some evidence of a transfer in their dismissal motion, whereas here, Defendants' dismissal motion is devoid of any exhibit establishing the sale of their intellectual property with respect to Espire's platform. *Id*.

meritless as to the JV Agreement with Forkosh governed by New York law under Claim V, entirely meritless as to the non-disclosure agreement with Kastner governed by New York law under Claim XVI, and as to Claims XII and XVI, New York choice-of-law rules dictate applying New York law, and nevertheless, such California statute is inapplicable, as the gravamen of the restrictive covenants breached concern confidentiality, non-disclosure, and non-solicitation, rather than non-competition. *See* Ex. 1, at ¶¶ 21, 25, 36, 95-100, 124-127, 139-144; *see* Ex. 5, at ¶¶ 11(a)-(d), 14, 20; *see* Ex. 3, p. 8, at § 10; *see* ECF 44-15, at Art. X.[17]

Here, rather than seeking to restrain the relevant Defendants from earning a living or compelling the parties back to Espire's servitude, each of Claims V, XII, & XVI seek damages for breached contractual obligations of confidentiality, non-disclosure, non-solicitation, and non-competition arising from their joint misappropriation of trade secrets insofar as, *inter alia*, overtly converting source code belonging to Espire. *See* Ex. 1, at ¶¶ 21, 25, 36, 95-100, 124-127, 139-144.

Likewise, each of the agreements under Claims V, XII, and XVI contain restrictive covenants concerning legitimate interests – the continued confidentiality of Espire's trade secrets and other such confidential information – wherefore the reasonableness inquiry has been satisfied, precluding any consideration of scope, time, and geographic location. *Id*.

---

[17] The Second Circuit has instructed that where, as here, a party has a legitimate interest to protect, the reasonableness of a restrictive covenant will not be an issue. *See Am. Inst. of Chem. Eng'rs v. Reber-Friel Co.*, 682 F.2d 382 (2d Cir. 1982) ("we need not reach the question of the reasonableness of the scope of the covenant because legitimate interests of the employer are not implicated"); *see* Ex. 1, *passim*. Thus, a reasonableness inquiry ends upon the establishment of a legitimate interest by the party seeking enforcement. *Id*. Courts throughout New York have held that "legitimate interests" to protect for the purposes of analyzing the reasonableness of a restrictive covenant include, *inter alia*, the protection against trade secret theft and dissemination of confidential information, and protection of client relationships. *See Reed, Roberts Assocs., Inc. v. Strauman*, 40 NY2d 303 (1976); *see Town & Country House & Home Servs., Inc. v. Newberry*, 3 NY2d 554 (1958).

Likewise, here, as to Claim V alleging a JV Agreement breach against Forkosh, New York law applies, rendering Defendants' argument concerning a California statute entirely meritless, whereas under Claim XVI concerning Kastner's breach of non-disclosure provisions, New York law applies under the "substantial relationship" choice-of-law rule, rendering such argument concerning a California statute entirely meritless. *Id*.; *see* Ex. 5, at ¶ 14. Likewise, as to. *Id*.; *see* Ex. 3, p. 8, at ¶ 10. .[18]

Here, Courts of the State of California have held that California has zero interest in enforcing restrictive covenants where, as here, a contracting party has engaged in illegal acts and/or trade secret misappropriation. *Id*.; *see Estee Lauder Cos. Inc. v. Batra*, 430 F.Supp.2d 158 (S.D.N.Y. 2006) (citing *Metro Traffic Control, Inc. v. Shadow Traffic Network*, 22 Cal.App.4th 853 (1994)). Moreover, the State of California likely has very little interest in protecting citizens of Texas and Florida committing tortious conduct and violations of federal law on behalf of a New York business entity. *Id*.; *see* ECF 44-26; *see* ECF 44-28; *see* Ex. 12. Rather, the State of New York has a far greater interest in regulating an entity within its temporal boarders for violating, *inter*

