UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

ESPIRE ADS LLC, et al.,

              Plaintiffs,

    - against -

TAPP INFLUENCERS CORP., et al.,

            Defendants.
_____

TAPP INFLUENCERS LLC, et al.,

            Plaintiffs,

    - against -

ESPIRE ADS LLC, et al.,

            Defendants.
_____

21-cv-10623(JGK)

21-cv-11068(JGK)

MEMORANDUM OPINION
AND ORDER

JOHN G. KOELTL, District Judge:

    Espire Ads LLC ("Espire"), The Blu Market, Inc. and The Blu
Market ex rel. Lisa Navarro, and Lisa Navarro (the "Espire
plaintiffs") brought an initial action (the "Espire Action")
against the defendants TAPP Market Influencers LLC, TAPP
Influencers Corp. (together, "TAPP"), The Blu Market, Inc., The
Blu Market LLC (together, "Blu Market"), Steven Forkosh, Brennan
Kastner, and Justin Emert (collectively, the "Espire
defendants") alleging a plethora of federal and state law claims
arising out of the parties' business relationships and a
contemplated joint venture agreement between Navarro and Forkosh
(the "Joint Venture Agreement" or "Agreement").

1

In response, TAPP Market Influencers LLC, The Blu Market Inc., and Forkosh (the "TAPP plaintiffs") filed a separate action (the "TAPP Action") against Espire and Navarro, and joined several new parties: KVRMA, LLC, Nathaniel Co, Charles Punay, CPA Viral LLC d/b/a Tapmob, and Jasper Pangilinan (collectively, the "TAPP defendants"). In the TAPP Action, the plaintiffs asserted several claims arising out of the same business relationships that were the subject of the Espire Action. The parties have been unable to agree even to consolidate the two actions.

The defendants in both actions have now moved to dismiss the claims against them on a multitude of grounds, some of which are barely colorable. The Espire defendants have moved to dismiss the Espire Action pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), 12(b)(6), and 12(b)(7). The TAPP defendants have moved to dismiss the TAPP Action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The TAPP defendants have also moved to strike certain pleadings pursuant to Rule 12(f) or, in the alternative, to consolidate the Espire Action and the TAPP Action pursuant to Rule 42.

For the following reasons, the parties' motions are **granted** in part and **denied** in part.

**I.**

**A.**

The following facts are taken from the First Amended
Complaint in the Espire Action, No. 21-cv-10623, ECF No. 31
("Espire Complaint"), unless otherwise noted. These allegations
form the basis for the 40 separate claims brought by the Espire
plaintiffs against the Espire defendants.[1]

Espire is an "influencer social network and management
company" that "monetizes influencers to generate revenue by
connecting influencers with consumer brands." Espire Compl.
¶ 16. Navarro was the Chief Executive Officer of Espire, and
covenanted for "non-competition, non-solicitation,
confidentiality, and indemnification." Id. ¶ 21. Emert was the
Chief Operating Officer of Espire and was bound to the same
restrictive covenants. Id. Kastner was an independent contractor
for Espire and was also bound to the same restrictive covenants.
Id. ¶ 25. The Espire plaintiffs allege that Emert and Kastner
had "unfettered access to" Espire's trade secrets "and other
such confidential and proprietary information." Id. ¶¶ 22, 26.

Blu Market is an "influencer social network and management
compan[y]," and the Espire plaintiffs allege that The Blu
Market, Inc. and The Blu Market LLC are "alter egos of one

---

[1] Unless otherwise indicated, this Memorandum Opinion and Order
omits all alterations, citations, footnotes, and quotation marks
in quoted text.

another." Id. ¶ 28. Forkosh is "an officer, director, member, and/or majority equity holder" of Blu Market. Id. ¶ 29. Blu Market has allegedly been inactive since August 2020, when the parties allegedly entered into the Joint Venture Agreement.

The Espire plaintiffs allege that on August 29, 2020, the Joint Venture Agreement was "consummated," giving Navarro a 50% interest in Blu Market, and giving Forkosh a 50% interest in Espire. Id. ¶ 33. The Espire plaintiffs allege that, under the Joint Venture Agreement, Forkosh had "unfettered access to" Espire's trade secrets "and other such confidential and proprietary information." Id. ¶ 35. The Joint Venture Agreement bound Navarro and Forkosh to restrictive covenants against "direct or indirect business solicitation, direct or indirect ownership of competing businesses, informational disclosure, employee and vendor employment solicitation, and transfer restrictions" for "no less than one (1) year." Id. ¶ 36.

On September 25, 2020, Forkosh incorporated TAPP. TAPP is an "influencer social network and management company," much like Espire and Blu Market, and is allegedly a "directly competing business" with Espire. Id. ¶ 40. Forkosh was the promoter of TAPP, and Forkosh, Emert, and Kastner were all allegedly either shareholders, directors, officers, employees, or agents of TAPP. Id. ¶¶ 41, 43-44. Forkosh allegedly solicited Emert and Kastner to join TAPP while both were employed by Espire. Id. ¶¶ 46, 48.

4

The Espire plaintiffs allege that Forkosh breached the Agreement by forming TAPP and poaching Emert and Kastner. Id. ¶¶ 42, 45, 48.

Espire alleges that Kastner, "at the direction of" TAPP and Forkosh, "unlawfully converted, misappropriated, and utilized" Espire's mobile and web application source code to develop TAPP's mobile and web applications. Id. ¶¶ 51, 52, 54. Espire alleges that the system administrator for TAPP is identified as "kast," who it claims is Kastner, and notes that the same "kast" tag appears in Espire's source code. Id. ¶¶ 52-53. Espire alleges that the source codes for TAPP and Espire's mobile and web applications were "near verbatim," and that this is "nearly statistically impossible to occur naturally, even if written by the same developers." Id. ¶ 55. Espire alleges that with the source code, TAPP "created derivative software" that targeted Espire's clients "for repeated false platform content violations . . . to incentivize [Espire's] influencers to switch to [TAPP]." Id. ¶ 62. Espire also alleges that TAPP sold a "protection racket" to influencers, granting them a "shield" from TAPP's alleged "malicious course of conduct . . . and direct targeting." Id ¶ 63.

Espire also alleges that TAPP used Espire's proprietary "customer lists and influencer lists[] in an effort to actively solicit [Espire's] specific customers and influencers" and made

"demonstrably false assertions" to those clients to convince them to "sever their relationship with [Espire]." Id. ¶ 60.

Shortly after incorporating TAPP, Forkosh allegedly "conveyed, transferred, and/or assigned" Blu Market's business assets to TAPP "in a manner concealed or not disclosed to" Navarro. Id. ¶ 69. Blu Market did not receive "equivalent value for [Blu Market's] business assets, rendering Blu [Market] insolvent." Id. ¶ 70. Although Navarro allegedly held a 50% interest in Blu Market by virtue of the Agreement, "no vote was ever held" authorizing the conveyance and Navarro did not authorize the conveyance separately. Id. ¶ 71.

During the summer of 2021, "business-sensitive data and code stored on [Espire's] protected computers and servers were remotely accessed, where certain offers and promotional marketing campaigns . . . were inexplicably modified" without the knowledge or consent of Espire or Navarro. Id. ¶ 64. An internal investigation found that "a user from tapp.co with an IP address of 24.154.57.70" geolocated in New York City "logged into the administrator area of [Espire's] server multiple times," and it was discovered that "web traffic was diverted and redirected away from [Espire], and URLs were changed by adding random letters and/or numbers [preventing] users from accessing the correct and intended pages." Id. ¶ 65. The Espire plaintiffs

allege that the hackers were Forkosh, Kastner, and Emert. Id.
¶¶ 66-68.

The Espire plaintiffs bring 40 separate counts against the
defendants alleging various federal and state law claims. The
federal claims arise under the Defend Trade Secrets Act
("DTSA"), 18 U.S.C. § 1836 et seq. (Count I); the Computer Fraud
and Abuse Act ("CFAA"), 18 U.S.C. § 1030 et seq. (Counts XX,
XXI, XXII, XXIII, XXIV); the Copyright Act, 17 U.S.C. § 101 et
seq. (Counts XXV, XXVI); the Sherman Antitrust Act, 15 U.S.C. §
1 et seq. (Count XXVII); and the Racketeer Influenced and
Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq.
(Count XXIX). The Espire plaintiffs also bring 29 state law
claims against the defendants arising from these events.[2]

**B.**

The following facts are taken from the First Amended
Complaint in the TAPP Action, No. 21-cv-11068, ECF No. 30 ("TAPP
Complaint"), unless otherwise noted. These allegations form the
basis for the eight claims brought by the TAPP plaintiffs
against the TAPP defendants.

---

[2] The Espire plaintiffs purport to bring an independent claim for
a "permanent injunction" (Count XXX). See Espire Compl. ¶¶ 208-
216. However, it is clear on the face of the Espire Complaint
that this claim arises under the federal and state law claims
asserted but is not itself a separate and independent cause of
action. Id. ¶ 210. The parties, in their briefs, also do not
argue for an independent claim for a permanent injunction.
Accordingly, the injunctive relief claim is subsumed in the
analysis of the Espire plaintiffs' federal and state law claims.

In 2013, Forkosh formed Blu Market, a "New York corporation which was engaged in social media influencer advertising and apps." TAPP Compl. ¶ 18. Social media companies like Blu Market act as "intermediaries" and are "engaged by an advertiser for a particular product . . . and then engage 'affiliates' or 'influencers' to promote the products by bringing them to the attention of their followers." Id. ¶ 20. Influencers are "independent contractors" and are engaged on a "non-exclusive basis." Id. ¶ 21.

Between 2013 and 2014, Navarro began employment at Blu Market. Id. ¶ 41. She was eventually appointed Chief Operations Officer, giving her "unsupervised access to all of Blu Market's operations." Id. ¶ 42. Navarro allegedly had access to "Blu Market's confidential business development plans," "its confidential marketing plans," its "business plans, business development, the formatting, third party layering and networking tools for Blu Market technology, internal logistical and operational procedures, business relations, . . . financial information, contract templates and software wherewithal." Id. ¶¶ 44-46. The TAPP plaintiffs allege that this information qualified as trade secrets, and that "a confidential relationship existed between Navarro and Blu Market," without which they would not have divulged the information. Id. ¶¶ 49-53.

8

In May 2015, Navarro founded Espire while still employed by Blu Market. Id. ¶ 56. Espire, like Blu Market, is an "influencer social network and management company . . . which monetizes influencers to generate revenue by connecting influencers with consumer brands seeking influencer social media marketing." Espire Compl. ¶ 16. In forming Espire, Navarro brought with her other Blu Market employees, namely Justin Emert, Eric Radke, Nick Dimartino, and Alex Vazquez, and allegedly "used these employees to steal trade secrets." TAPP Compl. ¶ 58. Navarro allegedly took from Blu Market "price structures to clients," "payment structures to affiliates," "a list of about 12,000 Blu Market influencer contacts," "Blu Market's pitch deck," and "formatting, third party layering and networking tools," and also allegedly "copied Blu Market contracts verbatim." Id. ¶ 59, 61-64. Navarro allegedly operated Espire "in secret." Id. ¶ 67.

