UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

ESPIRE ADS LLC et al.,

Plaintiffs,

-v.-

TAPP INFLUENCERS CORP. et al.,

Defendants.
---------------------------------------------------------------x

ORDER

21 Civ. 10623 (JGLC) (GWG)

GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE

The Espire Parties ("Espire") request that this Court enter a protective order, or in the alternative, strike certain topics the TAPP Parties ("TAPP") have included in their Rule 30(b)(6) notice. See Docket ## 258, 259, 262. For the reasons set forth below, the Court grants in part and denies in part Espire's application.

Espire requests that a protective order be granted to preclude any inquiry into topics concerning Blu Market. (Docket # 258 at 2–3). In the alternative, they seek to have this Court strike the Rule 30(b)(6) topics that concern Blu Market. Id. Espire argues that no inquiry into Blu Market should be permitted because when Espire previously sought discovery on Blu Market, TAPP objected to the requests. Id. at 3.

While we accept that TAPP initially objected to such requests, the parties then negotiated an ESI protocol that included Blu Market search terms. See Docket # 259 at 4–5; Docket # 258 at 317–19. That the search terms apparently failed to produce all the documents that Espire originally requested does not negate TAPP's ultimate willingness to produce Blu Market documents. Rather, any deficiency in the production resulted from the ESI protocol that Espire agreed to.[1] In light of TAPP's retreat from its initial refusal, we see no basis for precluding TAPP now from seeking information concerning Blu Market.

Still, TAPP's deposition topics must be "relevant to any party's claim or defense." Fed. R. Civ. P. 26 (b) (1). Further, "[l]ike other forms of discovery, a Rule 30(b)(6) deposition notice is subject to the limitations under Federal Rule 26 – deposition topics should be proportional to the needs of the case, not unduly burdensome or duplicative, and described with 'reasonable particularity.'" Bigsby v. Barclays Capital Real Estate, Inc., 329 F.R.D. 78, 81 (S.D.N.Y. 2019) (quoting Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l

---

1 To the extent Espire contests TAPP's representation that all documents within the ESI protocol were actually produced, this Order does not prevent Espire from seeking to compel production of the relevant documents in accordance with paragraph 2.A of this Court's Individual Practices.

Ass'n, 2017 WL 9400671, at *1 (S.D.N.Y. Apr. 27, 2017)). Espire contends that the Blu Market topics have no "nexus" to the present litigation because they concern claims that have already been dismissed. (Docket # 258 at 2). The Court disagrees. For one, Espire is bringing derivative claims on behalf of Blu Market pertaining to the Joint Venture Agreement and Forkosh's alleged fraudulent conveyance. See Espire's Second Amended Complaint, Docket #82-1 ¶ 2 ("Espire Compl."); Opinion and Order, filed February 13, 2023 (Docket # 69), at 71. Second, the existence and activities of Blu Market directly relate to TAPP's defense of Espire's trade secrets claim. (Docket # 259 at 3). Thus, Judge Koeltl's dismissal of certain claims relevant to Blu Market does not render Blu Market as an entity necessarily irrelevant to the remaining claims.

Espire has provided a list of the specific Blu Market topics at issue. (Docket # 258 at 365). The Court will address each in turn.

Topics 23, 29 and 29(a)-(b), and 51(a)-(b), seek information regarding Espire's relationship with various Blu Market affiliates such as employees, contractors, vendors and influencers. See Docket # 258 at 334–40, 350. They also seek information regarding Espire's efforts to recruit Blu Market affiliates. Id. This information is relevant given that TAPP's defense to Espire's trade secrets claim is that the information at issue was not even secret because it was already known by Blu Market. (Docket # 259 at 3). Thus, to establish this defense it is necessary for TAPP to obtain information pertaining to Espire's relationship and dealings with such Blu Market affiliates.

Topic 24 similarly requests information regarding Espire's relationship with "any" TAPP affiliate. See Docket # 258 at 335. But unlike the other topics, this request fails to specify exactly what kinds of relationships TAPP seeks information over. For example, Topic 29 appropriately specifies relationships that involve Espire's efforts to recruit TAPP parties and their affiliates. Meanwhile, Topic 24 is an open-ended request for seemingly information on any kind of relationship between Espire and TAPP affiliates. Not only is this impermissibly broad, but we fail to see what relationships would be relevant to the present dispute outside of the kinds listed in Topic 29. Accordingly, Topic 24 will be stricken.

Espire also seeks to strike Topics 53, 53(a)-(d), and 53(f). See id. at 351. These similarly concern Espire's relationship with affiliates of TAPP and Blu Market and are therefore relevant for the same reasons just explained. However, the Court will strike Topic 53. Topic 53 is a completely open-ended question that requests information on "The Parties' business relationships." Id. Nothing in this topic provides any guidance as to what business relationship is at issue. While Topics 53(a)-(d) and (f) appropriately identify specific relationships, Espire cannot be expected to prepare a witness to discuss all of their business relationships over the course of company's entire existence.

For the same reason the court will also strike Topic 26. Id. at 336. This is an open-ended inquiry into all financial transactions by Espire. Such an unbounded request over

seemingly all of Espire's financial transactions to date will make it nearly impossible for Espire to adequately prepare a witness.

Topic 39 asks for information pertaining to the contracts and agreements between the parties, which Espire has agreed to address with the exception of those relating to Blu Market. Id. at 345. But any such information as to Blu Market goes directly to Espire's contention that there was a breach of the Joint Venture Agreement. See Espire Compl. ¶¶ 101–05. Moreover, TAPP's central defense is that this agreement was rescinded and void ab initio; thus Espire's knowledge of information on such agreements is pertinent to such defense. See TAPP Second Amended Complaint, filed in 21 Civ. 11068, Docket # 73 ¶¶ 5-10 ("TAPP Compl.").