---

[18] Under the "substantial relationship" test, the law of the state chosen will be disregarded where, *inter alia*. the application of the law of the state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state. *Id*. Thus, Defendants would have to establish that the State of California has a materially greater interest in the determination of this dispute. *Id*. Indeed, New York law is applicable so much of the agreements with Kastner and Emert, as under New York's "substantial relationship" approach, as prevailing choice-of-law rules of the forum wherein this Court sits are applied. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941); *see Harmonay, Inc. v. Binks Mfg. Co.*, 762 F.2d 990 (2d Cir. 1985) *aff'g* 597 F.Supp. 1014 (S.D.N.Y. 1984) (although New York recognizes the "choice of law principle that parties to a contract have a right to choose the law to be applied to their contract, this freedom of choice on the part of the parties is not absolute"); *see Estee Lauder Cos. Inc. v. Batra*, 430 F.Supp.2d 158 (S.D.N.Y. 2006).

*alia*, federal hacking laws, engaging in business trade secret piracy, operating a RICO enterprise protection racket, and otherwise engaging in anti-competitive behavior. *Id*. [19]

Plaintiffs have adequately plead a Sherman Act § 1 violation, as they have alleged concerted action amounting to a combination, contract, and/or conspiracy between at least two legally distinct entities amounting to an unreasonable restraint of trade by particularizing a causal link between anticompetitive conduct creating a detrimental effect on competition in influencer marketing management harming the market as a whole, whereas Defendants have failed to articulate what elements, if any, are missing from Claim XXVII, and/or engage in a "rule of reason" analysis attempting to shift the burden back to Plaintiffs by establishing a procompetitive argument for Defendants' concerted conduct in, *inter alia*, selling an extortionate protection shield from Defendants' own software which automatically targets users of Espire and/or Defendants repeated false social media platform content violations targeted toward the social media posts of Espire's users to coerce business away from Espire toward Defendants. *See* 15 U.S.C. § 1; *see Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984); *see Anderson News, LLC v. Am.*

---

[19] If the non-competition clauses of Claims XII and XVI are found unreasonable, they should be severed and the remaining non-disclosure and non-solicitation provisions thereof enforced, as New York Courts have reserved the power to partially enforce restrictive covenants. *See BDO Seidman v. Hirshberg*, 93 NY2d 382 (1999); *see Ashland Mgmt. Inc. v. Altair Inv. N.A., LLC*, 59 AD3d 97 (1st Dep't 2008).

*Media, Inc.*, 899 F.3d 87 (2d Cir. 2018); *compare* Ex. 1, at ¶¶ 62-63, 188-95, *with* ECF 46, at ¶ 4, *and* ECF 45, at ¶ 3; *see* LN Aff., at ¶ 8.[20, 21]

Defendants advance meritless contentions concerning Claim XXIX that Plaintiffs failed to plead a RICO entity, that the RICO activity was not particularized, that the targets of Defendants' extortionate threats were not particularized, and a failure to allege damages. *See* 18 U.S.C. § 1961, *et seq*.; *see* Ex. 1, at ¶¶ 196-207.[22]

---

[20] Under the Sherman Act, Congress declared "every contract, combination… or conspiracy, in restraint of trade or commerce… to be illegal". *See* 15 U.S.C. § 1. The Supreme Court has held "Congress intended to outlaw only unreasonable restraints". *see e.g. Texaco Inc. v. Dagher*, 547 U.S. 1 (2006); *see e.g. Arizona v. Maricopa Cnty. Med. Soc'y*, 457 U.S. 332 (1982). To state a Sherman Act § 1 violation, a plaintiff must allege a combination or some form of concerted action between at least two legally distinct entities unreasonably restrains trade, which has an adverse effect on competition in a relevant market. *See Tops Mkts., Inc. v. Quality Mkts., Inc.*, 142 F.3d 90 (2d Cir. 1998). Where a restraint is not *per se* unreasonable, it is subjected to a fact-specific "rule of reason" analysis designed to distinguish between restraints with anticompetitive effect that are harmful to the consumer and restraints stimulating competition that are in the consumer's best interests. *See US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43 (2d Cir. 2019) (citing *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877 (2007)). Under a "rule of reason" analysis, a plaintiff bears the initial burden to prove that a challenged restraint has a substantial anticompetitive effect that has detrimental effects in the relevant market, whereupon such showing, the burden then shifts to a defendant to show a procompetitive rationale for the restraint; if a defendant makes this showing, the burden shifts back to a plaintiff to demonstrate that procompetitive efficiencies could be reasonably achieved through less anticompetitive means. *Id*. [21] Likewise, the Donnelly Act is largely construed consistent with Sherman Act jurisprudence. *Id*.; *see* NY. GBL § 340(1); *see People v. Ratteni*, 81 NY2d 166 (1993).

[22] The RICO statue prohibits, *inter alia*, the operation of an enterprise through a pattern of racketeering activity, receiving the fruits thereof, collecting unlawful debt, and/or conspire to do any of the foregoing, wherefore a RICO claim is adequately stated where it is alleged that a RICO enterprise affecting interstate commerce with which a defendant is associated or participated in engages in a pattern of racketeering activity. *See* 18 U.S.C. §§ 1962(a)-(d); *see U.S. v. Basciano*, 599 F.3d 184 (2d Cir. 2010); *see DeFalco v. Bernas*, 244 F.3d 286 (2d Cir. 2001). A RICO

Here, Plaintiffs have adequately plead the existence of a RICO enterprise, insofar as the business of defendant TAPP INFLUENCERS CORP. is business entity, whereas the RICO enterprise here consists of a number of the individual corporate officers who have come together to operate as a common unit for the common purpose of engaging in RICO activities, including engaging in, *inter alia*, Hobbs Act extortion, economic espionage, trade secret misappropriation, hacking sabotage of Espire's legitimate business endeavors, and anticompetitive conduct, which is a distinct unit performing distinct activities from the corporate purpose of defendant TAPP INFLUENCERS CORP., an influencer marketing business, thereby forming the RICO enterprise, and have further alleged the RICO enterprise's "pattern of racketeering activity", which continues as an ongoing concern posing a continuing threat of criminal activity. *Id.*; *see U.S. v. Basciano*, 599 F.3d 184 (2d Cir. 2010); *see U.S. v. Diadone*, 471 F.3d 371 (2d Cir. 2006); *see* Ex. 1, at ¶¶ 40, 51, 62-63, 64-68, 196-207. [23, 24]

---

enterprise includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associate in fact although not a legal entity. *See* 18 U.S.C. § 1961(4); *see U.S. v. Turkette*, 452 U.S. 576 (1981).

[23] Under 18 U.S.C. § 1961(1), Congress compiled a RICO predicate act list of "racketeering activity" – of which the manner of each such predicate act was specifically alleged in Plaintiffs' complaint – including, *inter alia*, Hobbs Act extortion under 18 U.S.C. § 1951, wire fraud under 18 U.S.C. § 1343, economic espionage under 18 U.S.C. § 1831, and trade secret misappropriation under 18 U.S.C. § 1832. *Compare* 18 U.S.C. § 1961(1)(C), *with* Ex. 1, at ¶¶ 197-201. Likewise, under 18 U.S.C. § 1961(5), a "pattern of racketeering activity" has been Congressionally defined as at least two instances of 18 U.S.C. § 1961(1) "racketeering activity", which has been similarly alleged in the pleading. *Id.*; *compare* 18 U.S.C. § 1961(5), *with* Ex. 1, at ¶ 201.

[24] Thus, reliance upon the Second Circuit's *Cruz* decision is misplaced, as the RICO enterprise business entity in *Cruz* was the indistinct and overlapping corporate purpose of such business entity, whereas here, the RICO enterprise operates as a distinct unit from defendant TAPP INFLUENCERS CORP.'s corporate purpose of influencer marketing, whereas here, Defendants' RICO enterprise exists to engage in Hobbs Act extortion, economic espionage, trade secret

Plaintiffs have itemized the individual activities of each of the RICO enterprise's participants, including endeavors undertaken at the direction of other participants and efforts in furtherance of the RICO enterprise, including the economic espionage and trade secret misappropriation of Espire's source code undertaken by Kastner, at the direction of Forkosh and Emert, which allowed for development of derivative software allowing the RICO enterprise to engage in the extortionate and anticompetitive, which targeted specific and itemized platform users of Espire, and further hacked into Espire's servers to sabotaging legitimate business activities. *Id.*; *see* Ex. 1, at ¶¶ 51, 62-63, 64-68; 196-207.[25, 26]

Defendants' contention that each of Claims XX-XXIV under the CFAA should be dismissed as Espire's "computers are not used in of affect interstate commerce" as "influencers market the advertiser campaigns, not Espire", is patently meritless, insofar as such argument fails to acknowledge that Espire's source code runs a platform which connects influencers with the opportunities to engage in marketing campaigns *via* the internet, rendering Espire's platform as a marketplace which must be accessed by such influencers to gain access to market the advertiser's

---

misappropriation, hacking sabotage of Espire's legitimate business endeavors, and anticompetitive conduct. *Id.*; *see* Def. MOL, at p. 19 (citing *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115 (2d Cir. 2013)).

[25] Under 18 U.S.C. § 1962(c), a defendant must "conduct or participate, directly or indirectly, in the conduct of the RICO enterprise's affairs", including individuals with primary responsibility and other such individuals or entities who participate in the conduct of the RICO enterprise's affairs; liability is not limited to upper management, but also can inure to lower rung participants who are under the direction of upper management. *See* 18 U.S.C. § 1962(c); *see Reves v. Ernst & Young*, 507 U.S. 170 (1993).

[26]. Nor does Claim XXIX require a heightened pleading standard imposed under Rule 9(b), as "fraud" is not one of the RICO enterprise's predicate acts alleged by Plaintiffs. *Id.* While Defendants contend that Plaintiffs have suffered no damages by virtue of the RICO enterprise's activity, the pleading alleges clear and definite business losses causally related to Defendants' conduct. *Id.*

campaigns, thereby engaging in interstate commerce. *See* 18 U.S.C. § 1030(g); *see* Ex. 1, at ¶¶ 16, 156-70; *see* LN Aff., at ¶¶ 6-7.[27]

Defendants' contention that they are entitled to dismissal of Claims XXV and XXVI upon the ground of copying in the Summer of 2021 whereas registration was not completed until November of 2021 – all while conceding fact-issues and without proffering a copy of defendant TAPP INFLUENCERS CORP.'s source code to disprove no infringement took place – is not a viable argument supporting dismissal, as 17 U.S.C. § 412 expressly contemplates this situation, instructing that a continued infringement after registration may merely negate an award of attorneys' fees, but does not negate other remedies for a continuing infringement. *See* 17 U.S.C. § 412; *see* Ex. 1, at ¶¶ 171-184; *contra* Def, MOL, at pp. 22-23. Further, Espire has proffered true copies of the Register of Copyrights' valid Certificate of Registration bearing Copyright Registration Nos. TX0009037536 & TX0009037539. *Id*.; *see* Ex. 15.

Each of Claims IX-X, XIII-XIV, XVII-XVIII, and XXXII are plead with requisite specificity, as the JV Agreement was mutually assented to for all the reasons set forth in Point V(A), imposing implied covenants and fiduciary obligations upon Forkosh, whereas Emert owes fiduciary obligations under the Operating Agreement, and whereas Kastner owes fiduciary obligations under the Development Agreement; likewise, the implied covenant of good faith and fair dealing claims are not duplicative of the breach of contract claims, as they are not predicated

---

[27] In misplaced reliance upon *Nexans* and older versions of the CFAA, Plaintiffs' damages do not fall beyond the CFAA, as *Nexans* was abrogated by the CFAA amendments inserting 18 U.S.C. § 1030(g), and the Second Circuit in *Garland-Sash*. *Id*.; *see* 18 U.S.C. § 1030(e)(11); *see Garland-Sash v. Lewis*, 348 F.App'x 639 (2d Cir. 2009) ("In ruling that the CFAA allows for compensation of only economic loss, the District Court relied upon an opinion which construed an earlier version of § 1030(g), which indeed limited recovery to economic damages… The new version provides for a civil action to obtain compensatory damages").

upon breached contractual covenants, but rather, conduct not expressed under the relevant agreements. *See* Ex. 1, at ¶¶ 112-18, 128-33, 145-50, 226-31; *see* Point V(A), *supra*.[28]

Similarly, Forkosh owed fiduciary obligations under the JV Agreement to his joint venturers, including to his joint venturers in The Blu Market, wherefore Forkosh's conduct in violation thereof has been itemized in Plaintiffs' pleading. *Id*.; *see* Ex. 1, at ¶¶ 39-42, 45-51, 54-55, 58-71, 115-18, 226-31; *see* Ex. 5. [29, 30]

Here, Emert owed fiduciary obligations under the Operating Agreement to his co-members, wherefore Emert's conduct in violation thereof has been itemized in Plaintiffs' pleading. *Id*.; *see* Ex. 1, at ¶¶ 21-23, 43, 45-47, 51, 54-55, 58-68, 131-33; *see* ECF 44-15.

---

[28] Every contract includes an implied covenant of good faith and fair dealing, rooted in the principle that neither party will act in a manner that will have the effect of destroying or injuring the right of the other party to receive the benefits of the contract. *See Dalton v. Educ. Testing Serv.*, 87 NY2d 384 (1995). A claim sounding in a breach of the implied covenant of good faith and fair dealing is only redundant where the conduct alleged is the predicate for both a breach of said implied covenant and the agreement itself, whereas here, the conduct alleged under such claim is distinct from breach of contract. *See Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73 (2d Cir. 2002) (citing *ICD Holdings S.A. v. Frankel*, 976 F.Supp. 234 (S.D.N.Y. 1997).

[29] Legal principles of partnerships are applicable to joint ventures, whereupon joint venturers owe fiduciary obligations to one another. *See Gramercy Equities Corp. v. Dumont*, 72 NY2d 560 (1988) (holding that partnership law concepts and principles are applicable to joint ventures); *see Eskenazi v. Schapiro*, 27 AD3d 312 (1st Dep't 2006); *see Zeising v. Kelly*, 152 F.Supp.2d 335 (S.D.N.Y. 2001) ("a joint venture… is a fiduciary relationship, and not a simple contract"). Likewise, members of a limited liability company owe fiduciary obligations to one another. *See Birnbaum v. Birnbaum*, 73 NY2d 461 (1989); *see Salm v. Feldstein*, 20 AD3d 469 (2nd Dep't 2005).

[30] Defendants' reliance upon the Second Circuit's *Harris* opinion is misplaced, as it was reviewing a grant of summary judgment over different legal theories predicated on the same factual claims, rendering dismissal appropriate as to avoid duplicative liability, which is distinguishable from the instant matter, wherein the breached implied covenants are predicated upon factual matters not expressly precluded by the relevant agreements. *Id*.

Likewise, independent contractors owe fiduciary obligations to counterparties where one is under a duty to act for or to give advice for the benefit of another upon matters germane to the scope of their relation. *See Galvstar Holdings, LLC v. Harvard Steel Sales, LLC*, 722 F.App'x 12 (2d Cir. 2018) (citing *Flickinger v. Harold C. Brown & Co., Inc.*, 947 F.2d 595 (2d Cir. 1991)). A fiduciary relationship exists in all cases in which influence has been acquired and abused; in which confidence has been reposed and betrayed. *Id*.

Here, Kastner was the sole party retained to render the services of "web development and management", and "app development, management, and maintenance of Espire's technical properties", rendering him in a special relationship of reliance, trust, and confidence *per se* with Espire as a result of his unique position. *See* Ex. 3, at § 2.1(b) ("Contractor shall be the only person or entity performing the Services set forth and shall not subcontract the performance of any of the Services"); *see* Ex. 1, at ¶¶ 25-27, 148-50.

Plaintiffs' fraud-based Claims VI-VIII are adequately plead, as all requisite elements of each claim are alleged with specificity in conformity with Rule 9(b), as Rule 8 explicitly permits pleading in the alternative, particularly where, as here, Defendants continue denying the validity of the JV Agreement, and as again, the JV Agreement was mutually assented to for all the reasons set forth in Point V(A). *See* Fed. R. Civ. P. 8(a)(3); *see* Fed. R. Civ. P. 8(d)(2)-(3), 8(e), 9(b); *see Henry v. Daytop Vill., Inc.*, 42 F.3d 89 (2d Cir. 1994); *see also Adler v. Pataki*, 185 F.3d 35 (2d Cir. 1999); *see* Ex. 1, at ¶¶ 28-71, 101-11; *see* Ex. 5; *see* Point V(A), *supra*.

Plaintiffs' veil-piercing Claims XXXIX-XL are adequately plead; veil-piercing is an independent theory of relief, as Forkosh has both dominated the corporate entity and utilized it to, *inter alia*, perpetuate frauds and other such tortious conduct in violation of federal statutes, and is nevertheless individually liable under the JV Agreement. *See e.g. Wm. Passalacqua Builders, Inc.*

*v. Resnick Dev. S., Inc.*, 933 F.2d 131 (2d Cir. 1991) (holding veil-piercing a separate claim distinct from other claims); *see* Ex. 5; *see* Ex. 1, at ¶¶ 258-65.[31, 32]

The remainder of Plaintiffs' claims are likewise adequately plead, as Defendants fail to proffer a single ground supporting dismissal. *See* Ex. 1, *passim*.[33,]

---

[31] A party seeking to pierce the corporate veil must allege that equity dictates the veil-piercing ought to occur where a company was dominated by members – evidenced by, *inter alia*, failure to adhere to corporate formalities, commingling assets, and common office space – in connection with the transaction attacked, and that such domination resulted in wrongful consequences. *See Morris v. N.Y.S. Dep't of Tax & Fin.*, 82 NY2d 135 (1993) ("Courts will disregard the corporate form… whenever necessary to prevent fraud or achieve equity").

[32] Forkosh's abuse of the corporate form with respect to the assets of the Blu Market defendants have directly resulted in a fraud perpetrated upon Navarro, holder of a fifty-percent (50%) equity interest therein, as Forkosh conveyed or transferred the assets of the Blu Market to defendant TAPP INFLUENCERS CORP. without holding a vote in disrespect for corporate formalities, without authorization, by intermingling assets amongst Defendants, and by overlapping office space by and amongst his entities, as to date, Defendants have failed to explain the distinction between the all Defendants, which are all operating out of the same corporate address but purportedly engaging in the same business endeavors, all while utilizing a web of shell entities to evade answering for legitimate business disputes, and abdicating fiduciary obligations by directly competing with one another. *Id*.; *see* Ex 1, at ¶¶ 9-13.

[33] The injurious falsehood Claim IV is adequately plead, as Plaintiffs have articulated the offensive statements with specificity. *See* Ex. 1, at ¶¶ 60, 92-94. Likewise, the derivative Claims XXXII-XXXVI are adequately plead, as again, the JV Agreement was mutually assented to for all the reasons set forth in Point V(A). *See* Ex. 1, at ¶¶ 226-52; *see* Ex. 5; *see* Point V(A), *supra*. Further, the reformation Claim XXXVIII is adequately plead, as the pleading directly states "what [reformation] she seeks and why", as Plaintiffs adequately plead fraud-based claims set forth herein, and again, as the JV Agreement was mutually assented. *Id*; *see* Ex. 1, at ¶¶ 253-57. Further, the fraudulent conveyance Claim XXXI is adequately plead as, again, the JV Agreement was mutually assented, and rather than conclusory allegations, the exact conduct forming the basis of the claim was particularized. *Id*.; *see* Ex. 1, at ¶¶ 69-71, 217-225.

## CONCLUSION

**WHEREFORE,** Defendants respectfully request that this Court grant all relief requested

hereunder, and for such other and further relief as this Court deems just and proper.

Dated:          New York, New York
                June 1st, 2022

                                       Respectfully submitted,
                                       **SUTTON SACHS MEYER PLLC**
                                       *Attorneys for Plaintiffs*

                                       /s/ Zachary G. Meyer, Esq.
                                       Zachary G. Meyer, Esq.
                                       14 Penn Plaza, Suite 1315
                                       New York, NY 10122
                                       t. (212) 480-4357
                                       e. Zachary@ssm.law

## CERTIFICATION

The undersigned hereby certifies that the foregoing brief totals twenty-four (24) pages and eight thousand eight hundred four (8,804) words, including footnotes and exclusive of the pages containing the cover page, signature block, certification of compliance, table of contents, and table of authorities, as calculated by the word processing system.

                                       /s/ Zachary G. Meyer, Esq.