In July 2017, Navarro allegedly "reached out to Blu Market clients to advise them of the coming 'transition.'" Id. ¶ 69. Navarro allegedly then used Blu Market's funds to promote Espire's interests, including by paying herself $5,000, and "repeatedly evidenced her contempt of Forkosh, bragging that Blu Market was financing the creation of its own competitor, Espire, right under Forkosh's nose." Id. ¶¶ 73-78. Navarro left Blu Market "one Monday in 2017," taking several Blu Market employees with her, and upon her leaving allegedly "stole physical

records" and "American Express gift cards," and left a note for
Forkosh that read "looking for something?" Id. ¶¶ 80-81. Navarro
allegedly "accumulat[ed] embarrassing videos and photographs of
Forkosh" and, in the event that Forkosh "took any action
against" her, threatened to "engage in physical violence against
[Forkosh's] family" and "defame him over social media" with the
photos and videos. Id. ¶¶ 79, 82.

In December 2018, Charles Punay began working with Espire
while still employed by Blu Market. Punay and Nathaniel Co,
another Blu Market employee, then formed Tapmob, a competitor to
Blu Market. Id. ¶ 26. Shortly afterwards, Navarro formed Kvrma
in 2019. Kvrma is a social media influencing service identical
to Espire and Blu Market. Id. ¶ 30. Tapmob and Kvrma "have
virtually identical website formats and content," and Tapmob
allegedly "designed Kvrma's website formats and content." Id.
¶¶ 31-32. TAPP alleges that "Kvrma and Espire are owned in whole
or in part by Navarro," and that Navarro "transferred assets
from Espire to Kvrma to avoid creditor liabilities." Id. ¶¶ 36-
37. Navarro allegedly had "complete control and domination of
Espire and Kvrma" and allegedly "treated each as her personal
piggy bank, using corporate funds for vacations, apartments,
automobiles and other personal expenses." Id. ¶¶ 146-147.

Despite their apparent differences, in July 2020, Navarro
and Forkosh engaged in discussion regarding a possible Joint

Venture Agreement. TAPP alleges that a "proposed agreement was drafted but they could never come to terms." Id. ¶ 129. At this point, Navarro allegedly presented Forkosh with an "abbreviated interim agreement." Id. ¶ 130. The agreement provided that "the parties shall enter into a 50%/50% partnership for the company," and that "[w]hen completed, Forkosh would retain 50% of all three entities as would Navarro." Id. ¶ 135. The agreement also stated that Navarro solely owned Espire, and "provided for the creation of an operating agreement for the anticipated venture." Id. ¶ 136. However, according to the TAPP plaintiffs, the agreement was "never effectuated" and "[n]o joint venture was created," "[n]o transfer of interests occurred," "[n]o operating agreement was drafted," "no payments were made," "[n]o entity was created and no tax return was filed." Id. ¶¶ 137-142.

Around June 2021, Espire, under the direction of Co, allegedly "directed fake traffic (VDOS) to the influencer links" causing those sites to crash, after which Espire allegedly "tr[ied] to convince [those] influencers to switch from [Blu Market and TAPP] to Espire." Id. ¶ 95. Navarro then allegedly "embarked on a campaign" to defame the TAPP plaintiffs, leading to the filing of the Espire Action by the Espire plaintiffs. Id. ¶¶ 96-99.

After filing the Espire Action, Navarro allegedly broadcast via Instagram Live that "she diverted all of Blu Market[']s

funds and then 'bounced'," and that "Forkosh, Blu Market, and [TAPP] were scam artists." Id. ¶¶ 107-108. In the same broadcast, Navarro allegedly stated that "intellectual property which [Navarro] claims in her suit had been copied or stolen by TAPP from Espire in fact originated with Blu Market," and asserted that "Blu Market's intellectual property had been purchased (this time by Kvrma not Espire) from Blu Market for $50,000 and . . . was then stolen back by [TAPP and Blu Market]." Id. ¶¶ 109-110. Navarro also allegedly "forwarded texts and made pronouncements on social media" that "TAPP will be facing 25+ [f]ederal charges," "by virtue of the complaint, TAPP cannot be trusted," and "when TAPP is put out of business by [the Espire Action] 'you know where to go.'" Id. ¶ 104.

The TAPP plaintiffs allege eight claims: (1) that Navarro acted as a faithless employee, (2) theft of trade secrets in violation of the DTSA, 18 U.S.C. § 1836 et seq., (3) tortious interference with contractual relations, (4) unjust enrichment, (5) breach of contract, (6) prima facie tort, (7) defamation, and (8) fraudulent conveyance.[3]

---

[3] Like the Espire plaintiffs, the TAPP plaintiffs include an independent claim for a "permanent injunction" in the TAPP Complaint. Because the TAPP plaintiffs seek an injunction with respect to alleged misconduct underlying their federal and state law causes of action, the Court's consideration of the request for a permanent injunction is subsumed in the analysis of the TAPP plaintiffs' other claims.

## II.

### A.

As an initial matter, the TAPP defendants have asked to consolidate the Espire Action and the TAPP Action under Federal Rule of Civil Procedure 42. Rule 42 allows for consolidation "[i]f actions before the court involve a common question of law or fact." Fed. R. Civ. P. 42(a). The Espire Action and the TAPP Action both arise out of the same series of events and business relationships, and considerations of judicial economy favor consolidation in this case. See Johnson v. Celotex Corp., 899 F.2d 1281, 1285 (2d Cir. 1990) ("In the exercise of discretion, courts have taken the view that considerations of judicial economy favor consolidation."). Accordingly, the Espire Action and the TAPP Action will be consolidated pursuant to Rule 42 for purposes of these motions and for all pre-trial proceedings. It is not necessary to determine at this time whether there should be a consolidated trial.

### B.

The Espire defendants argue that the Espire Action, brought by the Espire plaintiffs, should be dismissed pursuant to Rule 12(b)(7) for failure to join a necessary party, Kvrma. However, no allegations in the Espire Complaint support the contention that Kvrma is a necessary party to the Espire Action. In any event, the Court has consolidated the Espire and TAPP Actions

for all pre-trial proceedings, and Kvrma is named as a party in the TAPP Action. Accordingly, the Espire defendants' motion to dismiss the Espire Action under Rule 12(b)(7) is **denied.**

### C.

The Espire defendants also argue that Espire lacks capacity to sue because it has not registered in New York as a foreign business entity. However, this issue is now moot because Espire has registered to do business in New York. See Decl. of Zachary G. Meyer, Ex. 2, No. 21-cv-10623, ECF No. 50-2.

### D.

The Espire defendants also claim that there is no personal jurisdiction over Emert and Kastner under N.Y. C.P.L.R. 302 because those defendants lack sufficient contacts with New York. However, there is an outstanding RICO claim in the Espire Action (Count XXIX). RICO permits nationwide service of process and personal jurisdiction over "other parties" not residing in the district (here, Emert and Kastner) if there is personal jurisdiction based on minimum contacts over an initial defendant (here, TAPP Influencers Corp. and Forkosh). See PT United Can Co. Ltd v. Crown Cork & Seal Co., Inc., 138 F.3d 65, 71 (2d Cir. 1998). "This jurisdiction is not automatic but requires a showing that the 'ends of justice' so require." Id. In this case, the ends of justice require that the RICO claim be heard in New York. The Espire defendants do not argue that any other

district would be able to hear the RICO claim, and if Emert's activities are confined to Florida and Kastner's activities are confined to Texas, as the Espire defendants suggest, then no other district court could exercise personal jurisdiction over all of the defendants on the RICO claim. Accordingly, the motion to dismiss the Espire Action against Emert and Kastner under Rule 12(b)(2) is **denied.**

### E.

### 1.

Finally, the Espire defendants move to dismiss the claims against Kastner for improper venue pursuant to Rule 12(b)(3), pointing to a forum selection clause in Kastner's independent contractor agreement. See Forkosh Aff., Ex. 27, No. 21-cv-10623, ECF No. 44-27, § 6.2 ("Kastner Agreement") ("Any claim, dispute or disagreement arising out of, connected with or in respect of this Agreement may be brought only in the courts of the State of California or the federal courts within the State of California, which courts shall have exclusive jurisdiction thereof.").

A Rule 12(b)(3) motion to dismiss for improper venue is not the correct procedural mechanism to enforce a forum selection clause. Instead, a forum selection clause that identifies both a federal and state forum is enforceable by a motion to transfer venue pursuant to 28 U.S.C. § 1404(a). See Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex., 571 U.S. 49,

59 (2013) ("Although a forum-selection clause does not render venue in a court 'wrong' or 'improper' within the meaning of . . . Rule 12(b)(3), the clause may be enforced through a motion to transfer under [28 U.S.C.] § 1404(a)."); Todorovic v. Liquid Labs, Inc., No. 18-cv-1643, 2018 WL 2209506, at *1-2 (S.D.N.Y. May 14, 2018) (transferring a case under § 1404(a) pursuant to a forum selection clause providing that "each Party submits to the exclusive jurisdiction of the state and federal courts located in San Francisco, California").

Atlantic Marine clarifies that when a contract contains a forum selection clause, district courts should not consider private interest factors on a motion to transfer venue pursuant to § 1404(a) because the forum selection clause "represents the parties' agreement as to the most proper forum" and "should be given controlling weight in all but the most exceptional circumstances. 571 U.S. at 62-63. Thus, "a district court may consider arguments about public-interest factors only." Id. at 64. However, "[b]ecause those factors will rarely defeat a transfer motion . . . forum-selection clauses should control except in unusual cases." Id.

No public-interest factors counsel against transferring the claims against Kastner to California. Such factors may include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at

16

home; and the interest in having the trial of a diversity case in a forum that is at home with the law." Id. at 62 n.6. The Espire plaintiffs have not claimed that any of these factors are present and there is no showing that they argue against transferring the contract-related claims against Kastner to California.

The Espire defendants' motion to dismiss pursuant to Rule 12(b)(3) will therefore be construed as a motion to transfer pursuant to § 1404(a). See Kraljevich v. Courser Athletics, Inc., No. 21-cv-9168, 2022 WL 3597760, at *6 (S.D.N.Y. Aug. 23, 2022) (construing a Rule 12(b)(3) motion to dismiss based on a forum selection clause as a § 1404(a) motion to transfer); Licensed Prac. Nurses, Technicians, & Health Care Workers of N.Y., Inc. v. Ulysses Cruises, Inc., 131 F. Supp. 2d 393, 407 (S.D.N.Y. 2000) ("[T]ransfer pursuant to § 1404(a) may be an appropriate remedy for effectuating a forum-selection clause even when the defendant does not seek that remedy, but argues for dismissal instead.").[4]

---

[4] Kastner's independent contractor agreement provides only that claims "may be brought only in the courts of the State of California or the federal courts within the State of California," but does not specify a particular district within California. Kastner Agreement § 6.2. Section 1404(a) provides that transfer may be made to "any other district . . . where [an action] might have been brought." 28 U.S.C. § 1404(a). Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). A substantial part of the events giving

**2.**

The Espire defendants argue that the forum selection clause applicable to Kastner is unenforceable. A four-part test is used to determine whether a forum selection clause is enforceable: (1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory or permissive; (3) whether the claims and parties involved are subject to the forum selection clause; and (4) whether "enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." Phillips v. Audio Active Ltd., 494 F.3d 378, 383-84 (2d Cir. 2007). "If the forum [selection] clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable." Id. at 383.[5]

---

rise to the claims occurred in relation to Kastner's employment with Espire, and Espire is located in Riverside, California. Transfer would therefore be proper to the United States District Court for the Central District of California, which encompasses Riverside.

[5] Kastner's agreement contains a choice-of-law provision providing that California law governs the interpretation of the agreement. However, "[d]espite the presumptive validity of choice of law clauses," the Court of Appeals for the Second Circuit applies federal law "to determine whether an otherwise mandatory and applicable forum selection clause is enforceable." Philips, 494 F.3d at 384. "This is because enforcement of forum clauses is essentially a procedural issue." Id.

The forum selection clause here was reasonably communicated to Kastner because it was present in his signed independent contractor agreement. See Sun Forest Corp v. Shvili, 152 F. Supp. 2d 367, 383 (S.D.N.Y. 2001). A forum selection clause is "mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language." Phillips, 494 F.3d at 386. Kastner's forum selection clause is mandatory because it provides that California courts "shall have exclusive" jurisdiction over claims arising out of, or connected with, the agreement, and because "only" courts in California may hear those claims. Kastner Agreement § 6.2.

The Espire defendants argue that the clause is unreasonable because "it would create duplicative actions, compromise judicial economy, increase the risk of irreconcilable inconsistent adjudications" and because Kastner "has no connection to California." Espire Defs.' Opp., No. 21-cv-10623, ECF No. 59, at 5. However, there is no issue of a possible duplicative action in the California courts because the only claims to be transferred to California are the claims by the Espire plaintiffs against Kastner arising out of Kastner's actions in connection with his independent contractor agreement.

The Espire plaintiffs have asserted two contract claims against Kastner arising out of Kastner's independent contractor agreement, for breach of contract and breach of the implied

19

covenant of good faith and fair dealing. These two claims clearly arise out of Kastner's independent contractor agreement and are within the scope of the mandatory forum selection clause.

Furthermore, "[w]here broadly worded, a forum selection clause is not limited solely to claims for breach of the contract that contains it." KTV Media Int'l, Inc. v. Galaxy Grp., LA LLC, 812 F. Supp. 2d 377, 385 (S.D.N.Y. 2011) (finding that a mandatory forum selection clause including the terms "arising out of" and "in connection with" covered claims which did not "arise out of" a contract but were "in connection with" that contract). Thus, "a contractually-based forum selection clause will also encompass tort claims if the tort claims ultimately depend on the existence of a contractual relationship between the parties." Cfirstclass Corp. v. Silverjet PLC, 560 F. Supp. 2d 324, 329 (S.D.N.Y. 2008); see also id. at 330 (noting that the contract only contained the phrase "arising out of," and discussing the possibility that a forum selection clause including the phrase "arise in connection with" could have a greater scope).

The claim against Kastner for tortious interference arises out of, and is connected with, his independent contractor agreement, because the claim depends on the knowledge that Kastner gained by being an independent contractor. See, e.g.,

Espire Compl. ¶¶ 60, 152-153 (alleging that Kastner "actively
solicit[ed]" Espire's contracted influencers to sever those
influencers' relationships with Espire in favor of TAPP "by
virtue of the . . . unfettered access granted to [Kastner]
under" his independent contractor agreement).

The breach of fiduciary duty claim against Kastner also
arises out of his independent contractor agreement. Kastner owed
fiduciary duties to Espire by virtue of the employment
relationship created by the agreement. Although the agreement
nominally identifies Kastner as an independent contractor,
instead of an employee, "[t]he parties' label is not dispositive
and will be ignored if their actual conduct establishes a
different relationship." Estrada v. FedEx Ground Package Sys.,
64 Cal. Rptr. 3d 327, 335 (Ct. App. 2007).[6] "Under California
law, whether a person is an employee depends on the degree of
control the purported employer has a right to exercise over that
person." Randolph v. Budget Rent-A-Car, 97 F.3d 319, 325 (9th
Cir. 1996). If the "purported employer has the right to control

_____

[6] Although federal law governs whether a forum selection clause
is unreasonable or unjust – step four of the Phillips framework,
"[i]n answering the interpretive questions posed by parts two
and three of the [Phillips] framework . . . we normally apply
the body of law selected in an otherwise valid choice-of-law
clause." Martinez v. Bloomberg LP, 740 F.3d 211, 217-18 (2d Cir.
2014). Accordingly, in this case, California law is applied to
determine whether the forum selection clause's scope in this
case encompasses the claim against Kastner for breach of
fiduciary duty.

the mode and manner of doing work, an employer-employee relationship exists." Id. Unless "the evidence is undisputed," "[t]he determination of employee or independent contractor status is one of fact" unsuitable for resolution on a motion to dismiss. S. G. Borello & Sons, Inc. v. Dep't of Indus. Rels., 769 P.2d 399, 403 (Cal. 1989). In any event, whether Kastner violated any fiduciary duties under his independent contractor agreement should be decided by the California courts, under California law, pursuant to the independent contractor agreement's forum selection clause.

The federal DTSA claim for misappropriation of trade secrets is also connected with Kastner's independent contractor agreement. The Espire plaintiffs allegedly used "myriad confidentiality agreements and non-disclosure agreements . . . as an express condition precedent to revealing [their] trade secrets." Espire Compl. ¶ 20. Kastner's independent contractor agreement bound him to non-competition, non-solicitation, non-disclosure, confidentiality, and indemnification agreements as a condition to receiving the alleged trade secrets. Id. ¶ 25. The claim for misappropriation of trade secrets is therefore connected with the independent contractor agreement and is within the scope of the agreement's forum selection clause.

Accordingly, the two contract claims, the tortious interference claim, the breach of fiduciary duty claim, and the

22

federal DTSA claim by the Espire plaintiffs against Kastner are transferred, pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the Central District of California.

However, the remaining claims in these actions do not arise under and are not connected with Kastner's independent contractor agreement. Accordingly, those claims will not be transferred.[7]

**F.**

The TAPP defendants have moved to dismiss the TAPP Action under the first-filed rule. The rule provides that "[w]here there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second." Adam v. Jacobs, 950 F.2d 89, 92 (2d Cir. 1991). The decision whether to dismiss the second action "rests within a district judge's discretion." Id. The Court, in its discretion, declines to dismiss the TAPP Action. Because the two actions have been consolidated, considerations of judicial economy and duplicative litigation are inapposite. Moreover, the decision as to whether the cases should be consolidated for purposes of trial can be

---

[7] Because a Rule 12(b)(3) motion to dismiss for improper venue is not the correct procedural mechanism to enforce a forum selection clause, the Rule 12(b)(3) motion to dismiss is **denied** in light of the transfer of the claims against Kastner to the United States District Court for the Central District of California pursuant to § 1404(a).

left to a later date after the close of discovery and rulings on
any dispositive motions.

### G.

The TAPP defendants have also moved to dismiss the TAPP
Action for lack of subject-matter jurisdiction pursuant to Rule
12(b)(1). The defendants argue that because the federal DTSA
claim should be dismissed under the first-filed rule, the Court
is left without subject-matter jurisdiction as to the remaining
state law claims. However, the Court has declined to dismiss the
DTSA claim under the first-filed rule. Accordingly, because the
federal claim remains, the state law claims are subject to this
Court's supplemental jurisdiction. See 28 U.S.C. § 1367(a).

### III.

The defendants in both actions have moved to dismiss the
remainder of the claims under Rule 12(b)(6). In deciding a
motion to dismiss pursuant to Rule 12(b)(6), the allegations in
the complaint are accepted as true, and all reasonable
inferences must be drawn in the plaintiffs' favor. McCarthy v.
Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The
Court's function on a motion to dismiss is "not to weigh the
evidence that might be presented at a trial but merely to
determine whether the complaint itself is legally sufficient."
Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court
should not dismiss the complaint if the plaintiffs have stated

24

"enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff[s] plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

While the Court should construe the factual allegations in the light most favorable to the plaintiffs, it need not accept as true legal conclusions contained in the complaint. Id. When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

## IV.

The plaintiffs in both actions allege that their respective defendants have stolen and misappropriated trade secrets in violation of the DTSA. The DTSA provides that "[a]n owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). For information to

constitute a trade secret, (A) the owner must have "taken reasonable measures to keep such information secret", and (B) the information must "derive[] independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." Id. § 1839(3)(A), (B). "Misappropriation" includes "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." Id. § 1839(5)(A).

**A.**

The Espire plaintiffs claim that TAPP, Forkosh, and Emert misappropriated Espire's trade secrets. "To succeed on a claim of misappropriation of trade secrets under the DTSA . . . the owner of the trade secret must take reasonable measures to keep the proprietary information secret." Mason v. Amtrust Fin. Servs., Inc., 848 F. App'x 447, 450 (2d Cir. 2021). The alleged trade secrets are the "source code, marketing plans, client compilations, influencer compilations, programs, software applications, [and] software platforms" belonging to Espire, as well as Espire's "specified methods, techniques, processes, and procedures" for "serving client needs," all from which Espire "derives independent economic value." Espire Compl. ¶ 19.

26

"[D]istrict courts in this circuit routinely require that plaintiffs plead their trade secrets with sufficient specificity to inform the defendants of what they are alleged to have misappropriated." Zabit v. Brandometry, LLC, 540 F. Supp. 3d 412, 422 (S.D.N.Y. 2021). Although the Espire plaintiffs' articulation of their alleged trade secrets are "rather broad and verge on overly-vague," id., they are not so "vague and indefinite" that they insufficiently "inform the defendants of what they are alleged to have misappropriated," id. at 422-23. The Espire plaintiffs' allegations, although broad, still provide enough detail that the defendants can understand what they are alleged to have misappropriated — in particular, Espire's proprietary source code. See id. (defining trade secrets as "algorithms, proprietary formulas, patterns, methodology, technical information, processes, programs, codes and compilation of information" was sufficiently specific to survive a motion to dismiss); Tesla Wall Systems, LLC v. Related Co., L.P., No. 17-cv-5966, 2017 WL 6507110, at *9 (S.D.N.Y. Dec. 18, 2017) ("[The plaintiff's] complaint . . . pleads numerous specific categories of [trade secret] information, such as technical data, internal pricing information, work product, research, [and] engineering designs."); Smart Team Global, LLC v. HumbleTech LLC, No, 19-cv-4873, 2020 WL 2836465, at *4 (S.D.N.Y. June 1, 2020) (finding that a claim for

misappropriation for trade secrets was plausibly alleged where the defendants "misappropriated [the plaintiff's] proprietary source code for its software" and where that source code was protected by the plaintiff). Accordingly, the Espire plaintiffs have sufficiently pleaded the existence of trade secrets.

The Espire plaintiffs have also alleged that they took reasonable measures to guard the secrecy of this information. They have alleged that they "stor[ed] all pertinent code in a secure cloud-based server, utilize[ed] . . . computer and software passwords, and work[ed] in an office that has visitor control systems, locked door access, and overnight security personnel." Espire Compl. ¶ 20. Further, the Espire plaintiffs allegedly "utilize[ed] myriad confidentiality agreements and non-disclosure agreements . . . as an express condition precedent to revealing [their] trade secrets." Id. Forkosh and Emert were bound to non-competition, non-solicitation, non-disclosure, confidentiality, and indemnification agreements. Id. ¶¶ 21, 24, 36, 38. These alleged facts reasonably support the interference that Espire had "taken measures to protect the secrecy" of its information. See Integrated Cash Mgmt. Servs., Inc. v. Digit. Transactions, Inc., 920 F.2d 171, 174 (2d Cir. 1990) (finding that reasonable measures were taken where "[t]he doors to the premises were kept locked" and "[e]mployees . . . were required to sign nondisclosure agreements").

Finally, the Espire plaintiffs have plausibly alleged that the trade secrets were acquired by improper means. The source code for Espire's mobile and web applications was allegedly copied "near verbatim" by TAPP. Espire Compl. ¶ 55. The Espire plaintiffs note that Kastner's programmer tag, "kast," was present in both Espire's original source code and TAPP's derivative source code, and allege further that Kastner, at the direction of TAPP and Forkosh[8], "cop[ied] functions and source code, including . . . JavaScript, CSS, HTML, as well as the 'base.html' source code, the 'login.html' source code, the 'site.js' source code, as well as the 'authentication' and 'dynamicSpacing' functions." Id. ¶¶ 52-54. Espire and TAPP's "dashboard," "login-card," and "dynamicSpacing" CSS functions are alleged to be "improbably identical . . . save for minor

---

[8] The claim for misappropriation of trade secrets against Kastner has been transferred to California pursuant to the forum selection clause in Kastner's independent contractor agreement. However, Kastner's actions are imputable to TAPP and Forkosh because Kastner acted at their direction. See Riviello v. Waldron, 391 N.E.2d 1278, 1281 (N.Y. 1979) (employee's tortious acts are imputable to the employer if "the act was done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions"); see also id. (concluding that it is "hardly a debatable proposition" that the rule "cover[s] an act undertaken at the explicit direction of the employer"). Although this principle arises from New York state agency law, federal DTSA claims are often analyzed in view of state law. See ExpertConnect, L.L.C. v. Fowler, No. 18-cv-4828, 2019 WL 3004161, at *4 n.1 (S.D.N.Y. July 10, 2019) ("[D]istrict courts often rely on cases discussing misappropriation under New York law to analyze DTSA claims.").

29

color changes," but are otherwise "character-for-character, word-for-word, and class-for-class" identical, "with identical indentations, line breaks, and spacing." Id. ¶ 56. The alleged outright theft of Espire's source code sufficiently pleads that the Espire defendants acquired the source code by improper means. Accordingly, the Espire plaintiffs have plausibly alleged a claim for misappropriation of trade secrets under the DTSA, and the motion to dismiss that claim is **denied.**

### B.

The TAPP defendants claim that the TAPP plaintiffs' DTSA claim is time-barred. DTSA claims are subject to a three-year statute of limitations. See 18 U.S.C. § 1836(d). The statute of limitations runs from the date on which the misappropriation to which the action would relate "is discovered or by the exercise of reasonable diligence should have been discovered." Uni-Systems, LLC v. U.S. Tennis Ass'n, Inc., 350 F. Supp. 3d 143, 178 (E.D.N.Y. 2018). In other words, the limitations period begins to run when the plaintiff "knew or should have known that the alleged trade secrets were wrongfully acquired, disclosed, or used." Id.

"Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." Ellul v.

30

Congregation of Christian Bros., 774 F.3d 791, 798 n.12 (2d Cir. 2014). In this case, the TAPP plaintiffs repeatedly cite to misappropriations of trade secrets that allegedly occurred at least four years before the TAPP Action was filed. Therefore, the Court may consider the statute of limitations defense on this motion to dismiss.

In this case, the alleged misappropriation occurred at the latest in 2017. Navarro joined Blu Market "sometime in 2013 or 2014," founded Espire in May 2015, and left Blu Market in 2017. TAPP Compl. ¶¶ 41, 55, 56. By the end of 2017, the plaintiffs "knew or should have known" that the alleged trade secrets were in Navarro's possession, and that Navarro was appropriating them for Espire. Uni-Systems, 350 F. Supp. 3d at 178.

Furthermore, the TAPP plaintiffs allege that "[s]imply stealing Blu Market funds and trade secrets . . . was not enough [for Navarro]," and "[i]n July/August[] 2017, Navarro made the incredible assertion that she was actually a shareholder of The Blu Market, Inc." TAPP Compl. ¶¶ 83–84. The structure of these allegations, one after another, shows that the TAPP plaintiffs had notice of Navarro's alleged trade secret misappropriation by 2017.

The TAPP Action was filed on December 27, 2021. Because more than three years separates the time between the plaintiffs' first knowledge of the alleged misappropriation and the filing

of the TAPP Action, the DTSA claim is time-barred as pleaded in
the TAPP Complaint.

The TAPP plaintiffs argue that the claim is not time-barred
because they allege that they "learned" that the trade secrets
were being used in June 2021. TAPP Compl. ¶ 94. But the test for
whether a DTSA claim is time-barred does not require actual
knowledge, only that the plaintiffs "should have known" of the
trade secret misappropriation. Uni-Systems, 350 F. Supp. at 178.
The factual allegations as pleaded in the TAPP Complaint should
have put the plaintiffs on reasonable notice of Navarro's use of
their trade secrets. Moreover, the allegations in the TAPP
Complaint show that the plaintiffs had actual knowledge that the
trade secrets had been misappropriated in 2017.

The TAPP plaintiffs also attempt to argue that a separate,
more recent, instance of misappropriation occurred in July 2021
involving Michael Tran, an influencer. However, this argument
involves new allegations in an affidavit submitted by Forkosh
that are not pleaded in the TAPP Complaint. The Forkosh
affidavit is not referenced in the TAPP Complaint, and therefore
any new allegations cannot be considered on this motion to
dismiss. See Helwing v. City of New York, No. 18-cv-3764, 2021
WL 781794, at *7 (E.D.N.Y. Mar. 1, 2021). Accordingly, this
alleged separate instance of misappropriation does not save the
original allegations in the TAPP Complaint from being time-

barred under the DTSA.[9] The claim by the TAPP plaintiffs for a violation of the DTSA is **dismissed** as time-barred.

V.

The Espire plaintiffs also bring a claim for a violation of the Sherman Antitrust Act. "Section 1 of the Sherman Act bans restraints on trade effected by a contract, combination, or conspiracy." United States v. Apple, Inc., 791 F.3d 290, 314 (2d Cir. 2015). To establish a Section 1 violation, the plaintiff must show: (1) a combination or some form of concerted action between at least two legally distinct economic entities that (2) unreasonably restrains trade. Geneva Pharms. Tech. Corp. v. Barr Laboratories, Inc., 386 F.3d 485, 506 (2d Cir. 2004).

In this case, the Espire plaintiffs fail at the first prong. The Espire defendants alleged to have participated in an antitrust conspiracy are TAPP, Forkosh, Emert, and Kastner. Espire Compl. ¶ 189. However, these defendants are not distinct from each other, because Forkosh, Emert, and Kastner are alleged to be employees, or agents, of TAPP. Id. ¶¶ 41, 43-44. The Espire plaintiffs have failed to allege plausibly that TAPP, the

---

[9] As noted, the TAPP plaintiffs also bring a separate claim for a permanent injunction, seeking to enjoin the defendants from using their trade secrets. However, the DTSA already allows for injunctive relief. 18 U.S.C. § 1836(b)(3)(A). But because the TAPP plaintiffs have not alleged a timely violation of the DTSA, they also have not alleged a claim for injunctive relief under the DTSA.

only economic entity of relevance here, could conspire with its
own employees or contractors to act anticompetitively. See
Copperweld Corp. v. Indep. Tube Corp., 467 U.S. 752, 769 (1984)
("[O]fficers or employees of the same firm do not provide the
plurality of actors imperative for a § 1 conspiracy" because "an
internal agreement to implement a single, unitary firm's
policies does not raise the antitrust dangers that § 1 was
designed to police"). Because Forkosh, Emert, and Kastner are
all employees or agents of TAPP, they could not have formed a
conspiracy as required by Section 1 of the Sherman Act. Gucci v.
Gucci Shops, Inc., 651 F. Supp. 194, 197 (S.D.N.Y. 1986) ("[I]t
is well-settled that a corporation's employees cannot conspire
with their employer under [S]ection 1 of the Sherman Act.").
Accordingly, the Espire plaintiffs' Sherman Act claim is
**dismissed.**[10]

## VI.

### A.

The Espire plaintiffs also claim that TAPP, Forkosh, Emert,
and Kastner engaged in a pattern of racketeering activity in
violation of RICO. A civil RICO claim pursuant to 18 U.S.C. §

---

[10] The Espire plaintiffs also bring a state-law antitrust claim
under N.Y. Gen. Bus. Law § 340 (the "Donnelly Act"). However,
the Donnelly Act is "generally coextensive with the Sherman
Act." See Cenedella v. Metro. Museum of Art, 348 F. Supp. 3d
346, 362-63 (S.D.N.Y. 2018) (collecting cases). Thus, the Espire
plaintiffs' Donnelly Act claims are **dismissed** for the same
reasons that their Sherman Act claim fails.

1962(c) requires the plaintiffs to show (1) a substantive RICO violation under 18 U.S.C. § 1962, (2) injury to the plaintiff's business or property, and (3) such injury was by reason of the substantive RICO violation. Sykes v. Mel S. Harris & Assocs. LLC, 780 F.3d 70, 83 (2d Cir. 2015). A substantive RICO violation requires: (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity, and (5) injury to business or property as a result of the RICO violation. See Lundy v. Cath. Health Sys. of Long Island Inc., 711 F.3d 106, 119 (2d Cir. 2013).

A RICO enterprise cannot consist "merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant." Cruz v. FXDirectDealer, LLC, 720 F.3d 115, 121 (2d Cir. 2013). This is because, under RICO, the defendant and the enterprise referred to must be distinct. See Riverwoods Chappaqua Corp v. Marine Midland Bank, N.A., 30 F.3d 339, 344 (2d Cir. 1994). In this case, TAPP employs Forkosh, Emert, and Kastner, meaning that the alleged RICO enterprise would consist of nothing more than an employer and its employees and agents. None of Forkosh, Emert, or Kastner are distinct from TAPP, because each of those defendants acted on behalf of TAPP, and where "individual defendant[s] [have] acted [on] a corporation's behalf, [they do] not function as an entity distinct from that corporation." CPF

Premium Funding, Inc. v. Ferrarini, No. 95-cv-4621, 1997 WL
158361, at *12 (S.D.N.Y. Apr. 3, 1997). Officers of a
corporation can be distinct from their employers "only if [they]
act[] in a manner inimical to, or at least divorced from, the
corporation's interest." Id. In this case, there is no
allegation that Forkosh, Emert, or Kastner acted against the
interests of TAPP, and therefore they cannot be considered
distinct from TAPP for purposes of forming a RICO enterprise.
Atl. Int'l Movers, LLC v. Ocean World Lines, Inc., 914 F. Supp.
2d 267, 275 (E.D.N.Y. 2012) ("[The] plaintiff does not allege
conduct by any party that was not in the course of their
employment or on behalf of [their employer]."). Accordingly, the
Espire defendants are not an enterprise within the meaning of
RICO, and the Espire plaintiffs' RICO claim pursuant to §
1962(c) is **dismissed.**

## B.

The Espire plaintiffs also bring a RICO claim pursuant to
Section 1962(a). Section 1962(a) provides:

> It shall be unlawful for any person who has received any
> income derived, directly or indirectly, from a pattern of
> racketeering activity or through collection of an unlawful
> debt in which such person has participated as a principal
> within the meaning of section 2, title 18, United States Code,
> to use or invest, directly or indirectly, any part of such
> income, or the proceeds of such income, in acquisition of any
> interest in, or the establishment or operation of, any
> enterprise which is engaged in, or the activities of which
> affect, interstate or foreign commerce.

18 U.S.C. § 1962(a). To bring a claim under Section 1962(a), the plaintiffs must plausibly allege: (1) that the defendants used or invested racketeering income to acquire or maintain an interest in the alleged enterprise; and (2) that the plaintiff suffered an injury as a result of that investment by the defendants. Atl. Int'l Movers, 914 F. Supp. 2d at 275; Ouaknine v. MacFarlane, 897 F.2d 75, 83 (2d Cir. 1990).

The Espire plaintiffs allege that the Espire defendants "have generated revenue from the [alleged] RICO Enterprise, whereupon such revenue was utilized to open and fund the growth and continued operation of [TAPP]." Espire Compl. ¶ 202. However, "[t]he injury causation requirement of § 1962(a) is not satisfied by allegations that a defendant, which is also the enterprise, invested the racketeering income into its general operations, thereby keeping the defendant alive so that it could continue to injure the plaintiff." Atl. Int'l Movers, 914 F. Supp. 2d at 276. This is because "[w]here reinvestment of the racketeering proceeds back from the same RICO enterprise is alleged, the injuries stem proximately not from the investment, but from the predicate acts that make up the racketeering activity." Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc., 113 F. Supp. 2d 345, 384 (E.D.N.Y. 2000). The Espire plaintiffs have alleged only that the proceeds from the alleged enterprise were reinvested into that same enterprise,

allowing it to continue to conduct alleged racketeering activity. Accordingly, any injury that the Espire plaintiffs may have suffered due to such alleged reinvestment would be traceable to this alleged racketeering activity rather than to the investment of funds themselves. Because the Espire plaintiffs allege only that the proceeds from any alleged racketeering activity were reinvested into the original enterprise, their Section 1962(a) claim fails.

**c.**

The Espire plaintiffs also bring a claim under Section 1962(b) of RICO. Section 1962(b) provides that "[i]t shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." To state a claim under Section 1962(b), the plaintiffs must allege that: (1) the defendants acquired or maintained an interest in the alleged enterprise through a pattern of racketeering activity; and (2) that the plaintiff suffered injury as a result of the acquisition of the enterprise. Wood v. Inc. Vill. of Patchogue, 311 F. Supp. 2d 344, 355 (E.D.N.Y. 2004). The injury alleged must be "caused by the acquisition or maintenance of control" of the enterprise, "and not by the predicate [racketeering] acts"

38

of that enterprise. Katzman v. Victoria's Secret Catalogue, 167
F.R.D. 649, 657 (S.D.N.Y. 1996).

The Espire plaintiffs allege that the Espire defendants
maintained control of the alleged enterprise by "demanding and
receiving digital 'mafia-style' protection money from [Espire's]
influencers through the RICO Enterprise's . . . directly
targeting [Espire's] influencers and their social media posts
for repeated false platform content violations." Espire Compl. ¶
203. "The purpose of [S]ection 1962(b) was to prohibit the
takeover of a legitimate business through racketeering,
typically extortion or loansharking." Mark v. J.I. Racing, Inc.,
No. 92-cv-5285, 1997 WL 403179, at *3 (E.D.N.Y. 1997). In this
case, the Espire plaintiffs have alleged that the Espire
defendants' alleged racketeering activity, consisting of
"receiving digital 'mafia-style' protection money,"[11] Espire

---

[11] The Espire plaintiffs allege that the Espire defendants "have
collected unlawful debt" for their alleged RICO enterprise by
"demanding and receiving digital 'mafia-style' protection
money." Espire Compl. ¶ 203. The collection of an unlawful debt
is a predicate offense under RICO, and "RICO offenses may be
predicated on a single instance of collection of an unlawful
debt." United States v. Grote, 961 F.3d 105, 119 (2d Cir. 2020).
To state a claim based on the collection of an unlawful debt,
the plaintiffs must allege that (1) the debt was unenforceable
in whole or in part because of state or federal laws relating to
usury; (2) the debt was incurred in connection with the business
of lending money at a usurious rate; and (3) the usurious rate
was at least twice the enforceable rate. Wade Park Land
Holdings, LLC v. Kalikow, 589 F. Supp. 3d 335, 376 (S.D.N.Y.
2022). The Espire Complaint does not plead any facts alleging
that the debt was incurred in connection with the business of

Compl. ¶ 203, injured the plaintiffs because doing so allowed the Espire defendants to "maintain control of [TAPP]," id., in furtherance of TAPP's alleged RICO enterprise. However, the Espire plaintiffs have not alleged that they were injured because of the defendants' acquisition of an enterprise. Instead, the Espire plaintiffs allege that they continue to be injured by the alleged racketeering activities of the alleged TAPP enterprise. See Mark, 1997 WL 403179, at *4 (denying the plaintiff's Section 1962(b) claim because the alleged injuries all arose from the predicate racketeering activity, not through the defendant's acquisition or maintenance of interest or control in any enterprise). "By failing to allege how [they were] injured by an acquisition or maintenance of control of an enterprise," rather than by the continued activities of the original enterprise, the Espire plaintiffs have not plausibly alleged a violation of Section 1962(b). Katzman, 167 F.R.D. at 657.

### D.

The Espire plaintiffs also bring a claim pursuant to 18 U.S.C. § 1962(d) for a conspiracy to violate RICO. Section

---

lending money, nor does it allege that any excessive interest was charged on a loan. Therefore, the Espire plaintiffs have not alleged the collection of unlawful debt. See id. ("[T]he statute does not reach the collection of a loan that is made occasionally and not as part of the business of lending money at a usurious rate.").

1962(d) provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). To establish a conspiracy to violate RICO, the plaintiffs "must show that the defendant[s] agreed with at least one other entity to commit a substantive RICO offense." Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d 473, 487 (2d Cir. 2014). "The establishment of an enterprise is not an element of the RICO conspiracy offense." United States v. Applins, 637 F.3d 59, 75 (2d Cir. 2011).

The Espire plaintiffs have not alleged any facts showing that the Espire defendants conspired to violate the substantive RICO provisions. The Espire plaintiffs make only the conclusory allegation that the Espire defendants "intentionally conspired and [took] overt acts in furtherance of violating 18 U.S.C. §§ 1962(a)-(c) by words or actions manifesting an agreement to commit two predicate acts in furtherance of the common purpose of the RICO enterprise." Espire Compl. ¶ 205. However, the Espire Complaint lacks any factual allegations to support such an agreement. Conclusory allegations of agreements to violate RICO are insufficient to state a RICO conspiracy claim. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young, No. 91-cv-2923, 1994 WL 88129, at *3) (S.D.N.Y. Mar. 15, 1994) (collecting cases). Because the Espire plaintiffs have not pleaded any facts showing that the Espire defendants "had any meeting of the minds

41

in the alleged violations," 4 K & D Corp. v. Concierge Auctions, LLC, 2 F. Supp. 3d 525, 545 (S.D.N.Y. 2014), their Section 1962(d) claim is **dismissed.**

## VII.

### A.

The Espire plaintiffs also bring claims for hacking in violation of the CFAA against TAPP, Forkosh, Emert, and Kastner. The CFAA provides that "[w]hoever . . . intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer" is liable under the statute. 18 U.S.C. § 1030(a)(2)(C). As relevant, the statute creates a private right of action for its enforcement "only if the conduct involves . . . loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." See id. § 1030(g), (c)(4)(A)(i)(I). "Loss" is construed narrowly under the CFAA and captures only the remedial costs associated with fixing the damage inflicted on a hacked computer. See Nexans Wires S.A. v. Sark-USA, Inc., 319 F. Supp. 2d 468, 475 (S.D.N.Y. 2004), aff'd, 166 F. App'x 559 (2d Cir. 2006); see also DCR Marketing v. Pereira, No. 19-cv-3249, 2020 WL 91495, at *2 n.1 (S.D.N.Y Jan. 8, 2020) (collecting cases).

The Espire plaintiffs make the conclusory allegation that TAPP, Forkosh, Emert, and Kastner "caus[ed] damages and loss in a one-year period in gross excess of five thousand USD . . . by

intentionally accessing [Espire's] protected computer utilized in interstate commerce without authorization or by exceeding authorized access," "accessing [Espire's] protected computer . . . to further a fraud and/or obtain items of value," and "intentionally causing the transmission of [Espire's] trade secrets, source code, software applications, software platforms, and other such compilations." Espire Compl. ¶¶ 160, 163, 166; see also id. ¶ 157. However, conclusory allegations need not be accepted as true on a motion to dismiss. See Iqbal, 556 U.S. at 663. In any event, the Espire plaintiffs' conclusory allegation does not allege that the loss they suffered was related to "damage to a computer, or a cost incurred because the computer's service was interrupted," as required by the $5,000 CFAA jurisdictional threshold. Nexans Wires, 319 F. Supp. 2d at 475; see also 18 U.S.C. § 1030(e)(11). The Espire plaintiffs' CFAA claim is therefore **dismissed** because they have failed to allege the threshold amount necessary to bring a private action under the CFAA.[12]

---

[12] The Espire plaintiffs also bring a separate CFAA claim for conspiracy under 18 U.S.C. § 1030(b). However, because the Espire plaintiffs have failed to allege loss above the jurisdictional threshold, the CFAA conspiracy claim fails for the same reason as their substantive CFAA claims.

## VIII.

### A.

The Espire plaintiffs bring a claim for direct copyright infringement against TAPP. To establish copyright infringement, the plaintiffs must show: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 361 (1991).

The Espire defendants do not dispute that the ownership of a valid copyright has been pleaded. Instead, they argue that because registration of the copyright was not completed until November 2021 — after the alleged infringement occurred in the summer of 2021 — the copyright claim must be dismissed. However, this argument is foreclosed by 17 U.S.C. § 412. The statute contemplates this exact situation and provides that, in such a situation, "no award of statutory damages or of attorney's fees, as provided by sections 504 and 505 [of the Copyright Act]" shall be made for any infringement on a late-registered copyright. 17 U.S.C. § 412. Thus, a late-registered copyright only forecloses certain remedies, but does not foreclose the claim altogether. See, e.g., Solid Oak Sketches, LLC v. 2K Games, Inc., No. 16-cv-724, 2016 WL 4126543, at *2-3 (S.D.N.Y. Aug. 2, 2016) (allowing a claim for copyright infringement to proceed where the defendants' "alleged infringement commenced

prior to the effective registration of the [copyright]" but denying statutory damages and attorney's fees because "Section 412 of the Copyright Act imposes a bright-line rule that precludes recovery of" those remedies).

The Espire plaintiffs have also satisfied the second prong of the copyright analysis by alleging that TAPP stole Espire's copyrighted source code and used it to create its own mobile and web applications. Espire Compl. ¶¶ 51, 52, 54. TAPP does not contest the Espire plaintiffs' contention that it had copied original elements of Espire's source code. Accordingly, the motion to dismiss the direct copyright infringement claim is **denied.**

### B.

The Espire plaintiffs have also alleged contributory copyright infringement against Forkosh, Emert, and Kastner. An individual who, "with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer." Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc., 443 F.2d 1159, 1162 (2d Cir. 1971). "The knowledge standard is an objective one; contributory infringement liability is imposed on persons who know or have reason to know of the direct infringement." Arista Records LLC v. Doe 3, 604 F.3d 110, 118 (2d Cir. 2010). A material contribution is "more

than a mere quantitative contribution to the primary
infringement: . . . the participation or contribution must be
substantial." Capitol Records, Inc. v. MP3tunes, LLC, 821 F.
Supp. 2d 627, 648 (S.D.N.Y. 2011).

Forkosh, Emert, and Kastner are alleged to have "jointly
and individually" provided Espire's copyrighted source code to
TAPP, and therefore contributed to TAPP's direct infringement.
Espire Compl. ¶ 183. Other alleged facts also support this
contention, including the fact that Kastner's programmer tag,
"kast," is found in both the original Espire source code as well
as the allegedly derivative TAPP source code. See id. ¶¶ 52-53.
The individual Espire defendants knew or had reason to know of
TAPP's infringement and, by providing Espire's source code to
TAPP, they substantially contributed to that infringement.
Accordingly, the Espire defendants' motion to dismiss the
contributory infringement claim is **denied**.

**IX.**

The plaintiffs in both actions also bring several state law
claims arising out of the same events, which will be addressed
in turn. New York law applies to the majority of these claims
because both parties cite to New York cases and neither party
disputes the applicability of New York law except as to the
Espire plaintiffs' breach of contract claims. See Krumme v.
WestPoint Stevens Inc., 238 F.3d 133, 138 (2d Cir. 2000) ("The

46

parties' briefs assume that New York law controls, and such implied consent . . . is sufficient to establish choice of law.").

### A.

First, the Espire plaintiffs bring a state law claim for unfair competition. "The essence of unfair competition under New York common law is the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods." Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc., 58 F.3d 27, 34 (2d Cir. 1995). To state a claim for unfair competition under New York law, "the plaintiff must show either actual confusion in an action for damages or a likelihood of confusion for equitable relief." Id. at 35. The plaintiff must also show bad faith. Id.

The Espire plaintiffs have not pleaded that any confusion occurred as a result of any of the Espire defendants' actions. Both parties appear to construe this claim as a state law claim for misappropriation of trade secrets; however, the claim is pleaded as "Unfair Competition" in the Espire Complaint. See Espire Compl. ¶¶ 82-85. Accordingly, the unfair competition claim is **dismissed** without prejudice.

### B.

Next, the Espire plaintiffs bring a claim for injurious falsehood against TAPP. Under New York law, injurious falsehood

is also referred to as "trade libel, product disparagement, and other variations thereof," and is a "tort separate and distinct from the tort of defamation." Henneberry v. Sumitomo Corp. of Am., 415 F. Supp. 2d 423, 470 (S.D.N.Y. 2006); see also Waste Distillation Tech., Inc. v. Blasland & Bouck Engineers, P.C., 523 N.Y.S.2d 875, 877 (App. Div. 1988) (referring to "injurious falsehood" and "trade libel" interchangeably). To plead a claim of injurious falsehood, the plaintiffs must allege: (1) the falsity of the alleged statements; (2) publication to a third person; (3) malice; and (4) special damages. Berwick v. New World Network Int'l, Ltd., No. 06-cv-2641, 2007 WL 949767, at *15 (S.D.N.Y. Mar. 28, 2007). Injurious falsehood "lies where the statement is confined to denigrating the quality of the plaintiff's business' goods or services." Henneberry, 415 F. Supp. 2d at 470; see also Cunningham v. Hagedorn, 422 N.Y.S.2d 70, 73 (App. Div. 1979) ("The action for injurious falsehood lies when one publishes false and disparaging statements about another's property . . . ."). "Where the loss of customers constitutes the alleged special damages, the individuals who ceased to be customers, or who refused to purchase, must be named and the exact damages itemized." Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc., 314 F.3d 48, 59 (2d Cir. 2002).

In this case, there is no plausible claim for injurious falsehood because the statements at issue did not concern the

quality of Espire's goods or services. Instead, the alleged statements made concerned Espire's general reputation. See Espire Compl. ¶ 60 (alleging that TAPP made "demonstrably false assertions" that Espire "defraud[ed] clients, refus[ed] to pay influencers, and converted Blu's software and other such intellectual property"). Such allegations sound more in a traditional claim for defamation than in one for injurious falsehood. However, both are separate and distinct claims under New York law, and Espire's allegations do not satisfy the requisite elements to be pleaded for a claim of injurious falsehood. See Fashion Boutique of Short Hills, Inc., 314 F.3d at 59 ("Under New York law, slander and disparagement of goods constitute distinct causes of action."). Moreover, the Espire plaintiffs have failed to allege special damages. Accordingly, the claim for injurious falsehood is **dismissed.**

### C.

The TAPP plaintiffs have alleged that the TAPP defendants defamed TAPP to its advertisers and influencers.[13] The TAPP

---

[13] New York's statute of limitations for a defamation claim is one year. See Lancaster v. Town of East Hampton, 864 N.Y.S.2d 537, 538 (App. Div. 2008). It is not clear whether the TAPP plaintiffs' claim would be time-barred. However, because the motion to dismiss did not raise the statute of limitations issue, it is not a basis for the pending motion to dismiss. See Lefkowitz v. Kaye, Scholer, Fierman, Hays & Handler, 706 N.Y.S.2d 176, 177 (App. Div. 2000) ("[T]he defendant waived the Statute of Limitations defense by failing to plead it in the answer or in a preanswer motion.").

defendants move to dismiss the claim. Under New York law, the elements of defamation are: (1) a false statement; (2) published without privilege or authorization to a third party; (3) constituting fault as judged by, at a minimum, a negligence standard; and (4) either causing special harm or constituting defamation per se. Dillon v. City of New York, 704 N.Y.S.2d 1, 5 (App. Div. 1999). A false statement is defamation per se if it charges another with a serious crime or tends to injure another in his or her trade, business, or profession. See Laguerre v. Maurice, 138 N.Y.S.3d 123, 129 (App. Div. 2020).

Navarro is alleged to have asserted, on a live broadcast, that Forkosh, Blu Market and TAPP were "scam artists." TAPP Compl. ¶ 108. The statement is alleged to be false, satisfying the first element, and was published to a third-party because it was asserted on an Instagram Live broadcast. The statement also imputes, to the TAPP plaintiffs, "fraud, dishonesty, misconduct, or unfitness in conducting their profession," Levy v. Nissani, 115 N.Y.S.3d 418, 422 (App. Div. 2020). Thus, the statement tends to injure the TAPP defendants in their business and therefore constitutes defamation per se, which obviates the need to plead special damages. See id. at 421-22 (concluding that a party established a prima facie case for defamation per se where the party's family was accused of being "scammers," "con

50

artists," and "thieves"). Accordingly, the motion to dismiss the TAPP plaintiffs' defamation claim is **denied**.[14]

### D.

The plaintiffs in both actions bring claims for tortious interference with contract. To bring a claim for tortious interference with contract under New York law, the plaintiffs must allege that: (1) a valid contract exists; (2) a "third party" had knowledge of the contract; (3) the third party intentionally and improperly procured the breach of the contract; and (4) the breach resulted in damage to the plaintiffs. Finley v. Giacobbe, 79 F.3d 1285, 1294 (2d Cir. 1996).

### 1.

The Espire plaintiffs bring claims for tortious interference against TAPP, Forkosh, Emert, and Kastner[15], alleging that each defendant tortiously "induced a breach" of Espire's contracts in order to solicit Espire's "employees and contractors . . . as well as clients and influencers" and appropriate Espire's trade secrets. See, e.g., Espire Compl. ¶¶ 87-88. The Espire plaintiffs allege that TAPP and Forkosh

---

[14] It is unnecessary to reach the issue of whether other alleged statements were sufficient to state a claim for defamation.

[15] The claim against Kastner has been transferred to California based on the mandatory forum selection clause in Kastner's independent contractor agreement.

tortiously interfered with Espire's contracts with Emert and Kastner by soliciting them to join TAPP. They allege that Forkosh actively and successfully "solicited" Emert and Kastner to leave Espire and join TAPP. See Espire Compl. ¶¶ 45-46, 48-49. The element of procurement requires that "but for" the defendant's conduct, there would not have been a breach. See Sharma v. Skaarup Ship Mgmt. Corp., 916 F.2d 820, 828 (2d Cir. 1990). The Espire plaintiffs have plausibly alleged that Forkosh's solicitation was the "motivating force" behind Emert and Kastner's breach of their agreements with Espire. Id. Moreover, the Espire plaintiffs allege that there were valid contracts between Espire and both of Emert and Kastner, and Forkosh allegedly had knowledge of those contracts by virtue of the Joint Venture Agreement. See Espire Compl. ¶ 121. Accordingly, the motion to dismiss the tortious interference claim against TAPP and Forkosh is **denied.**

## 2.

The tortious interference claim against Emert fails. The Espire plaintiffs allege that Espire had "existing contracts with . . . clients and influencers," that by virtue of the "unfettered access" granted by his position, Emert knew of these contracts, and that Emert "actively solicit[ed]" Espire's contracted influencers to sever those influencers' relationships with Espire in favor of TAPP, in violation of Emert's non-

competition clause. See, e.g., id. ¶¶ 60, 120-121, 135-136. The
Espire plaintiffs also allege that TAPP created software which
targeted influencers' "social media posts for repeated false
platform content violations" to "incentivize" Espire's
influencers to switch to TAPP. Id. ¶ 62.

However, while the Espire Complaint alleges that Emert
attempted to induce Espire's influencers to breach their alleged
contracts with Espire through improper means - namely, by
asserting to those influencers the "demonstrably false"
accusations that Espire "defraud[ed] clients, refus[ed] to pay
influencers, and converted [Blu Market's] software and other
such intellectual property," id. ¶ 60, the Espire plaintiffs
have not alleged that any actual breach occurred as a result of
these inducements. The Espire Complaint alleges only that there
was "an effort to actively solicit" Espire's influencers, but
not that any of its influencers actually switched to TAPP's
platform as a result of the alleged misrepresentations. Id.
Accordingly, the Espire defendants' motion to dismiss the
tortious interference claims against Emert is **granted.**

### 3.

The TAPP plaintiffs seek damages for tortious interference
with contract and prospective business relations[16], alleging that

---

[16] Tortious interference with prospective business advantage is
also referred to as "tortious interference with business

the TAPP defendants tortiously interfered with TAPP's contracts and potential relationships with its advertisers and influencers. The TAPP defendants argue that such claims are time-barred. Under New York law, the statute of limitations for a tortious interference claim seeking a damages remedy, whether the claim is one for interference with existing contracts or with prospective business relations, is three years. IDT Corp. v. Morgan Stanley Dean Witter & Co, 907 N.E.2d 268, 273 (N.Y. 2009) (intentional interference with existing contract); Morales v. Arrowood Indem. Co., 165 N.Y.S.3d 200, 205 (App. Div. 2022) (tortious interference with business relations). The TAPP Action was filed on December 27, 2021. Thus, the TAPP plaintiffs' tortious interference claims must have accrued on or after December 27, 2018 in order to be timely.

"A tort claim accrues as soon as the claim becomes enforceable, i.e., when all elements of the tort can be truthfully alleged in a complaint." IDT, 907 N.E.2d at 273.

---

relations" or "tortious interference with prospective economic advantage." Amaranth LLC v. J.P. Morgan Chase & Co., 888 N.Y.S. 2d 489, 494 (App. Div. 2009). The elements of a claim for tortious interference with prospective business advantage are similar to the elements of a claim for tortious interference with contract. The plaintiffs must show that (1) the plaintiffs had business relations with a third party; (2) the defendants interfered with those business relations; (3) the defendants acted with the sole purpose of harming the plaintiffs or used dishonest, unfair, or improper means; and (4) injury to the business relationship. Raedle v. Credit Agricole Indosuez, 670 F.3d 411, 417 (2d Cir. 2012).

While the events giving rise to the tortious interference claims
began by July 2017, over three years prior to the filing of the
TAPP Action, when Navarro definitively assumed her role as head
of Espire and left Blu Market, it cannot be determined from the
TAPP Complaint whether all of the alleged interference by the
TAPP defendants with TAPP's actual and prospective contracts
occurred before December 27, 2018. The motion to dismiss the
TAPP plaintiffs' tortious interference claims as time-barred is
denied.

The TAPP defendants argue, in the alternative, that the
TAPP plaintiffs have failed to show that the TAPP defendants
intended to interfere tortiously with the TAPP plaintiffs'
contracts. However, the TAPP plaintiffs have alleged that Espire
"directed fake traffic (VDOS) to the influencer links that would
cause their sites to crash," and then "tr[ied] to convince
[those] influencers to switch from [Blu Market and TAPP] to
Espire." TAPP Compl. ¶ 95. The TAPP plaintiffs have therefore
alleged adequately that Espire had knowledge of those
influencers' contracts, or at the very least established
business relationships, with TAPP, and that they purposely
interfered with those contracts or relationships in an effort to
convince those influencers to join Espire. Moreover, the TAPP
plaintiffs alleged that the TAPP defendants "forwarded texts" to
"influencers and advertisers with whom Blu Market had business

relations" and "advised current and prospective . . . clients and influencers that [the TAPP plaintiffs] were scam artists and stole intellectual property." Id. ¶¶ 96, 104. The TAPP plaintiffs thus have alleged adequately that the TAPP defendants directly interfered with their influencers in an effort to convince those influencers to sever their business relationship with TAPP. See Kolchinsky v. Moody's Corp., No. 10-cv-6840, 2012 WL 639162, at *6 (S.D.N.Y. Feb. 28, 2012) ("The defendant's interference must be direct: the defendant must direct some activities towards the third party and convince the third party not to enter into a business relationship with the plaintiff."). Finally, the tortious conduct "must amount to a crime or an independent tort," Carvel Corp. v. Noonan, 818 N.E.2d 1100, 1103 (N.Y. 2004), and "[d]efamation is a predicate wrongful act for a tortious interference claim," Amaranth LLC, 888 N.Y.S.2d at 494. Because the TAPP plaintiffs' claim for defamation survives, it also suffices as the predicate tortious act for their claim of tortious interference.

The TAPP plaintiffs allege generally that "[a]s a result of" Espire's alleged misconduct, TAPP has "lost present and future business" in addition to "loss of credit and reputation." TAPP Compl. ¶¶ 115, 167. Although the TAPP plaintiffs do not allege with specificity which influencer contracts or relations were interfered with or harmed by Espire, specific allegations

are not necessary at this stage of the litigation. See DiBlanca
v. Town of Marlborough, No. 13-cv-1579, 2014 WL 2866341, at *9
(N.D.N.Y. June 24, 2014) (allowing a claim of tortious
interference with prospective business advantage to proceed
despite the plaintiffs being unable to "identify a business
relationship with a third party" because all other elements of
the claim were alleged sufficiently and because "discovery"
would reveal "the relevant information regarding" the loss of
particular business). Further discovery can reveal the specific
extent to which TAPP was harmed by Espire's alleged misconduct.
Accordingly, the motion to dismiss TAPP's claim for tortious
interference is **denied.**

### E.

The TAPP plaintiffs also bring a state law claim for unjust
enrichment. As an initial matter, unjust enrichment claims
seeking damages are subject to a three-year statute of
limitations. See Ingrami v. Rovner, 847 N.Y.S.2d 132, 134 (App.
Div. 2007). Because the unjust enrichment claim arises out of
the same events as the tortious interference claim, it also
cannot be dismissed based on the statute of limitations.

To prevail on a claim for unjust enrichment, the plaintiffs
must show that (1) the defendant were enriched (2) at the
plaintiffs' expense, and (3) that "it is against equity and good
conscience to permit [the] defendant[s] to retain what is sought

57

to be recovered." Lake Minnewaska Mountain Houses Inc. v. Rekis, 686 N.Y.S.2d 186, 187 (App. Div. 1999).

The TAPP plaintiffs allege that the TAPP defendants were unjustly enriched because of "the unlawful misappropriation of trade secrets and funds by Espire, Kvrma and Navarro." TAPP Compl. ¶ 170. However, "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." Corsello v. Verizon N.Y., Inc., 967 N.E.2d 1177, 1185 (N.Y. 2012). This is because "unjust enrichment is not a catchall cause of action to be used when others fail," and is "available only in unusual situations when, though the defendant[s] ha[ve] not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant[s] to the plaintiff[s]." Id. In this case, the TAPP plaintiffs' claim for unjust enrichment is predicated explicitly on two separate, actionable torts: misappropriation of trade secrets and conversion. Because unjust enrichment cannot "duplicate" or "replace," id., those separate tort causes of action, the unjust enrichment claim is **dismissed.**

### F.

Both parties also allege breaches of various contracts.

58

**1.**

First, the Espire plaintiffs allege that Forkosh breached
the Joint Venture Agreement. The Espire defendants respond that
the Joint Venture Agreement is unenforceable because it was
never consummated, and was either rescinded or abandoned.
However, whether the Joint Venture Agreement was enforceable is
a factual question that cannot be resolved on these competing
motions to dismiss. Accordingly, because it cannot be concluded
at this point that the Joint Venture Agreement was
unenforceable, the motion to dismiss the breach of contract
claim against Forkosh is **denied.**

**2.**

The Espire plaintiffs also bring a claim for breach of
contract against Emert, alleging a breach of the non-competition
clauses in Emert's amended and restated operating agreement. The
defendants respond that the contract, by its express terms, is
governed by California law and that non-compete provisions are
invalid under California law.

The Espire defendants, however, have provided only an
unsigned operating agreement for Emert. Thus, although the
operating agreement provides that "[t]his Agreement shall be
construed and enforced in accordance with, and all questions
concerning the construction, validity, interpretation and
performance . . . shall be governed by, the laws of the State of

California," Forkosh Aff., Ex. 15, ECF No. 44-15, § 11.8, it cannot be determined at this stage of the litigation that Emert is bound by that provision. Therefore, at this stage of the litigation, the Court will apply New York law to the breach of contract claim against Emert because "the law of the forum state where the action is being tried should apply" when there is no actual "conflict between the laws of the competing jurisdictions." SNS Bank, N.V. v. Citibank, N.A., 777 N.Y.S.2d 62, 64 (App. Div. 2004).

Under New York law, non-competition clauses are subject to the "overriding requirement of reasonableness." Reed, Roberts Assocs., Inc. v. Strauman, 353 N.E.2d 590, 592 (N.Y. 1976). The non-competition clause in the operating agreement restricted Emert from competing with Espire for two years after his departure. See Forkosh Aff., Ex. 15, ECF No. 44-15, § 10.1. New York courts have found two-year non-compete agreements to be reasonable. See Stiepleman Coverage Corp. v. Raifman, 685 N.Y.S.2d 283, 284 (App. Div. 1999); HBD Inc. v. Ryan, 642 N.Y.S.2d 913, 914 (App. Div. 1996). This is especially so where the non-competition clause is "necessary to protect the employer's use of trade secrets or confidential customer lists." HBD, 642 N.Y.S.2d at 914. It cannot be shown on this motion to dismiss that the non-competition clause in Emert's alleged operating agreement is unreasonable and unenforceable.

60

The Espire plaintiffs also argue that Emert has breached his confidentiality and non-disclosure agreements. These claims are stated with sufficient particularity. The Espire Complaint alleges that Forkosh, Emert, and Kastner jointly misappropriated Espire's trade secrets by copying Espire's mobile and web application source code to develop those same applications for TAPP. Accordingly, the motion to dismiss the breach of contract claim against Emert is **denied.**

### 3.

The TAPP plaintiffs allege that Co and Pangilinan breached their settlement agreement with Forkosh and Blu Market. The signed agreement provides that Co and Pangilinan "will not hire, contact, or enter into a business relationship with any BLU Market affiliate, its officers, directors, employees, or subsidiaries," and "will not contact any individual who was an advertiser or affiliate of the BLU Market Network during the term of [their employment contract]." TAPP Compl., Ex. 11, ECF No. 30-11, at 1.[17] It is alleged that Co "forward[ed] texts to advertisers and influencers with which Blu had a relationship" and further "solicit[ed] those influencers and advertisers."

---

[17] The TAPP defendants argue that the settlement agreement only barred Co and Pangilinan from engaging in such conduct for 6 months from May 26, 2015, and that the alleged conduct occurred after those 6 months. That factual dispute cannot be resolved on this motion to dismiss.

TAPP Compl. ¶¶ 175, 127. This is a sufficient allegation that Co breached his contract.

However, it has not been alleged that Pangilinan breached the settlement agreement. Pangilinan is alleged to have violated the settlement agreement "by developing Kvrma's website using the technology assigned by him to Blu Market," and "by assisting Kvrma in using the site to attract influencers and advertisers with which Blu Market has held a relationship." Id. ¶¶ 125-126. However, the express terms of the settlement agreement do not forbid Pangilinan from developing any websites using technology "assigned by him to Blu Market." Id. ¶ 125. Nor does the simple creation of a website attracting advertisers and influencers imply that Pangilinan actually contacted any of those individuals. Accordingly, it has not been alleged that Pangilinan breached the settlement agreement, and the breach of contract claim against Pangilinan is **dismissed.**

### G.

The Espire plaintiffs allege that Forkosh and Emert breached the implied covenant of good faith and fair dealing implicit in their respective contracts with Espire. Under New York law, "parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73, 80 (2d Cir. 2002). Thus, "[a] claim for breach

of the implied covenant will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract." Id. In other words, "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." Id. at 81.

The claim for breach of the implied covenant of good faith and fair dealing arises out of the same conduct underlying the Espire plaintiffs' breach of contract claims. Accordingly, this claim is **dismissed** because it is "intrinsically tied to the damages allegedly resulting from a breach of the contract." MBIA Ins. Corp. v. Merrill Lynch, 916 N.Y.S.2d 54, 55 (App. Div. 2011).

## H.
### 1.

The Espire plaintiffs also allege that Forkosh breached the fiduciary duties that he owed to Espire under the Joint Venture Agreement, to which Espire was a party. Forkosh argues only that the Joint Venture Agreement was invalid as rescinded, and therefore that no fiduciary duties could have been imposed upon him by that Agreement. However, whether the Joint Venture Agreement is valid and enforceable cannot be decided on these

motions to dismiss. Therefore, Forkosh's motion to dismiss the claim for breach of fiduciary duties is **denied**.

**2.**

The Espire plaintiffs also allege that Emert breached fiduciary duties that he owed to Espire by virtue of his employment. "[E]mployees owe a duty of loyalty and good faith to their employer in the performance of their duties." Cerciello, 936 N.Y.S.2d at 226. Generally, to establish a breach of this fiduciary duty, "the employee's misuse of the employer's resources to compete with the employer is . . . required." Id. "An employee may create a competing business prior to leaving her or his employer without breaching any fiduciary duty unless she or he makes improper use of the employer's time, facilities or proprietary secrets in doing so." Island Sports Physical Therapy v. Burns, 923 N.Y.S.2d 156, 157 (App. Div. 2011).

It is alleged that Forkosh, "in concert with" Emert, "stole" Espire's web and mobile application source code "in generating and operating" TAPP's "web and mobile applications," and "unlawfully converted" Espire's customer lists and influencer lists "to directly compete" with Espire. Espire Compl. ¶¶ 58-59. Accordingly, the Espire plaintiffs have plausibly alleged that Emert breached the fiduciary duties he owed to Espire by developing a competitor's applications through improper use of Espire's proprietary secrets, and the motion to

dismiss is **denied**. See Louis Cap. Mkts., L.P. v. REFCO Grp. Ltd., LLC, 801 N.Y.S.2d 490, 495 (Sup. Ct. 2005) (finding breach of fiduciary duty where an employee "accepted employment" with the employer to "gather[] information and resources" for a competitor).

**3.**

The TAPP plaintiffs bring a claim against Navarro for a breach of fiduciary duty under New York's faithless servant doctrine.[18] Breach of fiduciary duty claims seeking damages are subject to a three-year statute of limitations. See IDT Corp., 907 N.E.2d at 268, 272. The claim relates to the fiduciary duties owed by Navarro to Forkosh and Blu Market by virtue of her employment with Blu Market. Because Navarro left Blu Market at latest by 2017, and because the TAPP plaintiffs seek a damages remedy for this claim, the three-year statute of limitations applies and the claim is **dismissed** as time-barred.

---

[18] The TAPP Complaint brings the claim under a count for "Faithless Employee." The TAPP plaintiffs argue that the claim is one for breach of contract. However, the faithless servant doctrine relates to the fiduciary duties inherent in an agency relationship, not a contractual relationship. See Phansalkar v. Andersen Weinroth & Co., L.P., 344 F.3d 184, 200 (2d Cir. 2003) (describing the theory underlying the faithless servant doctrine).

I.

1.

The Espire plaintiffs have also alleged fraud, constructive fraud, and fraudulent concealment against Forkosh. Forkosh responds that the plaintiffs have failed to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b).

Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To meet the requirements of Rule 9(b), "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent." Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993). Rule 9(b) also allows a plaintiff to allege fraudulent intent generally by alleging facts that give rise to a strong inference of fraudulent intent. This strong inference can be established either by: (a) alleging facts to show that the defendants had both motive and opportunity to commit fraud, or (b) alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. See Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994).

The requisite elements of fraud have not been pleaded with particularity. The Espire plaintiffs allege only that Forkosh "made myriad intentional misrepresentations of fact and/or omissions" to Espire, but they neither state these alleged misrepresentations with specificity nor allege why the statements were fraudulent. See, e.g., Espire Compl. ¶ 102. The Espire plaintiffs have also not pleaded any facts indicating either that Forkosh had a motive and opportunity to commit fraud with respect to the Joint Venture Agreement, or that there was strong circumstantial evidence of conscious misbehavior or recklessness. Accordingly, the Espire plaintiffs' various claims for fraud are **dismissed**.

**2.**

The Espire plaintiffs have also alleged a claim of fraudulent conveyance against Forkosh and TAPP in violation of New York Debtor and Creditor Law § 273(a). Section 273(a) provides that:

> A transfer made or obligation incurred by a debtor is voidable as to a creditor . . . if the debtor made the transfer or incurred the obligation:
>
>> (1)  with actual intent to hinder, delay, or defraud any creditor of the debtor; or
>>
>> (2)  without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>>
>>> (i)  was engaged in or was about to engage in a business or transaction for which the remaining

assets of the debtor were unreasonably small in
relation to the business or transaction; or

(ii)    intended to incur, or believed or reasonably
should have believed that the debtor would incur,
debts beyond the debtor's ability to pay as they
became due.

N.Y. Debt. & Cred. Law § 273(a).

New York's Debtor and Creditor Law was amended effective
April 4, 2020. Previously, claims of actual fraudulent
conveyance under what was once § 276 were subject to the
heightened pleading standards of Rule 9(b), whereas claims of
constructive fraudulent conveyance under what was once § 273
were subject to ordinary Rule 8(a) pleading. See Atlanta
Shipping Corp., Inc. v. Chem. Bank, 818 F.2d 240, 251 (2d Cir.
1987) (finding that a claim under the old § 276 required 9(b)
pleading); Tutor Perini Bldg. Corp. v. N.Y.C. Reg'l Ctr., LLC,
525 F. Supp. 3d 482, 516 n.20 (S.D.N.Y. 2021) ("[I]n the § 273
context, despite the statutory label of fraud, courts have not
held plaintiffs to the Rule 9(b) standard."). After April 4,
2020, what were once § 276 and § 273, capturing actual and
constructive fraudulent conveyance, have now become § 273(a)(1)
and § 273(a)(2), respectively.

It is unclear whether the same distinction between the
pleading requirements for the old § 276 and § 273 apply to the
new § 273(a)(1) and § 273(a)(2), and the Espire plaintiffs have
pleaded their claim under the general § 273(a). However, under

either Rule 9(b) or Rule 8(a), they have failed to allege plausibly a claim for fraudulent conveyance. For the reasons explained above, the Espire plaintiffs have failed to satisfy Rule 9(b)'s heightened pleading standards. Moreover, they have failed to satisfy Rule 8(a)'s ordinary pleading standards because they have made only conclusory allegations essentially restating the terms of the statute.[19] See Iqbal, 556 U.S. at 663 ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."). Accordingly, under the pleading standard of either Rule 9(b) or Rule 8(a), the Espire plaintiffs' claim for fraudulent conveyance is **dismissed.**

### 3.

Not to be outdone, the TAPP plaintiffs also bring a claim for fraudulent conveyance against Navarro. In July 2017, Navarro is alleged to have "stripped Blu Market of working capital" with her "unfettered, unsupervised access to Blu Market funds," "used

---

[19] For example, the Espire Complaint does not separate the analytically distinct § 273(a)(1) and § 273(a)(2) elements in its recitation of the statute's elements. Compare Espire Compl. ¶ 69 (reciting language from § 273(a)(1) of "actual intent to hinder, delay, and/or defraud plaintiff"), with id. ¶ 70 (reciting § 273(a)(2)'s key words of "equivalent value," "unreasonably small," and "reasonably should have believed that the Blu defendants would incur debts beyond their ability to pay").

Blu Market funds to promote her interests and those of Espire,"
and "authorize[d] a Paypal disbursement to herself for $5,000."
2d. Compl. ¶¶ 70-71, 73, 75. This left Blu Market "without funds
to operate," and with "debt to pay and disgruntled employees."
Id. ¶ 77. On an Instagram Live broadcast, Navarro later
allegedly "admitted that she diverted all of Blu Market[']s
funds and then 'bounced.'" Id. ¶ 107.

New York's fraudulent conveyance statute provides that "[a]
transfer made or obligation incurred by a debtor is voidable as
to a creditor" given actual or constructive fraudulent
conveyance. N.Y. Debt. & Cred. Law § 273(a). By the terms of the
statute, any such transfer alleged to be a fraudulent conveyance
is voidable only by a creditor of the debtor. TAPP has not
alleged that it is a creditor who was defrauded by Navarro's
alleged divestment of Blu Market funds. First Keystone
Consultants, Inc. v. Schlesinger Elec. Contractors, Inc., 871 F.
Supp. 2d 103, 116 (E.D.N.Y. 2012) ("In order for a party to
challenge a conveyance as fraudulent pursuant to the NYDCL, the
party must be a creditor within the meaning of that statute.").
As pleaded, the allegations sound more in a traditional action
for conversion, rather than a claim for fraudulent conveyance.
Accordingly, TAPP's claim for fraudulent conveyance is **dismissed**
without prejudice.

**J.**

In the Espire Complaint, Navarro brings several derivative claims on behalf of Blu Market against Forkosh under the terms of their Joint Venture Agreement, alleging breach of fiduciary duties, conversion, unjust enrichment, and accounting. The derivative claims also call for a dissolution of Blu Market and a reformation of the Joint Venture Agreement. Forkosh argues that the Joint Venture Agreement is null and void because it was rescinded, and therefore that Navarro cannot assert any rights under that Agreement.

Whether the Joint Venture Agreement is enforceable is a factual question that cannot be resolved on this motion to dismiss. Accordingly, the derivative claims under the Joint Venture Agreement survive because it cannot be determined that there was no such agreement at this stage of the litigation.

**K.**

The Espire plaintiffs also bring independent claims to pierce the corporate veils of Blu Market and TAPP, alleging that Forkosh is the alter ego of both Blu Market and TAPP. However, there is no independent claim to pierce the corporate veil; piercing the corporate veil is ordinarily a theory that allows relief for another underlying substantive claim. See Morris v. N.Y. State Dep't of Taxation & Fin., 623 N.E.2d 1157, 1160 (N.Y. 1993) ("The doctrine of piercing the corporate veil is typically

employed by a third party seeking to go behind the corporate existence in order to . . . hold [the owners] liable for some underlying corporate obligation . . . . [A]n attempt of a third party to pierce the corporate veil does not constitute a cause of action independent of that against the corporation."). Accordingly, the Espire plaintiffs' independent claims to pierce the corporate veil are **dismissed**.

### L.

The TAPP plaintiffs bring a claim for prima facie tort under New York law. Prima facie tort claims are subject to a one-year statute of limitations. See Havell v. Islam, 739 N.Y.S.2d 371, 372 (App. Div. 2002). More than one year has elapsed after any of the acts alleged to have comprised a prima facie tort took place, and as a result, the claim is time-barred. In any event, the TAPP plaintiffs have not alleged a claim for prima facie tort because they have not pleaded any special damages. See Broadway & 67th St. Corp. v. City of New York, 475 N.Y.S.2d 1, 6 (App. Div. 1984) ("An essential element of [prima facie tort] is an allegation of special damages, fully and accurately stated with sufficient particularity."). Accordingly, the prima facie tort claim is **dismissed**.

### X.

Finally, the TAPP defendants have moved pursuant to Federal Rule of Civil Procedure 12(f) to strike certain allegations

relating to charitable malfeasance and Kvrma's alleged status as the alter ego of Espire. Motions to strike under Rule 12(f) are generally disfavored, and in deciding whether to strike an allegation from the pleading for impertinence or immateriality, "it is settled that the motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible." Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir. 1976). The TAPP defendants have not made such a strong showing. Moreover, it cannot be determined at this point that the allegations in the pleadings will not be relevant. See id. ("Evidentiary questions . . . should be especially avoided at such a preliminary stage of the proceedings."). Accordingly, the motion to strike is **denied.**

## CONCLUSION

The Court has considered all the arguments of the parties. To the extent not specifically addressed above, the arguments are either moot or without merit. For the foregoing reasons, the Espire and TAPP Actions will be consolidated pursuant to Rule 42, and the motions to dismiss pursuant to Rules 12(b)(1), (2), (3) and (7) are **denied.** The claims against Kastner for misappropriation of trade secrets under the DTSA, breach of contract, breach of the implied covenant of good faith and fair dealing, tortious interference, and breach of fiduciary duty are **transferred** to the United States District Court for the Central

District of California pursuant to 28 U.S.C. § 1404(a). The TAPP defendants' Rule 12(f) motion to strike is **denied.**

The motions to dismiss pursuant to Rule 12(b)(6) are decided as indicated above. Any claims that are dismissed can be repleaded only if the deficiencies noted in the text can be resolved in good faith in an amended pleading.

The Clerk is directed to close all pending motions and to transfer the above claims against Kastner to the United States District Court for the Central District of California.

**SO ORDERED.**

**Dated:**     **New York, New York**
              **February 13, 2023**

John G. Koeltl
**United States District Judge**