Topics 65, 65(a)-(c), and 65(e) seek information concerning the benefits Espire realized from use of TAPP and Blu Market's property and affiliates. See Docket # 258 at 357. Such information is necessary for TAPP to establish the interconnectedness between Espire and Blu Market and to support the contention that Espire's trade secrets were not in fact secret but instead known to Blu Market. Thus, determining the overlap between Espire and Blu Markets, clients, customers, advertisers, and influencers goes directly to TAPP's defense of Espire's trade secrets claim.

Topics 66, 66(a), and 66(b) ask for information regarding Espire's access to and use of Blu Market and Forkosh's property and Topic 72(a) seeks information regarding Espire's possession of Blu Market documents. See id. at 357, 361. Again, such information is relevant to TAPP's defense that Espire's trade secrets were not in fact secret but instead originated from and were known to Blu Market.

Espire also seeks to strike topics on grounds separate from the dispute over Blu Market's relevance.[2] First, Espire seeks to strike Topics 5, 44, 46, 67, and 67(b) on the ground that they are "more properly the subject of expert testimony" and irrelevant. See id. at 6. We reject the argument as to the role of experts. Merely because factual information will ultimately be the subject of expert opinions does not preclude a party from discovering that factual information.

As to relevance, TAPP correctly points out that Espire's damages will be based on their historical financial performance and valuations and how TAPPs subsequent actions impacted this performance. See Docket #259 at 6. Thus, Topic 67 and 67(b) are relevant because they seek to understand Espire's expected financial performance compared to its actual performance over the relevant time period. But the Court will strike Topic 67 because its language is far too

2 The disputed topics that Espire has identified in its letter, see Docket # 258 at 6, do not correspond with the list of disputed topics contained in Exhibit 8, or TAPP's list of disputed topics contained in its exhibits. See Docket # 258 at 365; see also Docket ## 259-2, 259-3. To resolve the inconsistency, the Court has interpreted Espire to be objecting to the topics listed in both its and TAPP's exhibits. For example, Espire's letter disputes Topic 44(a)-(c) but in both TAPP's and Espire's list of disputed topics, only Topic 44 is listed. Compare Docket # 258 at 6, with Docket # 258 at 365, and Docket ## 259-2, 259-3.

generalized inasmuch as it seeks any and all of Espire's financial projections and results. Unlike Topic 67(b) and the other subtopics which are tailored to specific projections over a specific time period, Topic 67 contains no outer limit and is therefore improper.

Topics 44, and 46 are relevant on different grounds. Topic 44 seeks information concerning Espire's performance of the specific contracts at issue in the consolidated action. See Docket # 258 at 347. All such contracts and Espire's performance of them are relevant given that Espire alleges that individuals such as Kastner were employed by Espire and that Forkosh allegedly breached the Joint Venture Agreement by hiring Kastner. See Espire Compl. ¶¶ 46–50. Emert is also relevant to TAPP's trade secrets defense as TAPP contends that Emert was hired by Espire, given equity, and in return stole Blu Market's trade secrets. See TAPP Compl. ¶ 50. Topic 46 is similarly relevant because it seeks to understand the damages and losses Espire sustained from the contracts at issue. See Docket # 258 at 348.

The Court will strike Topic 5, however. This is again an opened-ended inquiry into all of Espire's assets and financial information. While the sub-topics are tailored to particular assets and financial transactions, Topic 5 covers all financial information over the course Espire's entire existence. Such overbreadth provides Espire with no feasible way to adequately prepare a witness.

Additionally, Espire seeks to strike Topics 28 and 28(d), 42, and 45 because they fail to meet the "reasonable particularity" requirement imposed under Rule 30(b)(6). See Docket # 258 at 5–6. "Reasonable particularity means that the noticing party must describe the noticed topics with painstaking specificity as to subject areas that are relevant to the dispute at issue." N. Shore Window & Door, Inc. v. Andersen Corp., 2022 WL 16788807, at *1 (E.D.N.Y. Sept. 14, 2022) (citation omitted). The purpose of this standard is to ensure that Rule 30(b)(6) notices are not so "overly broad as to make it impossible for the responding party to prepare its witness." DKK Hotels, LLC v. Williams-Sonoma, Inc., 2022 WL 2702378, at *2 (E.D.N.Y. Feb 11, 2022).

Topic 28 and 28(d) will be stricken. They are merely blanket requests for all of Espire's communications with the listed individuals and entities. See Docket # 258 at 338. Such a broad request provides Espire with no feasible way to "identify the outer limits of the areas of inquiry notice." BlackRock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n, 2017 WL 3610511, at *12 (S.D.N.Y. Aug. 21, 2017) (internal quotations and citation omitted).

Topic 42 will similarly be stricken. This is an open ended request for any and all information relating to every board meeting Espire has ever conducted. See Docket # 258 at 346. While the subtopics are appropriately tailored to specific meetings and action items, Topic 42 contains no outer limit. Thus, Espire cannot be expected to prepare a witness on such a broad topic that covers a significant period of time.

Lastly, Topic 45 seeks information regarding Espire's performance of the Joint Venture Agreement and the facts and circumstances surrounding changes to Espire's operating

agreement. Id. at 348. This request is sufficiently specific inasmuch as it identifies the agreements at issue, and the information sought under such agreements. That is sufficient to ensure that Espire can properly prepare a witness on such topics.

Accordingly, Espire's request for a protective order is granted in part and denied in part. As stated above, Topics 5, 24, 26, 28 and 28(d), 42, 53 and 67 are stricken. All other disputed topics are permissible subjects of the Rule 30(b)(6) notice.

SO ORDERED.

Dated: October 27, 2026
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge